UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-1866 (RJL) |
| | ) | |
| POST PROPERTIES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY.................................................................................. 3

STATEMENT OF UNDISPUTED FACTS ......................................................... 3

    I.  POST DEVELOPED OR OWNS THE 20 PROPERTIES
        AT ISSUE IN THIS MOTION ................................................. 3

    II.  PROPERTY INSPECTIONS BY POST'S LITIGATION
        EXPERTS ................................................................................. 4

ARGUMENT .................................................................................................... 6

    I.  THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON
        ITS FHA CLAIM ..................................................................... 6

        A.  Legal Standard for Summary Judgment in FHA Design and
            Construction Cases ........................................................ 6

        B.  The FHA Requires Compliance with Objective Design and
            Construction Standards ................................................... 7

            1. Statutory Text ........................................................ 7

            2. HUD Regulations and Guidelines............................. 9

3.  A Burden-Shifting Framework Applies to FHA
Design and Construction Cases ............................................................. 10

C.  The Undisputed Measurements of Posts' Own Experts Show
that Post Failed to Comply with the FHA's Design and
Construction Requirements ................................................................. 12

1. The 20 Post Properties are "Covered" under the FHA ........................... 12

2.  Post's Properties Fail to Provide Accessible "Public and Common
Use Portions" Required by the FHA and HUD Guideline
Requirement 2 .................................................................................... 13

a. Inaccessible routes ................................................................ 14
b. Controls out of reach range ...................................................... 15
c. Common use toilet rooms and bathing facilities ............................. 16

3. Post's Properties Fail to Provide "Usable Doors" Required
by the FHA and HUD Guideline Requirement 3........................................... 17

4. Post's Properties Fail to Provide "Accessible Routes" Into Dwelling
Units Required by the FHA and HUD Guideline Requirement 4 ............... 18

5.  Post's Properties Fail to Provide "Light Switches, Electrical
Outlets, Thermostats, and Other Environmental Controls in Accessible
Locations" Required by the FHA and HUD Guideline
Requirement 5 ............................................................................... 20

6.  Post's Properties Fail to Provide "Usable Kitchens and Bathrooms"
Required by the FHA and HUD Guideline Requirement 7 ......................... 22

D.  Post Cannot Show That the 20 Properties At Issue in this
Motion Satisfy any Safe Harbor or any Comparable, Recognized
Objective Standard ............................................................................ 24

II.  THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON
ITS ADA CLAIM ................................................................................ 27

A.  The ADA Requires Adherence to Objective Design and
Construction Standards ..................................................................... 27

B.  Post's Properties Have Features that Violate the
ADAAG Standards ........................................................................... 29

1.  Post's Public Restrooms Violate the ADAAG
Standards ................................................................................... 30

a. Turning circle ................................................................................... 30
b. Water closet centerline ..................................................................... 30
c. Lavatories ........................................................................................ 31
d. Restroom doors ............................................................................... 31
e. Dispensers in restrooms ................................................................... 32
f. Grab bars ......................................................................................... 32
g. Mirrors ........................................................................................... 33

2.   Post's Public Walkways and Parking Violate the ADAAG
      Standards ............................................................................................ 33

III. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT
      ON ITS CLAIM THAT THE FHA AND ADA VIOLATIONS CONSTITUTE
      A DENIAL OF RIGHTS TO A GROUP OF PERSONS AND A PATTERN
      OR PRACTICE OF DISCRIMINATION ...................................................... 34

      A.  Post's Conduct Denies Rights to People with
            Disabilities ........................................................................................ 34

      B.  Post's Conduct Constitutes a Pattern or Practice of
            Discrimination ................................................................................... 35

IV. RELIEF REQUESTED .................................................................................... 36

CONCLUSION ..................................................................................................... 38

APPENDIX A ....................................................................................................... A1

APPENDIX B ....................................................................................................... B1

# TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757 (Tex. 1995) ................................. 13

*Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456 (D. Md. 2000) .................... 37

*Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700
(D. Md. 1999) ........................................................................................... 19, 28

*Baltimore Neighborhoods, Inc. v. Sterling Homes Corp.*, No. Civ. B-96-915,
1999 WL 1068458 (D. Md. Mar. 25, 1999) ....................................................... 12, 17

*Bullington v. Union Tool Corp.*, 328 S.E.2d 726 (Ga. 1985) ................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................... 6

*\*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .................... 11

*Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976) ............................................ 36

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ......................... 35, 36

*Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999) ....................... 37

*Long Beach v. Coast Resorts, Inc.*, 267 F.3d 918 (9th Cir. 2001) ..................... 28, 29

*\*Meyer v. Holley*, 537 U.S. 280 (2003) ............................................................ 11

*Mobley v. Hagedorn Constr. Co.*, 147 S.E. 890 (Ga. 1929) ................................... 13

*Montana Fair Housing, Inc. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057
(D. Mont. 1999) ....................................................................................... 21

*Nelson v. HUD*, 320 F. App'x 635 (9th Cir. 2009) ............................................. 11

*Rush v. Denco Enters., Inc.*, 857 F. Supp. 2d 969 (C.D. Cal. 2012) ..................... 29

*Sapp v. MHI P'ship, Ltd.*, 199 F. Supp. 2d 578 (N.D. Tex. 2002) ......................... 29

_____

\* Authorities chiefly relied upon

*Smith v. CDI Rental Equip., Ltd.*, 310 S.W.3d 559 (Tex. App. 2010) ...................................... 13

*United States v. Bob Lawrence Realty*, 474 F.2d 115 (5th Cir. 1973) ................................34-35

*United States* v. *Edward Rose & Sons*, 246 F. Supp. 2d 744 (E.D. Mich. 2003),
*aff'd*, 384 F.3d 258 (6th Cir. 2004) ...................................................................................  11

*United States v. Hallmark Homes, Inc.*, No. CV01–432–N–EJL,
2003 WL 23219807 (D. Idaho Sept. 29, 2003)........................................................................ 24

*United States v. Hartz Constr. Co.*, No 97 C 8175, 1998 WL 42265
(N.D. Ill. Jan. 28, 1998) .................................................................................................. 35

*United States v. Jamestown Center-In-The-Grove Apts.*, 557 F.2d 1079 (5th Cir. 1977) ........ 36

*\*United States v. Quality Built Constr.*, 309 F. Supp. 2d 756
(E.D.N.C. 2003) .............................................................................. , 11, 12, 13, 17, 19, 20, 22, 36

*United States v. Quality Built Constr.*, 309 F. Supp. 2d 767 (E.D.N.C. 2003) .................... 7, 26

*\*United States v. Richard & Milton Grant Co.*, No. 01-2069 D/A
(W.D. Tenn. Apr. 27, 2004) ........................................................................... 11, 22, 25

*\*United States v. Shanrie Co.,* No. 05-CV-306-DRH,
2007 WL 980418 (S.D. Ill. Mar. 30, 2007) ............................................................. 12, 24, 35

*\*United States v. Shanrie Co.*, 669 F. Supp. 2d 932 (S.D. Ill. 2009) ..................... 7, 19, 24, 37

*\*United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129 (D. Idaho 2003) .. 7, 8, 11, 24, 35

*\*United States v. Tanski*, Civ. A. No. 1:04-CV-714, 2007 WL 1017020
(N.D.N.Y. Mar. 30, 2007) .......................................................................... 6, 7, 8, 26, 36, 37

**Federal Statutes and Regulations:**

42 U.S.C. § 3601 *et seq.*.......................................................................................................... 1

*42 U.S.C. § 3604(f) ...................................................................................................... *passim*

*42 U.S.C. § 3608(a) ...................................................................................................... 9

42 U.S.C. § 3614(a) ...................................................................................... 34, 35

42 U.S.C. § 3614(d) ...................................................................................... 37

*42 U.S.C. § 3614a ...................................................................................................... 9

42 U.S.C. § 12181 *et seq.* ........................................................................................ 1

42 U.S.C. § 12181(7) ................................................................................................ 28

42 U.S.C. § 12182(a) ............................................................................................... 27

*42 U.S.C. § 12183(a) ............................................................................................. 28

42 U.S.C. § 12186(b) .............................................................................................. 28

42 U.S.C. § 12188(b) ................................................................................. 34, 35, 37

*24 C.F.R. § 100.201 ......................................................................................... 9, 18

*24 C.F.R. § 100.205(e) ............................................................................................ 9

28 C.F.R. § 36.401 ................................................................................................... 28

*28 C.F.R. § 36.406(a) ....................................................................................... 28, 29

*28 C.F.R. Pt. 36 App. D ............................................................................... *passim*

**State Statutes:**

Ga. Code Ann. § 14-2-1106(a)(3) (2013) ............................................................. 13

Tex. Bus. Orgs. Code Ann. § 10.008 (2013) ....................................................... 13

Tex. Bus. Orgs. Code Ann. § 402.010 (2013) ...................................................... 13

**Legislative History:**

H.R. Rep. No. 100-711 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173 .............................. . 8-9

**Administrative Materials:**

Order on Secretarial Review, *HUD v. Nelson*, HUD ALJ 05-068FH,
2006 WL 4573902 (Sept. 21, 2006) ...................................................................... 10

**Federal Register:**

*Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (Mar. 6, 1991), incorporated
by reference at 24 C.F.R. § 100.205(e) ...............................................................*passim*

*Final Rule Implementing ADA Accessibility Guidelines for Buildings and
Facilities, 56 Fed. Reg. 35,544 (July 26, 1991) ...................................................... 28

Supplement to Notice of Fair Housing Accessibility Guidelines: Questions and
Answers about the Guidelines, 59 Fed. Reg. 33,362 (June 28, 1994) ................................. 9, 28

*Design and Construction Requirements; Compliance With ANSI A117.1 Standards;
Final Rule, 73 Fed. Reg. 63,610 (Oct. 24, 2008) ....................................................... . 9, 10, 24

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 56 .............................................................................................................. 1, 6

**Federal Rules of Evidence:**

Fed. R. Evid. 1006 ........................................................................................................... 3, 5

**Local Civil Rules:**

Rule 7(h) ........................................................................................................................... 1, 3

**Miscellaneous:**

15 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations,
§ 7121 (2009) ................................................................................................................. 13

### MEMORANDUM IN SUPPORT OF UNITED STATES'
### MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff United States of America respectfully submits this memorandum in support of its Motion for Summary Judgment as to Liability against Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post").

### INTRODUCTION

The United States brings this case to remedy Post's pattern or practice of designing and constructing apartment complexes in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* The undisputed facts establish that Post is responsible for the design and construction of 20 multi-family properties in six states and the District of Columbia that are inaccessible to persons who use wheelchairs or have other physical disabilities. These inaccessible features include doors that are too narrow, thermostats and light switches that are out of reach, and kitchens and bathrooms with insufficient space to maneuver.

With respect to its FHA claim, the United States is entitled to summary judgment because: (1) the undisputed measurements of Post's experts show that properties subject to this Motion violate the design and construction requirements of the FHA; and (2) Post can present no evidence that its properties satisfy any other comparable standard of accessibility. With respect to its ADA claim, the undisputed measurements of Post's experts show that features of the public use areas at properties subject to this Motion violate the design and construction requirements of the ADA. The table below summarizes the violations at each property with regard to the five FHA requirements that are the subject of this Motion and the ADA.

| | Common & Public Use Areas (FHA Req. 2) | Doors (FHA Req. 3) | Level changes (FHA Req. 4) | Switches, outlets, controls (FHA Req. 5) | Kitchens and bathrooms (FHA Req. 7) | ADA |
|---|---|---|---|---|---|---|
| **Abbey** | | ✓ | | | ✓ | |
| **Alexander** | | | | | | ✓ |
| **Biltmore** | | | ✓ | ✓ | ✓ | ✓ |
| **Coles Corner** | | | | | ✓ | ✓ |
| **Gallery** | | ✓ | | | ✓ | |
| **Harbour Place** | | ✓ | ✓ | ✓ | ✓ | |
| **Legacy** | | ✓ | ✓ | | | ✓ |
| **Luminaria** | ✓ | | ✓ | ✓ | | ✓ |
| **Massachusetts Ave.** | ✓ | | ✓ | ✓ | ✓ | ✓ |
| **Midtown Square** | ✓ | | | | | ✓ |
| **Park at Phillips Pl.** | ✓ | ✓ | ✓ | ✓ | | ✓ |
| **Parkside Atlanta** | ✓ | | | ✓ | ✓ | ✓ |
| **Parkside Orlando** | ✓ | | | ✓ | ✓ | ✓ |
| **Pentagon Row** | ✓ | | | ✓ | | |
| **Rocky Point** | ✓ | | | ✓ | | ✓ |
| **Square** | | ✓ | ✓ | ✓ | ✓ | |
| **Toscana** | | | | | ✓ | ✓ |
| **Uptown Village** | | ✓ | ✓ | ✓ | ✓ | ✓ |
| **Vineyard** | ✓ | ✓ | ✓ | | ✓ | |
| **Vintage** | | ✓ | | ✓ | ✓ | |

Post is liable for the FHA and ADA violations at its multi-family housing properties, which constitute a pattern or practice of discrimination and a denial of rights to a group of persons protected by both statutes. Accordingly, the Court should grant summary judgment as to liability based on the properties at issue in this Motion and order the parties to submit briefing on the appropriate remedy.[1]

---

[1] The United States moves for summary judgment based on the undisputed facts of measurements taken by Post's experts during their inspections of 20 of the 50 properties that are the subject of the United States' complaint. *See* Compl. ¶ 5, R.1. Post's experts' data provide the factual basis for hundreds of violations at these 20 Post properties. The United States reserves for trial all remaining claims, including claims for non-compliant features at all 50 properties, based on the United States' experts' documentation and the complete record established by the United States during discovery. In addition, the United States reserves its claim for monetary damages and a civil penalty.

## PROCEDURAL HISTORY

On September 23, 2010, the United States filed this lawsuit in the Northern District of Georgia.  Compl. ¶ 1, Docket Entry 1 ("R.1").  On November 3, 2010, the case was transferred to this Court.  R.17.  On December 14, 2012, the Court issued a Scheduling Order establishing a discovery schedule and affording the United States the opportunity to have its experts inspect a subset of the 50 Post properties at issue in this case.  *See* Scheduling Order, R.43.  The United States conducted inspections from January 2013 through May 2013.  Post's experts conducted subsequent inspections from May 2013 through July 2013.  Discovery closed on November 1, 2013.

## STATEMENT OF UNDISPUTED FACTS [2]

## I.   POST DEVELOPED OR OWNS THE 20 PROPERTIES AT ISSUE IN THIS MOTION

Post develops, owns, and manages multi-family apartment complexes.  Answer ¶ 4, R.9.  Twenty Post properties, listed in the attached Appendix A, are the subject of this Motion.  *See* Declaration of Alice Hung ("Hung Decl.") ¶¶ 4-9, Mot. Ex. 1 (describing formulation of Appendix A).[3]  Each of the 20 properties was designed and constructed for first occupancy after March 13, 1991.  *See* App. A; Defendants' Resps. and Objections to Plaintiff's Reqs. for Admission ¶¶ 2, 36, 57, 159, 288, 361, 440, 494, 513, 552, 601, 613, 626, 658, 736, 772, 804, 831, 857, 879 (Aug. 1, 2011), Mot. Ex. 2.

Of the 20 properties, Post participated in the original design and construction of 13, namely Post Alexander, Post Biltmore, Post Harbour Place, Post Legacy, Post Luminaria, Post

---

[2]  The United States incorporates by reference its separate statement of undisputed material facts accompanying this Motion pursuant to Local Civil Rule 7(h).

[3]  Appendix A to this memorandum is properly before this Court and admissible under Federal Rule of Evidence ("FRE") 1006 providing for the use of summary exhibits to prove the content of voluminous writings.

Massachusetts Avenue, Post Midtown Square, Post Park at Phillips Place, Post Parkside Atlanta, Post Parkside Orlando, Post Pentagon Row, Post Rocky Point, and Post Toscana. *See* App. A; *see also* Defendants' Resps. and Objections to Plaintiff's Reqs. for Admission ¶¶ 35, 56, 360, 439, 493, 512, 551, 600, 612, 625, 657, 735, 803 (Aug. 1, 2011), Mot. Ex. 2.

Post acquired the remaining seven properties through a merger with Columbus Realty Trust on October 24, 1997.  Defendants' Resps. and Objections to Plaintiff's Second Set of Interrogatories No. 1 (May 22, 2013), Mot. Ex. 4; *see also* Merger Agreement at 7-8, Mot. Ex. 5. These are Post Abbey, Post Coles Corner, Post Gallery, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  *See* App. A; Defendants' Resps. and Objections to Plaintiff's Second Set of Interrogatories No. 1 (May 22, 2013), Mot. Ex. 4.  Columbus Realty Trust "designed and constructed" and "directed the design and development" of these seven properties. *See* Excerpt of Deposition of Post's Executive Vice President Sherry Cohen ("Cohen Dep.") at 11, 73:11-14, 102:21-23 (July 18, 2013), Mot. Ex. 8.

All units containing the features that are the subject of this Motion are either served by an elevator or located on the ground floor.  *See* App. A; Answer ¶ 5; Construction Drawings and Mark Wales' Field Notes, Mot. Exs. 25-33.

## II.   PROPERTY INSPECTIONS BY POST'S LITIGATION EXPERTS

This Motion relies exclusively on measurements taken by Post's own experts.  In 2007 and 2008, as part of a previous lawsuit before this court, *Equal Rights Center v. Post Properties, Inc., et al.*, Civil Case No. 06cv1991 (RJL), three of Post's litigation consultants inspected units at Post properties.  Mark Wales inspected a sample of units at 46 Post properties.  *See* Excerpt of Deposition of Mark Wales ("Wales Dep.") at 78:11-19 (Oct. 10, 2013), Mot. Ex. 9.  In 2013, Wales re-inspected 11 of the 12 Post properties that were the subject of the Court's Scheduling

4

Order in this case.  Mark Wales Expert Report ¶ 10 (August 1, 2013), Mot. Ex. 6.  Wales recorded measurements from these inspections in field notes.  Wales Dep. at 233:15-243:17, Mot. Ex. 9.  Certain of Wales's measurements regarding these properties are summarized, collected, and organized in Appendix B to this memorandum.  *See* App. B; Hung Decl. ¶¶ 10-14, Mot. Ex. 1 (describing formulation of Appendix B).[4]

In 2008, Post's consultant Alison Vredenburgh visited a sample of units at 23 Post properties.  *See* Excerpt of Deposition of Alison Vredenburgh ("Vredenburgh Dep.") at 12:9-13:21 (Oct. 15, 2013), Mot. Ex. 10.  In 2013, Vredenburgh visited units at seven of the 12 Post properties that were the subject of this Court's Scheduling Order.  *Id.* at 13:22-24.  During her visits, Vredenburgh positioned a person in a wheelchair to test certain features of Post's properties.  *Id.* at 151:2-24.  In some instances, Vredenburgh took measurements of design features and recorded them in her field notes.  *Id.* at 66:7-24.  Certain of Vredenburgh's measurements are included in Appendix B.  *See* App. B; Hung Decl. ¶¶ 10-13, Mot. Ex. 1.

In 2008, Post's third consultant, Paul Sheriff, visited 32 Post properties.  *See* Excerpt of Deposition of Paul Sheriff ("Sheriff Dep.") at 15:6-19:2 (Oct. 17, 2013), Mot. Ex. 11.  Sheriff is a person with a disability who used his wheelchair to navigate a sample of units at Post's properties during his inspections.  *Id.* at 86:2-87:11; *see also* Paul Sheriff Expert Report ¶ 5 (July 31, 2013), Mot. Ex. 37.  Sheriff did not use a tape measure or record any measurements.  Sheriff Dep. at 74:12-24, 85:19-22.  Instead, Sheriff's review was limited to recording videotapes of himself navigating through Post's properties.  *Id.* at 22:22-25, 27:1-4, 30:19-33:6.  Sheriff did not visit any Post properties in 2013.  *Id.* at 65:1-3.

---

[4] Appendix B, a compilation in chart form of measurements recorded by Post's experts in their field notes, is also admissible under FRE 1006 as a summary exhibit.

**ARGUMENT**

## I.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON ITS FHA CLAIM

The United States is entitled to summary judgment on its FHA claim because the undisputed facts—the measurements taken by Post's own experts—establish that Post's properties contain numerous features that fail to comply with the accessibility requirements of the FHA and because Post cannot point to evidence that shows that these features comply with any other comparable standard of accessibility.

### A.  Legal Standard for Summary Judgment in FHA Design and Construction Cases

Summary judgment is appropriate if the pleadings and the record, including any affidavits, "sho[w] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  Summary judgment must be granted if the non-moving party fails to make a sufficient showing on "an essential element of [its] case with respect to which [it] has the burden of proof."  *Celotex*, 477 U.S. at 323.

Courts have held that summary judgment "is appropriate" where "the plaintiff demonstrates that a covered dwelling does not comply with the ANSI standards or the HUD Guidelines," and defendant "fail[s] to submit evidence that the property complies with any other

accessibility standard." *United States v. Tanski*, Civ. A. No. 1:04-CV-714, 2007 WL 1017020, at *11 (N.D.N.Y. Mar. 30, 2007); *see also United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1154 (D. Idaho 2003) (entering summary judgment where record showed that defendants' apartment community "fails to comply with the accessibility standards of ANSI" and defendants "failed to submit evidence in the record that [the subject housing] complies with any other accessibility standard"); *United States v. Shanrie Co.*, 669 F. Supp. 2d 932, 938-39 & nn.6-12 (S.D. Ill. 2009) ("*Shanrie II*") (granting summary judgment "on each of th[e] issues" under the FHA for which the United States cited, and the court found, violations of "the Guidelines and ANSI"); *United States v. Quality Built Constr.* ("*Quality Built I*"), 309 F. Supp. 2d 756, 762-63 (E.D.N.C. 2003) (granting "judgment as a matter of law on the issue of liability" where the United States showed violations of the "specific characteristics and features" in the HUD Guidelines and defendants did not come forward with "alternative measurements or any other evidence to show that a triable issue of fact exists"); *United States v. Quality Built Constr. ("Quality Built II")*, 309 F. Supp. 2d 767, 774 (E.D.N.C. 2003) (same).

### B. The FHA Requires Compliance with Objective Design and Construction Standards

#### 1. Statutory Text

The FHA requires that certain multi-family housing developments built for first use and occupancy after March 13, 1991, be designed and constructed in such a manner that:

(i)     the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii)    all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii)   all premises within such dwellings contain the following features of adaptive design:

     (I)     an accessible route into and through the dwelling;

     (II)    light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

     (III)   reinforcements in bathroom walls to allow later installation of grab bars; and

     (IV)   usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).[5]

The statutory text focuses on standards of accessibility for "handicapped persons," 42 U.S.C. § 3604(f)(3)(C)(i) and (ii), and further states that the design and construction requirements of section 3604(f)(3)(C)(iii) can be met through "compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people (commonly cited as 'ANSI A117.1')." 42 U.S.C. § 3604(f)(4).  Read together, sections 3604(f)(3)(C) and 3604(f)(4) require compliance with a recognized, objective accessibility standard broadly applicable to persons with disabilities.  *Tanski*, 2007 WL 1017020, at *14 ("[A] plain reading of section 3604(f)(3)(C) demonstrates that [the FHA] requires compliance with an objective accessibility standard broadly applicable to handicapped people."); *see also Taigen & Sons*, 303 F. Supp. 2d at 1151 (requiring compliance with ANSI, HUD's accessibility Guidelines, "or a comparable *set of accessibility guidelines*") (emphasis added).[6]

---

[5] Multi-family dwellings covered by the FHA are residential buildings with four or more units. If the building has an elevator, all units must comply with the accessibility requirements; if there is no elevator, ground floor units must comply.  42 U.S.C. § 3604(f)(7).

[6] The House Judiciary Committee referred to the FHA's requirements as "standards" and noted that "compliance with these minimal standards will eliminate many of the barriers which discriminate against persons with disabilities in their attempts to obtain equal housing

### 2.  HUD Regulations and Guidelines

The FHA delegates authority to the Secretary of the United States Department of Housing and Urban Development ("HUD") to administer the statute, 42 U.S.C. § 3608(a), to issue regulations, 42 U.S.C.§ 3614a, and to "provide technical assistance to States and units of local government and other persons to implement" the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(5)(C).  Pursuant to its delegated authority, HUD issued regulations in 1989 defining "accessible" to mean multi-family housing that meets the requirements of ANSI or a "comparable standard."   24 C.F.R. § 100.201 (public and common use areas and routes). The regulations, as amended, identify 10 design and construction standards that are "safe harbors" for compliance with the FHA design and construction requirements.[7]   24 C.F.R. § 100.205(e).  The safe harbors are objective measures of accessibility that developers can follow to comply with the FHA.  *Id.*; *see also* 73 Fed. Reg. 63,610, 63,613-14 (Oct. 24, 2008).

One of the safe harbors identified in the HUD regulation is the Fair Housing Accessibility Guidelines ("Guidelines").   56 Fed. Reg. 9472, 9503-15 (Mar. 6, 1991), incorporated by reference at 24 C.F.R. § 100.205(e), Mot. Ex. 13.   The HUD Guidelines contain seven "requirements" and set out the "minimum standards of compliance with the specific accessibility requirements of the Act."  *Id.* at 9476.  The Guidelines include, among other specifications, maximum heights for thresholds, maximum running slopes and cross-slopes along accessible

---

opportunities."  H.R. Rep. No. 100-711, at 27-28 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2188-89.

[7]  24 C.F.R. § 100.205(e)(1)-(2) set out the following 10 "safe harbors": (1) Fair Housing Accessibility Guidelines ("HUD Guidelines"); (2) HUD's Fair Housing Act Design Manual, published by HUD in 1996, updated in 1998; (3) ANSI A117.1-1986; (4) CABO/ANSI A117.1-1992; (5) ICC/ANSI A117.1-1998; (6) 2000 ICC Code Requirements for Housing Accessibility; (7) 2000 International Building Code, as amended by the 2001 Supplement to the International Building Code; (8) 2003 International Building Code, with one condition; (9) ICC/ANSI A117.1-2003; and (10) 2006 International Building Code, with the January 31, 2007, erratum.

routes and on ramps, minimum door widths to allow a wheelchair to pass, the amount of clear floor space necessary for a person in a wheelchair to use a kitchen or bathroom, and maximum and minimum heights for switches, outlets, and environmental controls.  *Id*. at 9503-9515.[8]  The nine other HUD-approved safe harbors likewise contain specifications for the design and location of accessible features in multi-family housing developments.

### 3. A Burden-Shifting Framework Applies to FHA Design and Construction Cases

FHA design and construction claims are analyzed using a burden-shifting framework.  A complainant may make out a prima facie case through a showing of a violation of the Guidelines.  The burden then shifts to the housing provider to show compliance with an alternative "recognized, comparable, objective measure of accessibility."  73 Fed. Reg. at 63,614 (preamble to final regulations adopting the tenth safe harbor).  As HUD explained:

> In enforcing the design and construction requirements of the Fair Housing Act, a prima facie case may be established by proving a violation of HUD's Fair Housing Accessibility Guidelines.  This prima facie case may be rebutted by demonstrating compliance with a *recognized, comparable, objective* measure of accessibility.

*Id*. (emphasis added); *see also* Order on Secretarial Review, *HUD v. Nelson*, HUD ALJ 05-068FH, 2006 WL 4573902, at *5-6 (Sept. 21, 2006) (explaining that "[t]he Charging Party may establish a prima facie case [under the FHA] by proving a violation of the Guidelines.  A respondent can then rebut the presumption established by the violation of the Guidelines by demonstrating compliance with a recognized, comparable, objective measure of accessibility.") (italics omitted).

---

[8]  HUD issued a supplement to the Guidelines in the form of explanatory questions and answers. *Supplement to Notice of Fair Housing Accessibility Guidelines: Questions and Answers about the Guidelines*, 59 Fed. Reg. 33,362-68 (June 28, 1994) (hereinafter "Supplement to the Guidelines").

HUD's interpretation of the FHA's burden-shifting framework is reasonable and entitled to deference.  *See Meyer v. Holley*, 537 U.S. 280, 287-288 (2003) (holding that because HUD was  "the federal agency primarily charged with the implementation and administration of the [FHA]" courts "ordinarily defer to [its] reasonable interpretation of [the] statute") (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984)); *United States* v. *Edward Rose & Sons*, 246 F. Supp. 2d 744, 751-53 (E.D. Mich. 2003) (deferring to HUD's Guidelines in an FHA design and construction case), *aff'd*, 384 F.3d 258, 263 n.4 (6th Cir. 2004) (explaining that deference to HUD's regulations is appropriate in FHA design-and-construction cases).

Courts apply HUD's burden-shifting rule.  For example, in *Nelson v. HUD*, 320 F. App'x 635, 637-38 (9th Cir. 2009), the court of appeals upheld HUD's application of the "burden shifting scheme," explaining that the apartment owner "failed to produce *any* objective evidence of accessibility," and that therefore "[t]he [HUD] Secretary properly concluded that the Nelsons' complex violates the FHA's accessibility requirements" (emphasis original); *see also Taigen & Sons*, 303 F. Supp. 2d at 1151-52 (finding defendants liable because they "have not demonstrated that they followed a comparable set of accessibility guidelines [to ANSI or the Guidelines] in constructing Centennial Trail"); *United States v. Richard & Milton Grant Co.*, No. 01-2069 D/A, slip op. at 8 (W.D. Tenn. Apr. 27, 2004), Mot. Ex. 14 ("If a construction feature does not comply with the Guidelines, the housing provider defending an FHA violation has the burden of showing that the feature is nonetheless accessible . . . by meeting a 'comparable standard' - i.e., one that provides access essentially equivalent to or greater than required by ANSI A117.1") (internal quotation marks and citations omitted); *Quality Built I*, 309 F. Supp. 2d at 763 (granting summary judgment where United States' showing that properties violated the Guidelines was

rebutted only with defendant's "personal experience" but no showing of compliance with an objective standard); *United States v. Shanrie Co.* ("*Shanrie I*"), No. 05-CV-306-DRH, 2007 WL 980418, at *10-11 (S.D. Ill. Mar. 30, 2007) (granting summary judgment on liability where "defendants do not comply with the specifications within the Guidelines" and did not meet "the burden of proving that they nonetheless have not violated the Act"); *Baltimore Neighborhoods, Inc. v. Sterling Homes Corp.*, No. Civ. B-96-915, 1999 WL 1068458, at *4-6 (D. Md. Mar. 25, 1999) (granting summary judgment for the plaintiff based on undisputed measurements showing that the defendants' properties did not meet the standards "as specified in the HUD Guidelines").

### C. The Undisputed Measurements of Posts' Own Experts Show that Post Failed to Comply with the FHA's Design and Construction Requirements

The 20 Post properties identified herein are covered by the FHA, and, based on Post's own experts' measurements, contain repeated violations of the accessibility standards of the HUD Guidelines.

### 1. The 20 Post Properties are "Covered" under the FHA

The Post properties that are subject to this Motion each have four or more units and were built for first occupancy after March 13, 1991. *See* App. A. The 20 properties therefore contain "covered dwellings" subject to the FHA and the features at each property must comply with the FHA's design and construction requirements. *See* 42 U.S.C. §§ 3604(f)(3)(C), 3604(f)(7). Post is responsible for these properties because it is either a participant in their design and construction, or became the owner pursuant to a merger agreement whereby it assumed the liabilities of Columbus Realty Trust, the entity that "designed and constructed" seven of the properties. *See* Cohen Dep. at 73:11-14, Mot. Ex. 8; Merger Agreement at 7-8, Mot. Ex. 5.[9] The

---

[9] Post merged with Columbus Realty Trust pursuant to the laws of Texas and Georgia and, by the terms of the merger, Post "assume[d] all the rights and obligations of [Columbus Realty Trust]." *See* Merger Agreement at 7-8, Article I, §§ 1.1, 1.4, Mot. Ex. 5. Under Texas law, upon

measurements taken by Post's experts that support the United States' Motion were taken in units that are either served by an elevator or located on the ground floor at the 20 properties and are therefore "covered multifamily dwellings" subject to the FHA's requirements.  *See* 42 U.S.C. § 3604(f)(7); App. A; Answer ¶ 5; Mot. Exs. 25-33.

### 2. Post's Properties Fail to Provide Accessible "Public and Common Use Portions" Required by the FHA and HUD Guideline Requirement 2

The FHA requires that "public use and common use portions" of dwellings be "readily accessible to and usable by handicapped persons." 42 U.S.C. § 3604(f)(3)(C)(i).  Public and common use areas include entrances, lobbies, mailbox areas, swimming pools, playgrounds, fitness centers, recreation rooms, and the like.  Guidelines Requirement 2, 56 Fed. Reg. at 9505. Post's failure to meet the standards in Guideline 2 in public and common use areas constitutes prima facie evidence that Post violated the accessibility requirements of the FHA.  *See, e.g.*, *Quality Built I*, 309 F. Supp. 2d at 763 (Plaintiff's proof of non-compliance with the Guidelines regarding the "location of the mailboxes, the lack of curb ramps at the mailboxes, lack of curb ramps at the pool, or the measurements of the pool bathroom facilities" violate the "specific characteristics and features required for accessible public and common areas").

---

a merger taking effect, "all liabilities and obligations . . . are allocated to" the surviving entity. Tex. Bus. Orgs. Code Ann. §§ 10.008; 402.010 (2013); *accord Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995); *Smith v. CDI Rental Equip., Ltd.*, 310 S.W.3d 559, 564-65 (Tex. App. 2010).  Under Georgia law, where two corporations or entities merge, the surviving entity assumes the liabilities of the merged entity.  Ga. Code Ann. § 14-2-1106(a)(3) (2013); *accord Bullington v. Union Tool Corp.*, 328 S.E.2d 726, 727-28 (Ga. 1985); *Mobley v. Hagedorn Constr. Co.*, 147 S.E. 890, 893 (Ga. 1929).  These rules are consistent with the laws nationwide. *See* 15 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 7121 (2009) ("In the case of a merger of one or more corporations into another, where one or more of the corporations ceases to exist and another continues in existence, the latter corporation is liable for the debts, contracts and torts of the former, and this liability is expressly imposed by modern corporations statutes.").

As Post's experts' data show, nine of the 20 properties violate the FHA's public and common use requirements. These properties are:

- Post Luminaria
- Post Massachusetts Avenue
- Post Midtown Square
- Post Park at Phillips Place
- Post Parkside Atlanta
- Post Parkside Orlando
- Post Pentagon Row
- Post Rocky Point
- Post Vineyard

As explained below, these properties do not conform to the Guidelines because they have inaccessible routes, mailboxes and similar features that are out of reach, and common use toilets and bathing facilities that are not accessible to persons with disabilities. *See* App. B at B1-B5, lines 1-68.

### a. Inaccessible routes

Under the Guidelines, steps, significant changes in level, steep slopes, and unstable surface materials may not be part of an accessible route connecting buildings on a site. Guidelines Requirement 2, 56 Fed. Reg. 9505 (incorporating ANSI 117.1-1986 §§ 4.3.6, 4.3.7, 4.3.8, 4.5.1).[10] Similarly, handrails and sufficient doorway-maneuvering clearances are required in common use areas to allow individuals with disabilities to navigate those shared spaces. Guidelines Requirement 2, 56 Fed. Reg. at 9505; ANSI 117.1-1986 §§ 4.8.5, 4.13.6, 4.13.8.

---

[10] For reference purposes, Appendix B includes a column containing the applicable Guideline standard for each feature. Each of the standards listed in that column are contained in the Guidelines at 56 Fed. Reg. at 9503-9515. For features in public and common use areas, the Guidelines incorporate the specifications found in ANSI 117.1-1986, Mot. Ex. 15. Accordingly, for Requirement 2, Appendix B includes a citation to the relevant section of ANSI 117.1-1986 as incorporated in the Guidelines by HUD.

Post's experts recorded over 20 instances at the eight Post properties above that violate the accessible-route requirement.  *See* App. B at B1-B4, lines 1-27, 48-49.  Examples of those are:

- Stairs up to the roof decks at Post Luminaria and Post Vineyard, and a step down to the sundeck at Post Pentagon Row.  *Id*. at B1-B2, lines 12, 19, 21.

- Steps up to over 30 units at Post Midtown Square and Post Park at Phillips Place.  *Id*. at B1-B2, lines 1-7, 13-18.

- Ramps with steep slopes and/or no handrails between units and common use areas at Post Parkside Atlanta and Parkside Orlando.  *Id*. at B1, B3-B4, lines 10-11, 48-49.

- Doors to amenities such as the business center, pool, or outdoor deck with insufficient maneuvering clearances or high thresholds at Post Luminaria, Post Massachusetts Avenue, Post Parkside Orlando, and Post Rocky Point.  *Id*. at B2, lines 22-27.

**b.  Controls out of reach range**

Under the Guidelines, mail boxes, letter drops, key pads, and similar features must be within a certain reach range for persons with disabilities to use.  Specifically, the Guidelines provide that such controls not be higher than 48 inches for a forward approach and no higher than 54 inches for a side approach.  Guidelines Requirement 2, 56 Fed. Reg. at 9505; ANSI 117.1 §§ 4.2.5, 4.2.6.  Post's experts recorded multiple instances at three Post properties that exceed the height requirements for such features.  *See* App. B at B3, lines 36-47.  Examples of these are:

- Twelve rows of mailboxes and seven rent-drop boxes, letter drop slots, and outgoing mail drops outside the allowable reach range at Post Parkside Atlanta, Post Massachusetts Avenue, and Post Parkside Orlando.  *Id*.

### c.  Common use toilet rooms and bathing facilities

Under the Guidelines, restrooms and bathing facilities for shared areas such as fitness centers, lobbies, and swimming pools must be accessible to persons with disabilities.  The Guidelines require that common-area showers be accessible and include properly-placed grab bars.  Guidelines Requirement 2, 56 Fed. Reg. at 9505; ANSI 117.1 § 4.21.1.  The Guidelines also require that pipes beneath lavatories be insulated or otherwise protected against contact with a wheelchair users' legs and require that lavatory mirrors not be placed too high for wheelchair users to use.  Guidelines Requirement 2, 56 Fed. Reg. at 9505; ANSI 117.1 §§ 4.19.4, 4.19.6.

 Post's experts recorded measurements showing at least 27 instances at four Post properties where the common-use bathrooms violate the Guidelines.  *See* App. B at B2-B5, lines 28-35, 50-68.  Some examples are:

- Showers for the pool, fitness center, or spa that are too small or that have thresholds too high for a wheelchair user to cross at Post Massachusetts Avenue, Post Park at Phillips Place, Post Pentagon Row, and Post Rocky Point.  *Id*. at B4-B5, lines 50-56, 60-62, 65-66.

- Five instances of missing or misplaced grab bars in common-area showers at Post Rocky Point.  *Id*. at B4-B5, lines 57-59, 67-68.

- Lavatory pipes that are not protected in four common-area bathrooms at Post Rocky Point.  *Id*. at B2, lines 28-31.

- Mirrors that are mounted too high at Post Pentagon Row and Post Rocky Point.  *Id*. at B2-B3, lines 32-35.

In sum, Post's own expert data show numerous conditions at "public and common use areas" at Post properties that violate the Guidelines and create a prima facie case of FHA

liability.

### 3. Post's Properties Fail to Provide "Usable Doors" Required by the FHA and HUD Guideline Requirement 3

The FHA requires that "all the doors designed to allow passage into and within . . . dwellings [be] sufficiently wide to allow passage by handicapped persons in wheelchairs."  42 U.S.C. § 3604(f)(3)(C)(ii).

The HUD Guidelines require that every door within a dwelling unit that is meant for user passage, including doors that open onto decks, patios, or balconies, have "a clear opening of at least 32 inches nominal width."  Guidelines Requirement 3, 56 Fed. Reg. at 9506.  Narrower doors have been found inaccessible and a violation of the FHA.  *Quality Built I*, 309 F. Supp. 2d at 763-64 ("[T]he undisputed facts before the Court indicate that the widths of the unit doors are thirty inches or less, and in some cases are as narrow as twenty-two inches.  Accordingly, the Court grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(ii)"); *Sterling Homes Corp.*, 1999 WL 1068458, at *4 (granting summary judgment to plaintiff based on 30-inch interior doors).

Post's experts' data show that the doors at nine Post properties consistently measure far less than the Guideline standards.  These properties are:

- Post Abbey
- Post Gallery
- Post Harbour Place
- Post Legacy
- Post Park at Phillips Place
- Post Square
- Post Uptown Village
- Post Vineyard
- Post Vintage

Post's experts recorded over 100 doors at the above nine properties that are narrower than the 32-inch clear opening required, with many doors measuring significantly below the

Guideline requirement.  *See* App. B at B6-B8, lines 1-105.  Examples include:

- Bathroom doors narrower than 30 inches at Post Abbey, Post Gallery, Post Harbour Place, Post Legacy, Post Park at Phillips Place, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  *Id.* at B6-B8, lines 9-38, 70-74, 82-83, 86.

- Bedroom doors narrower than 30 inches at Post Abbey, Post Gallery, Post Park at Phillips Place, Post Uptown Village, and Post Vintage.  *Id.* at B7, lines 39-52.

- Walk-in closet doors as narrower than 30 inches at Post Abbey, Post Gallery, Post Harbour Place, Post Legacy, Post Park at Phillips Place, and Post Uptown Village. *Id.* at B8, lines 87-105.

- Balcony, patio, and/or deck doors narrower than 30 inches at Post Abbey, Post Park at Phillips Place, and Post Vintage.  *Id.* at B6, lines 1-8.

Thus, Post's data show that interior doors at Post properties violate the Guideline standard and the United States has demonstrated a prima facie case that Post violates the FHA's requirement that multi-family housing be constructed with accessible doors.

### 4.  Post's Properties Fail to Provide "Accessible Routes" Into Dwelling Units Required by the FHA and HUD Guideline Requirement 4

The FHA requires "an accessible route into and through the dwelling."  42 U.S.C. § 3604(f)(3)(C)(iii)(I).  An accessible route is "a continuous unobstructed path connecting accessible elements and spaces . . . that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by people with other disabilities."  24 C.F.R. § 100.201.

For interior thresholds at doors connecting units to balconies, patios, and decks, the Guidelines require that "all thresholds at exterior doors, including sliding door tracks," not

include steps and be "no higher than ¾ inch." Guidelines Requirement 4, 56 Fed. Reg. at 9507.

Exterior patio doors may have a maximum step down of four inches to an impervious surface.

*Id.* Failure to comply with this requirement is a prima facie showing of an FHA violation. *See,*

*e.g.*, *Shanrie II*, 669 F. Supp. at 938-39 & n.10 (granting summary judgment as to the lack of an

accessible route into and through the dwelling where undisputed measurements showed door

threshold violations and "the exterior patio and storage room ha[d] a step at the door");

*Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700, 713-14 (D. Md.

1999) (granting summary judgment where undisputed evidence showed a step to unit balconies);

*Quality Built I*, 309 F. Supp. 2d at 764 (granting summary judgment to plaintiff where

undisputed evidence showed a violation of the Guidelines because "the inside thresholds of the

patio doors at Breezewood and Hyde Park exceed ¾ of an inch").

Post's experts' data show numerous balcony steps and thresholds at nine Post properties

that exceed the height permitted by the Guidelines. These properties are:

- Post Biltmore
- Post Harbour Place
- Post Legacy
- Post Luminaria
- Post Massachusetts Avenue
- Post Park at Phillips Place
- Post Square
- Post Uptown Village
- Post Vineyard

Post's experts observed multiple instances of steps to balconies and balcony-door

thresholds that violate the Guidelines. *See* App. B at B9-B11, lines 1-27. Examples include:

- Step-down balconies at Post Uptown Village, two of which measured 8 and ⅛
  inches and 14 and ½ inches. *Id*. at B10, lines 24-25. Step-up balconies at Post
  Massachusetts Avenue, one of which measured 11 and ⅜ inches, and step-up

balconies at Post Luminaria, one of which measured 9 and ½ inches.  *Id*. at B10, lines 17, 19.[11]

- Doors to balconies and patios at six properties without steps but with thresholds that are too high.  *Id*. at B9-B11, lines 1-16, 20-23, 26-27.

In sum, Post's data show that the nine Post properties lack the continuous, unobstructed path to balconies and patios that Guideline Requirement 4 requires.

### 5. Post's Properties Fail to Provide "Light Switches, Electrical Outlets, Thermostats, and Other Environmental Controls in Accessible Locations" Required by the FHA and HUD Guideline Requirement 5

The FHA requires "light switches, electrical outlets, thermostats, and other environmental controls in accessible locations" within dwelling units.  42 U.S.C. § 3604(f)(3)(C)(iii)(II).  The Guidelines specify that such features must be located no lower than 15 inches and no higher than 48 inches above the finished floor level.  Guidelines Requirement 5, 56 Fed. Reg. at 9507. Where a feature is placed over an obstruction (for example, a kitchen cabinet or a bathroom lavatory that the user must reach over) the maximum height is 46 inches for a side reach.  *Id*.

The placement of switches, outlets, and controls outside the range set in the Guidelines constitutes a prima facie violation of the FHA.  *See, e.g.*, *Quality Built I*, 309 F. Supp. 2d at 764-65 ("Defendants fail to demonstrate any issues of material fact with respect to Plaintiff's claim that the placement of light switches, electrical outlets, and thermostats violates [the FHA]" where the Guidelines were violated by undisputed measurements of thermostats at 61 and 57 and ½

---

[11]  Paul Sheriff, a Post expert who navigates the Post properties in his wheelchair to evaluate accessibility, testified at deposition that the balcony in Unit 15E at Post Luminaria was "an element that's not usable as it sits."  Sheriff Dep. at 42:5-6, Mot. Ex. 11.  Further, Post's Vice President of Design, William Cartwright, acknowledged that Post was aware at the time of design and construction that the balconies at Post Luminaria were inaccessible, Excerpt of Deposition of William Cartwright at 183:24-184:2 (Oct. 29, 2013), Mot. Ex. 12, and he conceded that Post knew that these balconies were FHA violations, stating that the steps "were higher than allowed by the Federal Code," *id*. at 183:16-19.

inches above the floor, numerous light switches that were higher than 48 inches, and outlet receptacles located less than 15 inches from the floor); *Montana Fair Housing, Inc. v. Am. Capital Dev., Inc.*, 81 F. Supp. 2d 1057, 1066-67 (D. Mont. 1999) (thermostats that exceeded the maximum of 48 inches and outlets that were lower than 15 inches violated the FHA).

As Post's data show, there are 12 Post properties that contain numerous light switches, outlets, and thermostats that are significantly beyond the allowable dimensions.  These properties are:

- Post Biltmore
- Post Harbour Place
- Post Luminaria
- Post Massachusetts Avenue
- Post Park at Phillips Place
- Post Parkside Atlanta
- Post Parkside Orlando
- Post Pentagon Row
- Post Rocky Point
- Post Square
- Post Uptown Village
- Post Vintage

Post's experts recorded over 200 violations of the Guidelines' reach range requirements for switches, outlets, and environmental controls at these twelve properties.  *See* App. B at B12-B17, lines 1-211.  Examples include:

- Light switches that are too high for a wheelchair user to access at Post Square.  *Id.* at B12, lines 1-5.

- Outlets over bathroom vanities that are too high at Post Biltmore and wall outlets too low for accessible use at Post Biltmore, Post Luminaria, Post Rocky Point, Post Square, and Post Vintage.  *Id.* at B16-B17, lines 173-211.

- Over 150 thermostats that measure 55 inches or higher—substantially above the 48-inch limit in the Guidelines—at 11 of the 12 properties above. *Id.* at B12-B16, lines 6-172.

In sum, Post's own experts recorded measurements that constitute repeated, significant violations of the Guidelines requirement that switches, outlets, and environmental controls be reachable and accessible to persons with disabilities.

### 6. Post's Properties Fail to Provide "Usable Kitchens and Bathrooms" Required by the FHA and HUD Guideline Requirement 7

The FHA requires covered units to include "usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space." 42 U.S.C. § 3604(f)(3)(C)(iii)(IV). With regard to kitchens, the Guidelines require a minimum clearance between counters and all opposing base cabinets, countertops, appliances, or walls of at least 40 inches to allow sufficient maneuvering space. Guidelines Requirement 7, 56 Fed. Reg. at 9511. In bathrooms, the Guidelines require that toilet alcoves be wide enough so that a wheelchair user can approach and safely transfer to the toilet inside the alcove. Specifically, the Guidelines require that if the alcove wall or lavatory adjacent to the toilet is deeper than 24 inches, the minimum alcove width must be 48 inches. Guidelines Requirement 7, 56 Fed. Reg. at 9511, 9513 & Fig. 7(a).

Failure to satisfy the Guidelines' maneuvering-space standards establishes a prima facie FHA violation. *See, e.g.*, *Richard & Milton Grant Co.*, slip op. at 21-22, Mot. Ex. 14 (granting summary judgment where defendants provided 36 inches of clearance in the kitchens instead of the required 40 inches); *Quality Built I*, 309 F. Supp. 2d at 766 ("the bathrooms of the Breezewood units do not conform to the measurements set forth in the HUD guidelines and have insufficient space for a person in a wheelchair to maneuver").

As illustrated in Appendix B, kitchens and bathrooms at 13 Post properties violate the maneuvering-space standards based on measurements by Post's experts.  *See* App. B at B18-B26, lines 1-157.  The properties containing these kitchens and bathrooms are:

- Post Abbey
- Post Biltmore
- Post Coles Corner
- Post Gallery
- Post Harbour Place
- Post Massachusetts Avenue
- Post Parkside Atlanta
- Post Parkside Orlando
- Post Square
- Post Toscana
- Post Uptown Village
- Post Vineyard
- Post Vintage

Specifically, Post's experts recorded over 150 measurements at the above 13 properties that do not comply with the Guidelines' standards for sufficient maneuvering space.  *Id*.  For example:

- At least 130 kitchens in the 13 properties above have less than 40 inches between opposing cabinets, refrigerators, dishwashers, sinks, ranges, walls, and other barriers.  *Id.* at B19-B26, lines 28-157.

- Nearly 30 bathroom alcoves provide insufficient maneuvering and transfer space at Post Abbey, Post Coles Corner, Post Gallery, Post Harbour Place, Post Parkside Orlando, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  *See id.* at B18-B19, lines 1-27.

These repeated violations of the Guidelines' Requirement 7 establish a prima facie case that Post failed to provide "usable kitchens and bathrooms" as required by the FHA.  *See* 42 U.S.C. § 3604(f)(3)(C)(iii)(IV).

**D. Post Cannot Show That the 20 Properties At Issue in this Motion Satisfy any Safe Harbor or any Comparable, Recognized Objective Standard**

Because the United States has demonstrated that hundreds of features at Post's properties violate the HUD Guidelines, the burden falls to Post to establish that it complied with another safe harbor or an alternative "recognized, comparable, objective measure of accessibility." *See* 73 Fed. Reg. at 63,614; *Taigen & Sons*, 303 F. Supp. 2d at 1151 (explaining that to avoid liability, defendants who choose not to comply with the Guidelines or ANSI must nonetheless "demonstrat[e] that they followed a comparable set of accessibility guidelines"); *Shanrie I*, 2007 WL 980418, at *10-11 (defendants who do not comply with the Guidelines "bear the burden of proving that they nonetheless have not violated the Act"). Post cannot meet this burden.

First, Post cannot demonstrate that any of the features that are the subject of this Motion comply with any HUD-approved safe harbor. As HUD has explained, the Guidelines are the least-restrictive of the safe harbors and "describe minimum standards of compliance with the specific accessibility requirements of the Act." 56 Fed. Reg. at 9476; *accord Shanrie II*, 669 F. Supp. 2d at 936 (recognizing the Guidelines as "setting minimum standards for compliance with the design and construction requirements"); *Taigen & Sons*, 303 F. Supp. 2d at 1151 (citing the "purpose of the Guidelines" to "describe the minimal standards of compliance" with the FHA) (internal quotation marks omitted); *United States v. Hallmark Homes, Inc.*, No. CV01–432–N– EJL, 2003 WL 23219807, at *7 (D. Idaho Sept. 29, 2003) ("HUD issued Guidelines, in March of 1991, that set forth the minimum standards of compliance with the accessibility requirements of the Act"). The features identified in this Motion, which violate the "minimum standard" Guidelines, also violate every other HUD-approved safe harbor.[12] None of Post's experts opine

---

[12] One of Post's litigation experts, Paul Sheriff, conceded in a deposition in a prior FHA case in which he served as a defense expert that the HUD Guidelines are the least-restrictive safe harbor. Excerpt of Deposition of Paul Sheriff in *United States v. JPI Construction, LP*, Civil Action No.

that the measurements they took comply with the Guidelines or any other safe harbor.  Post, therefore, cannot demonstrate that it complies with the FHA through compliance with any of the 10 safe harbors approved by HUD.

Second, Post can advance no evidence that these features comply with a recognized, comparable, objective accessibility standard, i.e., one that provides accessibility equal to or greater than the Guidelines or other safe harbors.  *See Richard & Milton Grant Co.*, slip. op. at 8, Mot. Ex. 14 ("If a construction feature does not comply with the Guidelines, the housing provider defending a FHA violation has the burden of showing that the feature is nonetheless accessible . . . by meeting a 'comparable standard'— i.e., one that provides access essentially equivalent to or greater than required by ANSI A117.1") (internal quotation marks and citations omitted).  Post cannot make this showing because its experts base their conclusions on subjective assessments of accessibility that are not grounded in any recognized code and which, by their own admission, provide a lesser level of accessibility than the Guidelines.

Both Paul Sheriff and Alison Vredenburgh evaluate accessibility according to the personal experiences of a wheelchair user.  In Sheriff's case, he navigates areas of the property in his own wheelchair.  Sheriff Dep. at 74:12-24, Mot. Ex. 11; *see also* Paul Sheriff Expert Report ¶ 5 (July 31, 2013), Mot. Ex. 37.  In Vredenburgh's case, she photographs her associate, a non-disabled person, in a wheelchair and uses the assistant to test the positioning of a wheelchair user at features within the units.  Vredenburgh Dep. at 151:2-152:9, 158:5-8, Mot. Ex. 10.  Neither Sheriff nor Vredenburgh make any attempt to lay their inspection findings at Post properties

---

3:09-cv-0412B, at 120:8-14 (N.D. Tex. Jan. 20, 2011), Mot. Ex. 16 ("Q: In your expert opinion, with 20 years of experience looking at these safe harbors, which one would you think to be the most minimal?  A: I would think that the most minimum requirement of all the safe harbors are the non-mandatory accessibility guidelines contained within the Fair Housing Amendments Act.").

against any accessibility standard, building code, or other objective, recognized measure.  Sheriff

Dep. at 108:19-109:3, Mot. Ex. 11; Vredenburgh Dep. at 62:13-63:17, Mot. Ex. 10.   Their

approaches are inherently subjective and do not meet the legal defense of demonstrating

compliance with a recognized, comparable, objective measure of accessibility.

Indeed, courts have found that the type of evidence presented by Sheriff and

Vredenburgh—the single person yardstick—to be immaterial as a matter of law.  *See Tanski*,

2007 WL 1017020, at *14 ("No reasonable reading of the [FHA] supports the view that the Fair

Housing Act's requirements may be met by satisfying the accessibility needs of a particular

handicapped individual."); *Quality Built II*, 309 F. Supp. 2d at 772 n.1 ("Whether one disabled

person may be able to maneuver through the complex and units does not indicate compliance

with the Act.").

Post's third expert, Mark Wales, also makes no attempt to demonstrate whether or how

his measurements satisfy any objective accessibility standard comparable to the HUD-approved

safe harbors.   While Wales takes measurements of features during his inspections, his

conclusions regarding those features, and his opinions regarding accessibility at Post's

properties, do not rely on a written standard.  Wales Dep. at 136:3-137:8, 195:2-196:4, Mot. Ex.

9.   Rather, Wales uses an amalgam of sources, such as studies by social scientists, "technical

assistance material," "[his] own experience," and "things that go beyond the safe harbors."  *Id*. at

62:8-10, 68:6-13, 73:8-12, 75:4-15, Mot. Ex. 9.  For example, according to Wales, there is no

standard for a threshold height or a door width.  *Id*. at 131:7-137:8, 192:13-23, Mot. Ex 9.  He

concedes that his view that a door 29 or 30 inches wide is sufficient for user passage is based on

his personal belief and is outside any safe harbor.  *Id.* at 133:4-137:8, Mot. Ex. 9.  While Wales

stated in his deposition in this case that he believes his methodology is "objective," *id.* at 68:6-

69:6, Mot. Ex. 9, Wales has testified in previous cases in which he has served as a developer's expert that his methodology is wholly subjective.  Excerpt of Deposition of Mark Wales in *United States v. Shanrie Co.*, No. 05-CV-306-DRH, at 174:15-177:12 (S.D. Ill. Mar. 10, 2006), Mot. Ex. 18 (confirming his opinion that "the determination of compliance with the Fair Housing Act [is] subjective"); Excerpt of Deposition of Mark Wales in *United States v. Edward Rose & Sons*, No. 02-CV-73518, at 154:2-10, 156:13-22, 181:2-8 (E.D. Mich. Oct. 5, 2004); Mot. Ex. 17 (explaining that he makes the determination of whether a public use or common use area is readily accessible to and usable by handicapped persons by making "a subjective determination based on my experience and understanding and reference materials").

Thus, Post can adduce no evidence to support a defense that the features that are the bases of this Motion satisfy any HUD-approved safe harbor or any other recognized, comparable, and objective standard that provides the same or greater level of accessibility as the HUD-approved safe harbors.

## II.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON ITS ADA CLAIM

### A.  The ADA Requires Adherence to Objective Design and Construction Standards

In addition to being covered by the FHA, any portion of a multi-family residential development that is a "public accommodation" (as opposed to those areas open only to residents and their guests) is also covered by the Americans with Disabilities Act.  Title III of the ADA prohibits any party "who owns, leases (or leases to), or operates a place of public accommodation" from denying disabled individuals "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).  Newly constructed facilities subject to the ADA must be "readily accessible to and usable by individuals with disabilities."  *Id.*  § 12183(a)(1).

Congress directed the Department of Justice to "issue regulations . . . that include standards applicable to facilities" covered by Title III.  *Id.* § 12186(b).[13]

The regulations require that all new construction for places of public accommodation comply with a single set of standards.  At the time the properties at issue in this case were constructed, the applicable accessibility standard under the ADA was the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG Standards").   28 C.F.R. §§ 36.401, 36.406(a)(1), Pt. 36, App. D., Mot. Ex. 19; *see also* 56 Fed. Reg. 35,544, 35,592-35,604 (July 26, 1991) (final rule implementing the ADAAG Standards).  Failure to comply with these specific ADAAG Standards in buildings constructed after January 26, 1993, is a violation of the ADA. *See* 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406(a)(1).[14]

 For new multi-family housing, the ADAAG Standards apply to common areas within residential developments that are open to the public.  *See Supplement to the Guidelines,* 59 Fed. Reg. at 33,363 (The ADAAG Standards apply to "common areas . . . within residential facilities . . . if they are open to persons other than residents and their guests").  This includes a property's rental office, public restroom, related parking, and other public use areas at multi-family properties that are not restricted to tenants and their guests.  *Id.*

The ADAAG Standards are mandatory and liability is established where a defendant fails to comply with the measurements set forth therein.  For example, in *Long Beach v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001), the court of appeals reversed a magistrate judge's determination that "because the [defendant] demonstrated obedience to the spirit of the

---

[13]  Places of "public accommodation" include rental offices.  42 U.S.C.§ 12181(7)(E) (defining "sales" or "rental establishment" as a public accommodation); *see also Rommel Builders*, 40 F. Supp. 2d at 705-06 (holding that the sales office in a residential development "must be accessible to persons with disabilities under the ADA as a place of public accommodation").

[14]  Under the most-recent revision to the ADA regulations, the ADAAG Standard is referred to as the "1991 Standards."  *See* 28 CFR § 36.406(a).

ADA, plaintiffs were not entitled to injunctive relief."  In reversing, the court of appeals noted "there is no room for discretion here" and remanded the case "for entry of an injunction ordering that the bathroom doors be brought into compliance with [ADAAG] Guideline  9.4."  *Id.*; *see also Rush v. Denco Enters., Inc*. 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (summary judgment granted for plaintiff where the door leading to women's restroom in chain restaurant violated ADAAG § 4.13.6 governing maneuvering clearances at doors); *Sapp v. MHI P'ship, Ltd.*, 199 F. Supp. 2d 578, 583 (N.D. Tex. 2002) (developers liable on summary judgment for including steps to the sales office in violation of  ADAAG § 4.3.2(1), which required an accessible route to the sales office).

### B.  Post's Properties Have Features that Violate the ADAAG Standards

The Post properties that are the subject of this Motion were built for first occupancy after January 26, 1993, and accordingly the public areas such as the leasing office, public restroom, and public parking, are subject to the ADA.  *See* App. A; *see also* Wales Dep. at 39:9-40:12, Mot. Ex. 9 (Post's expert's acknowledgment that the ADAAG Standards are mandatory and applicable to the properties he inspected).  Accordingly, these spaces and their features must comply with the design and construction requirements in the ADAAG Standards.  28 C.F.R. § 36.406(a)(1).

Post's own experts' data show that the following 13 properties contain numerous violations of the ADAAG Standards:

- Post Alexander
- Post Biltmore
- Post Coles Corner
- Post Legacy
- Post Luminaria
- Post Massachusetts Avenue
- Post Midtown Square
- Post Park at Phillips Place

- Post Parkside Atlanta
- Post Parkside Orlando
- Post Rocky Point
- Post Toscana
- Post Uptown Village

As explained below, these properties contain more than 65 violations of the ADAAG Standards' accessibility requirements for (1) public restrooms, (2) public walkways, and (3) public parking. *See* App. B at B27-B32, lines 1-66.

### 1. Post's Public Restrooms Violate the ADAAG Standards

The ADAAG Standards contain specific prescriptions for accessibility in restrooms that are open to the public. The above 13 properties contain over 50 violations of the applicable restroom requirements.

### a. Turning circle

Under the ADAAG Standards, there must be a circle at least 60 inches in diameter or a T-shaped space within a 60-inch square to permit a person using a wheelchair to turn around. ADAAG §§ 4.1.3(11), 4.2.3, 4.22.3. Post's experts' data show three Post properties—Post Midtown Square, Post Toscana, and Post Uptown Village—where the public restroom lacks the necessary turning space to make the restroom accessible to persons using wheelchairs. *See* App. B at B30-31, lines 52-54. Accordingly, these properties have restrooms that violate the ADA.

### b. Water closet centerline

To provide sufficient space to transfer to the toilet, the ADAAG Standards require the water closet centerline to be 18" from the adjacent side wall. ADAAG § 4.1.3(11), 4.16.2. At Post Coles Corner, Post Legacy, Post Luminaria, Post Massachusetts Avenue, Post Park at Phillips Place, and Post Rocky Point, Post's experts measured centerlines greater than 19 inches.

*See* App. B at B31-B32, lines 60-66.  These restrooms violate the ADAAG Standards and the ADA.

### c.  Lavatories

The ADAAG Standards require that public restrooms accommodate wheelchair users by including a toe clearance of at least nine inches and a knee clearance of at least eight inches under the lavatory.  ADAAG  §§ 4.1.3(11), 4.19.2 & Fig. 31.  The public restrooms at Post Coles Corner and Post Rocky Point do not have the requisite toe clearance and Post Park at Phillips Place lacks the requisite knee clearance.  *See* App. B at B28, lines 18-20.

Lavatories in public restrooms must also have hot water and drain pipes that are insulated or otherwise protected against contact with the body.[15]  ADAAG §§ 4.1.3(11), 4.19.4.  Public lavatories at Post Biltmore, Post Legacy, Post Luminaria, and Post Toscana have lavatory hot water and drain pipes that lack insulation or other protection.  *See* App. B at B28, lines 13-17.  Post violates the ADAAG Standards, and therefore the ADA, with respect to these properties.

### d.  Restroom doors

Public restroom doors and stall doors must have certain spacing and clearance requirements to allow persons with disabilities to open, close, and pass through them.  Restroom doors without closers must have 48 inches of clear maneuvering space.  ADAAG §§ 4.1.3(6), 4.13.6.  Neither the men's nor the women's public restroom at Post Parkside Orlando has sufficient door openings.  *See* App. B at B27, lines 9-10.

To allow a person using a wheelchair to properly open and close a restroom stall door, hinges on restroom stall doors must be no more than four inches from the wall opposite the toilet.

---

[15]   The FHA has a similar provision applicable to restrooms that are shared by residents and their guests but that may not be open to the public, such as restrooms serving swimming pools and fitness centers.  Those restrooms were addressed separately under FHA Requirement 2 on pp. 13-17.

ADAAG §§ 4.1.3(11), 4.17.3 & Fig. 30(a).  In both the women's and men's public restrooms at Post Massachusetts Avenue, the hinge side of the doors exceeds the ADAAG Standards' prescription.  *See* App. B at B27, lines 11-12.  The restroom doors at these properties violate the ADA.

### e.  Dispensers in restrooms

Under the ADAAG Standards, the reach range for controls, dispensers, and receptacles in public restrooms has a maximum of 48 inches for a forward reach and 54 inches for a side reach. *See* ADAAG §§ 4.1.3(13), 4.2.5, 4.2.6, 4.27.3.  Dispensers for soap, paper towels, and seat protectors exceed the ADAAG Standards' maximum height at four Post properties: Post Biltmore, Post Parkside Atlanta, Post Parkside Orlando, and Post Massachusetts Avenue.  *See* App. B at B27, lines 1-8.  Each of these public restrooms therefore contains ADA violations.

### f.  Grab bars

Grab bars in public restrooms are a critical component of access for persons with disabilities and, accordingly, the ADAAG Standards specify the proper dimension and placement of grab bars.  Side wall grab bars must be a minimum of 42 inches long and must be mounted with the leading edge no less than 54 inches from the rear wall and the back edge no more than 12 inches from the rear wall.  ADAAG §§ 4.1.3(11), 4.16.4.  Rear wall grab bars must be at least 36 inches long and extend at least 24 inches from centerline on the open side of the toilet.  *Id*. Measurements taken by Post's experts constitute evidence of 14 violations of the ADAAG Standards' grab bars requirements at eight Post properties.  *See* App. B at B29-B30, lines 32, 40-51.  At Post Parkside Orlando and Post Luminaria, the grab bars in each of three public restrooms are too short.  *See id.* at B29-B30, lines 32, 48-49.  At Post Alexander, Post Coles Corner, Post Legacy, Post Luminaria, Post Massachusetts Avenue, Post Midtown Square, Post

Parkside Orlando, and Post Rocky Point, the grab bars are improperly located on the side walls in violation of the ADAAG Standards. *See* App. B at B30, lines 40-47, 50-51. Accordingly, Post is liable for failing to comply with the ADA with regard to the restrooms at these properties.

### g. Mirrors

The ADAAG Standards require that restroom mirrors be mounted no higher than 40 inches above the finished floor so that persons using wheelchairs may use them. ADAAG § 4.19.6. At eight Post properties—Post Biltmore, Post Coles Corner, Post Legacy, Post Luminaria, Post Park at Philips Place, Post Parkside Orlando, Post Toscana, and Post Uptown Village—the public restroom mirrors exceed the ADAAG Standards' maximum with some mirrors mounted 48 inches or higher above the floor. These mirrors violate the ADAAG Standards and the ADA. *See* App. B at B28-B29, lines 21-29.

### 2. Post's Public Walkways and Parking Violate the ADAAG Standards

The ADAAG Standards require accessible routes to leasing offices and other facilities that are open to the public. Accordingly, the ADAAG Standards require that running slopes, or slopes parallel to the direction of travel, not exceed 5% and that cross-slopes, or slopes perpendicular to the direction of travel, not exceed 2%. ADAAG §§ 4.1.2(1)-(2), 4.3.7. However, Post's experts' data show at least nine cross-slopes that exceed 2% on public walkways, including on the route from the garage to the leasing center at Post Alexander and at the main door to the lobby at Post Massachusetts Avenue. *See* App. B at B29, lines 30-31, 33-39.

The ADAAG Standards require that a van-accessible parking space have an identifying sign and be eight feet wide with an eight-foot adjoining access aisle. ADAAG §§ 4.1.2(5)(b), 4.6.3. Applying data collected by Post's experts, Post Alexander and Post Midtown Square have

parking spaces that violate these requirements.  *See* App. B at B31, lines 57-59.  The ADAAG

Standards also require that the accessible parking space(s) serving a particular building be

located on the shortest accessible route from the parking area to the accessible entrance.

ADAAG § 4.6.2.  According to Post's experts' inspection notes, that is not the case at two of the

parking levels at Post Alexander.  *Id*. at B31, lines 55-56.

Thus, based solely on Post's undisputed data, the 13 Post properties identified above

contain at least 65 violations of the mandatory ADAAG Standards related to public restrooms,

public walkways, and public parking.  Based on these facts, the United States is entitled to

summary judgment on liability for its ADA claim.

## III.   THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT THE FHA AND ADA VIOLATIONS CONSTITUTE A DENIAL OF RIGHTS TO A GROUP OF PERSONS AND A PATTERN OR PRACTICE OF DISCRIMINATION

The FHA and ADA authorize the Attorney General to bring suit where he has reasonable

cause to believe that a defendant has: (1) denied rights to a "group of persons" where such denial

raises an issue of general public importance, or (2) engaged in a "pattern or practice of

discrimination."  42 U.S.C. §§ 3614(a), 12188(b)(1)(B).  Both apply here.

### A.  Post's Conduct Denies Rights to People with Disabilities

Under the FHA and ADA, the Attorney General has authority to bring suit where he has

reasonable cause to believe that a defendant denied rights to a "group of persons" where such

denial raises an issue of general public importance.  42 U.S.C. §§ 3614(a), 12188(b)(1)(B).

Courts have consistently refrained from reviewing the Attorney General's determination that a

matter is of general public importance, holding that such determination is best left to the

discretion of the Attorney General.  *United States v. Bob Lawrence Realty*, 474 F.2d 115, 125

n.14 (5th Cir. 1973); *Shanrie I*, 2007 WL 980418, at *9. Accordingly, the only issue for this Court is whether Post's conduct denied a group of persons rights guaranteed under the FHA.

As demonstrated above, the noncompliant features and conditions at the Post properties that are the subject of this Motion create barriers to access for tenants, prospective tenants, and guests with disabilities. This Court should join other courts in concluding that such conduct constitutes a denial of rights to a protected group of persons. *See, e.g.*, *Taigen & Sons*, 303 F. Supp. 2d at 1139 ("[T]he Court concludes that if the Taigen Defendants have inadequately designed and constructed Centennial Trail to serve persons with disabilities, the Taigen Defendants have denied a group of persons rights granted by the Fair Housing Act and such a denial raises an issue of general public importance."); *United States v. Hartz Constr. Co.*, No. 97 C 8175, 1998 WL 42265, at *2 (N.D. Ill. Jan. 28, 1998) ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act" and "raises an issue of general public importance.'"). The United States should prevail on its denial-of-rights claim under 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

### B. Post's Conduct Constitutes a Pattern or Practice of Discrimination

A "pattern or practice" of discrimination is established when the evidence shows "more than the mere occurrence of isolated . . . or sporadic discriminatory acts." *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). In this case, the undisputed facts show that Post designed and constructed hundreds of features at 20 multi-family housing properties with violations of the FHA and ADA. *See* App. B. Even though Post's experts only measured a sample of the features at each property, it is clear that these conditions are neither isolated nor sporadic. Their numerosity represents a systemic denial of housing rights and access for persons

with disabilities and harms not only current residents and visitors with disabilities but also any future renters or visitors with disabilities.   This constitutes a "pattern or practice" of discrimination.   *See Tanski*, 2007 WL 1017020, at \*24 ("Having already found multiple violations of section 3604(f)(3)(C) in a total of 362 covered units . . . the Court has no difficulty finding a pattern or practice of Fair Housing Act violations."); *Quality Built I*, 309 F. Supp. 2d at 760 ("The alleged violations in this case consist of numerous features planned and constructed in over one hundred units at two separate developments.   The Court finds that the facts asserted by the United States, if shown, clearly indicate a regular or repeated violation of the protections afforded by the Act.").

The United States has shown several hundred FHA and ADA violations at 20 Post properties though undisputed evidence submitted by Post's own experts.   As such, as a matter of law, Post has engaged in a pattern and practice of discrimination and the Court should enter summary judgment as to Post's liability.

## IV.    RELIEF REQUESTED

Courts exercise broad powers to determine the appropriate relief to remedy a pattern or practice of discrimination.    *See generally*, *Int'l Bhd. Of Teamsters*, 431 U.S. at 364 (acknowledging "broad equitable powers" vested in courts to determine the appropriate remedy in pattern and practice cases under Title VII); *United States v. Jamestown Center-In-The-Grove Apts.*, 557 F.2d 1079, 1080 (5th Cir. 1977) (holding that affirmative relief for a pattern or practice of discrimination under the FHA should be "determined on a case-by-case basis" and "tailored in each instance") (citing cases).

Equitable relief, training requirements, monetary damages, and a civil penalty are all forms of relief available in design and construction cases under the FHA and ADA.   Appropriate

equitable relief may include an order to retrofit non-compliant features, the creation of a retrofit fund, and the appointment of a special master to identify and oversee required retrofits. *See, e.g., Tanski*, 2007 WL 1017020 at *25 (ordering defendants to submit "a detailed remedial plan with appropriate timetables to retrofit the noncompliance units in the Tanksi properties so that they comply with the Fair Housing Act"); *Shanrie II*, 669 F. Supp. 2d at 940 ("[T]he court agrees that retrofitting is an appropriate remedy for FHA violations"); *Baltimore Neighborhoods Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 467-74 (D. Md. 2000) (ordering defendant to deposit funds "in the registry of the Court to fund the retrofitting of the common areas" and the "interiors of ground floor units" and ordering a special master to administer the relief); *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065, 1082 (N.D. Cal. 1999) (ordering the parties "to meet and confer to develop a compliance plan to ensure that Macy's begins to meet its obligations under the ADA").   Courts may enjoin a defendant to implement policies and training requirements to promote compliance with the law and minimize the chance of recurrent violations. *See Lieber*, 80 F. Supp. 2d at 1081-82.

In addition to equitable relief, courts are empowered under the FHA and ADA to award monetary damages to persons aggrieved by a defendant's discriminatory practices,[16] 42 U.S.C. §§ 3614(d)(1)(B), 12188(b)(2)(B), and to assess a civil penalty to vindicate the public interest pursuant to 42 U.S.C. §§ 3614(d)(1)(C) and 12188(b)(2)(C).

 If the Court grants summary judgment to the United States on the issue of Post's liability, the United States requests that the Court order the parties to submit briefing addressing the scope of appropriate relief, including the forms of relief identified above.

---

[16]  The United States has identified sixteen persons aggrieved by Post's actions.  United States' Second Supp. Resps. and Objections to Defendants' Second Set of Interrogatory Reqs. to Plaintiff No. 10 (Nov. 1, 2013), Mot. Ex. 20.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant summary judgment as to liability against Post.  A proposed order is enclosed herewith.


Respectfully submitted,


JOCELYN SAMUELS
Acting Assistant Attorney General

_____/s/ Beth Pepper_____
STEVEN H. ROSENBAUM
Chief
SAMEENA SHINA MAJEED
Deputy Chief
BETH PEPPER
COLLEEN M. MELODY
JEFFREY A. KNISHKOWY
PAMELA O. BARRON
Trial Attorneys
United States Department of Justice
Housing and Civil Enforcement Section
Civil Rights Division
950 Pennsylvania Ave. NW – G St.
Washington, DC  20530
(202) 305-0916
Beth.Pepper@usdoj.gov
*Attorneys for the United States of America*


Dated: January 14, 2014

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
       BRIAN P. HUDAK
       Assistant United States Attorney
       555 Fourth Street, NW
       Washington, DC 20530
       (202) 252-2549

# Appendix A

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

# Appendix A

| Property Name and Address | Number of Units and Source | All Units Served by Elevator and Source | Date of First Occupancy After March 13, 1991 and Source | Designed/Constructed or Merger Agreement and Source |
|---|---|---|---|---|
| Post Abbey<br>2525 Worthington<br>Dallas, TX 75204 | 34 units;<br>Defs.' Admis. ¶ 3[1] | Yes;<br>Defs.' Answer ¶ 5[2] | Yes;<br>Defs.' Admis. ¶ 2 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1[3] |
| Post Alexander<br>3410 Alexander Road, NE<br>Atlanta, GA 30326 | 307 units;<br>Defs.' Admis. ¶ 37 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 36 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 35 |
| Post Biltmore<br>855 West Peachtree Street, NW<br>Atlanta, GA 30308 | 276 units;<br>Defs.' Admis. ¶ 58 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 57 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 56 |
| Post Coles Corner<br>3096 N. Hall Street<br>Dallas, TX 75204 | 186 units;<br>Defs.' Admis. ¶ 160 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 159 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |
| Post Gallery<br>3006 Woodside Street<br>Dallas, TX 75204 | 34 units;<br>Defs.' Admis. ¶ 289 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 288 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |
| Post Harbour Place<br>800 Harbour Post Drive<br>Tampa, FL 33602 | 578 units;<br>Defs.' Admis. ¶ 362 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 361 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 360 |
| Post Legacy<br>5741 Martin Road<br>Plano, TX 75024 | 384 units;<br>Defs.' Admis. ¶ 441 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 440 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 439 |
| Post Luminaria<br>385 First Avenue<br>New York, NY 10010 | 138 units;<br>Defs.' Admis. ¶ 495 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 494 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 493 |
| Post Massachusetts Avenue<br>1499 Massachusetts Avenue, NW<br>Washington, DC 20005 | 269 units;<br>Defs.' Admis. ¶ 514 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 513 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 512 |
| Post Midtown Square<br>302 Gray Street<br>Houston, TX 77002 | 429 units;<br>Defs.' Admis. ¶ 553 | Not all units serviced by elevator;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 552 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 551 |
| Post Park at Phillips Place<br>4835 Cameron Valley Parkway<br>Charlotte, NC 28210 | 402 units;<br>Defs.' Admis. ¶ 602 | Not all units serviced by elevator;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 601 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 600 |
| Post Parkside Atlanta<br>250 10th Street, NE<br>Atlanta, GA 30309 | 188 units;<br>Defs.' Admis. ¶ 614 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 613 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 612 |
| Post Parkside Orlando<br>425 E. Central Boulevard<br>Orlando, FL 32801 | 245 units;<br>Defs.' Admis. ¶ 627 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 626 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 625 |
| Post Pentagon Row<br>1201 South Joyce Street<br>Arlington, VA 22202 | 504 units;<br>Defs.' Admis. ¶ 659 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 658 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 657 |
| Post Rocky Point<br>3101 N. Rocky Point Drive, E<br>Tampa, FL 33607 | 916 units;<br>Defs.' Admis. ¶ 737 | Not all units serviced by elevator;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 736 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 735 |
| Post Square<br>2815 Allen Street<br>Dallas, TX 75204 | 218 units;<br>Defs.' Admis. ¶ 773 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 772 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |

---

[1]  Defs.' Admis. = Defendants' First Responses and Objections to Plaintiff's Requests for Admission (August 1, 2011), Mot. Ex. 2.

[2]  Defs.' Answer = Defendants' Answer and Demand for Jury Trial, R.9.

[3]  Defs.' Resp. to 2d Interrogs. = Defendants' Responses and Objections Plaintiff's Second Set of Interrogatories (May 22, 2013), Mot. Ex. 4.

# Appendix A

| Property Name and Address | Number of Units and Source | Elevator Building and Source | Date of First Occupancy After March 13, 1991 and Source | Designed/Constructed or Merger Agreement and Source |
|---|---|---|---|---|
| Post Toscana<br>389 East 89th Street<br>New York, NY 10128 | 199 units;<br>Defs.' Admis. ¶ 805 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 804 | Designed and/or Constructed;<br>Defs.' Admis. ¶ 803 |
| Post Uptown Village<br>2121 Routh Street<br>Dallas, TX 75201 | 496 units;<br>Defs.' SEC Form 10-K[4] | Not all units serviced by elevator;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 831 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |
| Post Vineyard<br>3015 Cole Avenue<br>Dallas, TX 75204 | 116 units;<br>Defs.' Admis. ¶ 858 | Yes;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 857 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |
| Post Vintage<br>2800 Cole Avenue<br>Dallas, TX 75204 | 161 units;<br>Defs.' Admis. ¶ 880 | Not all units serviced by elevator;<br>Defs.' Answer ¶ 5 | Yes;<br>Defs.' Admis. ¶ 879 | Property Subject to Merger Agreement;<br>Defs.' Resp. to 2d Interrogs. #1 |

---

[4] Post Properties, Inc. and Post Apartment Homes, L.P., Annual Report (Form 10-K) (Feb. 27, 2013), Mot. Ex. 3.

# Appendix B

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

## Appendix B:  Requirement 2, Public and Common Use Areas

| Line # | Feature | Property | Location | Guidelines and ANSI 117.1-1986 Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|--------------------------------------------------------|------------------|---------|
| 1 | Access to first floor of units above retail | Midtown Square | Unit 2500 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 2 | Access to first floor of units above retail | Midtown Square | Unit 2504 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 3 | Access to first floor of units above retail | Midtown Square | Unit 2505 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 4 | Access to first floor of units above retail | Midtown Square | Unit 2514 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 5 | Access to first floor of units above retail | Midtown Square | Unit 2516 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 6 | Access to first floor of units above retail | Midtown Square | Unit 2517 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 7 | Access to first floor of units above retail | Midtown Square | Unit 2519 | First residential floor above retail must be on an accessible route.  ANSI § 4.3.8. | No elevator provided | MW-D-2535 |
| 8 | Accessible route | Park at Phillips Place | Urban garden | Ground and floor surfaces shall be firm, stable, and slip resistant.  ANSI § 4.5.1. | Surface all crushed stone w/ drains throughout | MW-D-2167 |
| 9 | Accessible route | Rocky Point | Phase 1 East - Tennis court | Ground and floor surfaces shall be firm, stable, and slip resistant.  ANSI § 4.5.1. | Stepping stones from patio to tennis court gate | MW-D-2751 |
| 10 | Accessible route - cross slope | Parkside Atlanta | BBQ/Picnic at bldg. end by park | Cross slope 2% maximum.  ANSI § 4.3.7. | Cross slope varied from 3.8% to 5.2% | MW-D-1142, 2285 |
| 11 | Accessible route - running slope | Parkside Atlanta | BBQ/Picnic at bldg. end by park | Running slope 8.33% maximum.  ANSI § 4.3.7. | Running slope varied from 8.4% to 11.4% | MW-D-1142, 2285 |
| 12 | Change in level | Luminaria | Roof deck access | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | Roof deck - Stairs | MW-D-2352 |
| 13 | Change in level | Park at Phillips Place | Bldg. 2: lower breezeway to units 7027-7049 | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | 5 risers, 6 risers, stairs | MW-D-2175 |
| 14 | Change in level | Park at Phillips Place | Bldg. 7: lower breezeway to units 4971-4973 | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | 3 steps up 1 | MW-D-2180 |
| 15 | Change in level | Park at Phillips Place | Bldg. 7: lower breezeway to units 4947-4949 | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | 3 steps up 1 | MW-D-2180 |
| 16 | Change in level | Park at Phillips Place | Bldg. 8: lower breezeway to units 4974-4976 | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | Steps, 4 risers | MW-D-2183 |
| 17 | Change in level | Park at Phillips Place | Bldg. 9: lower breezeway to units 4907-4909 | Stairs shall not be part of an accessible route.  ANSI § 4.3.8. | Steps | MW-D-2190 |

## Appendix B:  Requirement 2, Public and Common Use Areas

| Line # | Feature | Property | Location | Guidelines and ANSI 117.1-1986 Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 18 | Change in level | Park at Phillips Place | Bldg. 9: lower breezeway to units 4931-4933 | Stairs shall not be part of an accessible route. ANSI § 4.3.8. | Steps | MW-D-2190 |
| 19 | Change in level | Pentagon Row | Building 1: sundeck | Stairs shall not be part of an accessible route; maximum change in level 1/2". ANSI §§ 4.3.8, 4.5.2. | Step down to sundeck area; Threshold 5" drop to concrete pavers, 3-1/4" threshold COL | AV-D-755, MW-D-3666 |
| 20 | Change in level | Rocky Point | Boat slips | Stairs shall not be part of an accessible route. ANSI § 4.3.8. | Depressed curb to oyster shell path leading to gate, steps beyond gate | MW-D-2759 |
| 21 | Change in level | Vineyard | Sky Terrace access | Stairs shall not be part of an accessible route. ANSI § 4.3.8. | Sky Terrace - Up Stairs | MW-D-1748 |
| 22 | Door maneuvering clearance | Luminaria | Deck access through recreation room door | Forward approach, pull side:  latch side clearance 18" minimum.  ANSI § 4.13.6 | 2-3/4" provided on latch side, pull side clearance | MW-D-2350 |
| 23 | Door maneuvering clearance | Massachusetts Avenue | Hall door to/from units G10 and G11to common use amenities | Forward approach, pull side:  latch side clearance 18" minimum.  ANSI § 4.13.6 | 16-1/4" provided on latch side, pull side clearance | MW-D-1162 |
| 24 | Door maneuvering clearance | Parkside Orlando | Pool gate | Forward approach, pull side:  latch side clearance 18" minimum.  ANSI § 4.13.6 | 13-3/4" provided on latch side, pull side clearance | MW-D-2320 |
| 25 | Door maneuvering clearance | Rocky Point | Business center 2nd fl. | Forward approach, pull side:  latch side clearance 18" minimum.  ANSI § 4.13.6 | 16" latch side clearance, pull side | MW-D-2762 |
| 26 | Door threshold | Luminaria | Deck access through recreation room door | Maximum 1/2".  ANSI § 4.13.8. | Concrete pavers and threshold total change in level is 1-1/8"-2" total | MW-D-2350 |
| 27 | Door threshold | Luminaria | Deck access through fitness center door | Maximum 1/2".  ANSI § 4.13.8. | Concrete pavers and threshold total change in level is 1-1/2" total | MW-D-2350 |
| 28 | Lavatory pipe protection | Rocky Point | Men's restroom at swimming pool - Leasing center | Must be insulated or otherwise protected.  ANSI § 4.19.4. | No pipe protection | MW-D-2755 |
| 29 | Lavatory pipe protection | Rocky Point | Women's restroom at swimming pool - Leasing center | Must be insulated or otherwise protected.  ANSI § 4.19.4. | No pipe protection | MW-D-2756 |
| 30 | Lavatory pipe protection | Rocky Point | Spa men's bathroom | Must be insulated or otherwise protected.  ANSI § 4.19.4. | No pipe protection | MW-D-2768 |
| 31 | Lavatory pipe protection | Rocky Point | Spa women's bathroom | Must be insulated or otherwise protected.  ANSI § 4.19.4. | No pipe protection | MW-D-2770 |
| 32 | Mirror height | Pentagon Row | Building 3: men's pool bathroom | Bottom edge of reflective surface no higher than 40" from the floor.  ANSI § 4.19.6. | 44-3/4" above finished floor | MW-D-3660 |

# Appendix B:  Requirement 2, Public and Common Use Areas

| Line # | Feature | Property | Location | Guidelines and ANSI 117.1-1986 Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 33 | Mirror height | Pentagon Row | Building 3: women's pool bathroom | Bottom edge of reflective surface no higher than 40" from the floor.  ANSI § 4.19.6. | 5-3/4" to mirror above counter (40-1/4") | MW-D-3661 |
| 34 | Mirror height | Rocky Point | Spa 2nd floor men's bathroom | Bottom edge of reflective surface no higher than 40" from the floor.  ANSI § 4.19.6. | 43" | MW-D-2772 |
| 35 | Mirror height | Rocky Point | Spa 2nd floor women's bathroom | Bottom edge of reflective surface no higher than 40" from the floor.  ANSI § 4.19.6. | 42-1/4" | MW-D-2772 |
| 36 | Operable parts - Key pad | Parkside Orlando | Bldg. C, entry | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 59-3/4" | MW-D-2326 |
| 37 | Operable parts - Letter drop | Parkside Orlando | Bldg. A Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 65-1/4" | MW-D-2320 |
| 38 | Operable parts - Letter drop | Parkside Orlando | Bldg. B Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 61-5/8" | MW-D-2324 |
| 39 | Operable parts - Letter drop | Parkside Orlando | Bldg. C Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 58" | MW-D-2327 |
| 40 | Operable parts - Mailboxes | Massachusetts Avenue | Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | Row 1: 65-1/2", Row 2: 60-1/8", Row 3: 54-7/8" | AV-D-699 |
| 41 | Operable parts - Mailboxes | Parkside Atlanta | Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | Top row: 65", Second row: 59-7/8", Third row: 54-1/2" | AV-D-518 |
| 42 | Operable parts - Mailboxes | Parkside Orlando | Bldg. A Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 4 of 7 rows of mailboxes [are mounted inside reach range] | MW-D-2320 |
| 43 | Operable parts - Mailboxes | Parkside Orlando | Bldg. B Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 5 of 7 rows of mailboxes [are mounted inside reach range] | MW-D-2324 |
| 44 | Operable parts - Mailboxes | Parkside Orlando | Bldg. C Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 4 of 5 rows of mailboxes [are mounted inside reach range] | MW-D-2327 |
| 45 | Operable parts - Outgoing mail slot | Massachusetts Avenue | Mailbox area | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 56-1/8" | AV-D-699 |
| 46 | Operable parts - Rent drop box | Massachusetts Avenue | Rent drop box | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 58-5/8" | AV-D-699 |
| 47 | Operable parts - Rent drop box | Massachusetts Avenue | Mailroom | Forward reach 48" maximum, side reach 54" maximum.  ANSI § 4.25.5. | 58-5/8" | AV-D-699 |
| 48 | Ramp | Parkside Atlanta | Building 2 interior ramp; Bldg. 2000 corridor | Ramps that rise more than 6" must have compliant handrails.  ANSI § 4.8.5. | No interior handrail provided; Running slope varied from 6.8% to 11.4%.  No handrails provided. | AV-D-520, MW-D-1141, 2284 |

# Appendix B:  Requirement 2, Public and Common Use Areas

| Line # | Feature | Property | Location | Guidelines and ANSI 117.1-1986 Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 49 | Ramp | Parkside Orlando | Bldg. C corridor from units to common use areas | Ramps that rise more than 6" must have compliant handrails.  ANSI § 4.8.5. | Running slope varied from 5.6% to 7.5%.  No handrails provided. | MW-D-873 |
| 50 | Roll-in shower - size | Park at Phillips Place | Pool / fitness center: women's restroom | 30" by 60" minimum. ANSI § 4.21.2. | 55" wide | MW-D-2165 |
| 51 | Roll-in shower - size | Rocky Point | Phase 1 East - Men's pool restroom | 30" by 60" minimum.  ANSI § 4.21.2. | 27-1/2" by 59-1/4" | MW-D-2748 |
| 52 | Roll-in shower - size | Rocky Point | Phase 1 East - Women's pool restroom | 30" by 60" minimum.  ANSI § 4.21.2. | 27-1/2" by 59-1/4" | MW-D-2749 |
| 53 | Roll-in shower - size | Rocky Point | Men's restroom at swimming pool - Leasing center | 30" by 60" minimum.  ANSI § 4.21.2. | 25-1/2" by 61-1/2" | MW-D-2755 |
| 54 | Roll-in shower - size | Rocky Point | Women's restroom at swimming pool - Leasing center | 30" by 60" minimum.  ANSI § 4.21.2. | 61" by 25-1/2" | MW-D-2756 |
| 55 | Roll-in shower curb | Rocky Point | Phase 1 East - Men's pool restroom | 1/2" maximum.  ANSI § 4.21.7. | 5-1/2" | MW-D-2748 |
| 56 | Roll-in shower curb | Rocky Point | Men's restroom at swimming pool - Leasing center | 1/2" maximum.  ANSI § 4.21.7. | 5-1/2" | MW-D-2755 |
| 57 | Roll-in shower grab bars | Rocky Point | Phase 1 East - Men's pool restroom | Required on all 3 walls.  ANSI § 4.21.4. | 1 vertical 1 rear | MW-D-2748 |
| 58 | Roll-in shower grab bars | Rocky Point | Phase 1 East - Women's pool restroom | Required on all 3 walls.  ANSI § 4.21.4. | 1 vertical 1 rear | MW-D-2749 |
| 59 | Roll-in shower grab bars | Rocky Point | Men's restroom at swimming pool - Leasing center | Required on all 3 walls.  ANSI § 4.21.4. | No grab bars | MW-D-2755 |
| 60 | Shower size | Massachusetts Avenue | Women's pool shower | For a transfer shower 36" by 36" exactly, for a roll-in shower 30" by 60" minimum.  ANSI § 4.21.2. | 42" by 42" | MW-D-1167 |
| 61 | Transfer shower - size | Rocky Point | Spa men's bathroom | 36" by 36" exact.  ANSI § 4.21.2. | 34" by 43-1/2" | MW-D-2769 |
| 62 | Transfer shower - size | Rocky Point | Spa women's bathroom | 36" by 36" exact.  ANSI § 4.21.2. | 34-1/4" by 36" | MW-D-2770 |
| 63 | Transfer shower clear floor space | Pentagon Row | Building 3: men's pool bathroom | 36" by 48" minimum.  ANSI § 4.21.2. | Built-in bench in dressing area, blocks CFS centered on shower | MW-D-3660 |
| 64 | Transfer shower clear floor space | Pentagon Row | Building 3: women's pool bathroom | 36" by 48" minimum.  ANSI § 4.21.2. | Built-in bench blocks CFS at shower | MW-D-3661 |
| 65 | Transfer shower curb | Rocky Point | Spa men's bathroom | 4" maximum.  ANSI § 4.21.7. | 6" curb, 4"  inside shower | MW-D-2769 |
| 66 | Transfer shower curb | Rocky Point | Spa women's bathroom | 4" maximum.  ANSI § 4.21.7. | 6" curb, 4"  inside shower | MW-D-2771 |

Appendix B:  Requirement 2, Public and Common Use Areas

| Line # | Feature | Property | Location | Guidelines and ANSI 117.1-1986 Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|--------------------------------------------------------|------------------|---------|
| 67 | Transfer shower grab bars | Rocky Point | Spa men's bathroom | Required on control and back walls.  ANSI § 4.21.4. | No grab bars | MW-D-2769 |
| 68 | Transfer shower grab bars | Rocky Point | Spa women's bathroom | Required on control and back walls.  ANSI § 4.21.4. | No grab bars | MW-D-2771 |

# Appendix B:  Requirement 3, Usable Doors

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 1 | Balcony/patio/deck door | Abbey | Unit 309 | 32" nominal clear opening | 28" | MW-D-1590, 1591 |
| 2 | Balcony/patio/deck door | Park at Phillips Place | Unit 4928CV | 32" nominal clear opening | 28-7/8", 29-1/4" | MW-D-2241 |
| 3 | Balcony/patio/deck door | Park at Phillips Place | Unit 4910CL | 32" nominal clear opening | 29" | MW-D-2241 |
| 4 | Balcony/patio/deck door | Park at Phillips Place | Unit 4952CL | 32" nominal clear opening | 29" | MW-D-2241 |
| 5 | Balcony/patio/deck door | Park at Phillips Place | Unit 4818CH | 32" nominal clear opening | 29-1/2" | MW-D-2251 |
| 6 | Balcony/patio/deck door | Vintage | Unit 217 | 32" nominal clear opening | 22-1/16" | MW-D-2635 |
| 7 | Balcony/patio/deck door | Vintage | Unit 161 | 32" nominal clear opening | 27-1/2" | MW-D-2638 |
| 8 | Balcony/patio/deck door | Vintage | Unit 167 | 32" nominal clear opening | 27-1/2" | MW-D-2639 |
| 9 | Bathroom door | Abbey | Unit 303 | 32" nominal clear opening | 25-3/4" | MW-D-1590 |
| 10 | Bathroom door | Gallery | Unit 7011 | 32" nominal clear opening | 25-3/4" | MW-D-1567 |
| 11 | Bathroom door | Gallery | Unit 7019 | 32" nominal clear opening | 25-3/4" | MW-D-1568 |
| 12 | Bathroom door | Gallery | Unit 2021 | 32" nominal clear opening | 26" | MW-D-1571 |
| 13 | Bathroom door | Gallery | Unit 6011 | 32" nominal clear opening | 26" | MW-D-1569 |
| 14 | Bathroom door | Gallery | Unit 6011 | 32" nominal clear opening | 26" | MW-D-1569 |
| 15 | Bathroom door | Gallery | Unit 1021 | 32" nominal clear opening | 26" | AV-D-1287 |
| 16 | Bathroom door | Gallery | Unit 1017 | 32" nominal clear opening | 27-5/8" | AV-D-1270 |
| 17 | Bathroom door | Harbour Place | Unit 4407 | 32" nominal clear opening | 26" | MW-D-1640 |
| 18 | Bathroom door | Harbour Place | Unit 2406 | 32" nominal clear opening | 27-7/8" | MW-D-1638 |
| 19 | Bathroom door | Legacy | Unit 3315 | 32" nominal clear opening | 27-7/8" | MW-D-2679 |
| 20 | Bathroom door | Park at Phillips Place | Unit 4928CV | 32" nominal clear opening | 21-3/4" | MW-D-2241 |
| 21 | Bathroom door | Park at Phillips Place | Unit 4953CV | 32" nominal clear opening | 21-3/4" | MW-D-2246 |
| 22 | Bathroom door | Park at Phillips Place | Unit 4818CH | 32" nominal clear opening | 21-3/4" | MW-D-2251 |
| 23 | Bathroom door | Park at Phillips Place | Unit 4956CV | 32" nominal clear opening | 21-3/4" | MW-D-2256 |
| 24 | Bathroom door | Park at Phillips Place | Unit 7029GT | 32" nominal clear opening | 21-3/4" to 22" | MW-D-2256 |
| 25 | Bathroom door | Park at Phillips Place | Unit 4910CL | 32" nominal clear opening | 21-7/8" | MW-D-2241 |
| 26 | Bathroom door | Park at Phillips Place | Unit 4952CL | 32" nominal clear opening | 21-7/8" | MW-D-2241 |
| 27 | Bathroom door | Park at Phillips Place | Unit 4928 | 32" nominal clear opening | 22" | AV-D-1518 |
| 28 | Bathroom door | Square | Unit 169 | 32" nominal clear opening | 21-5/8" | MW-D-1720 |
| 29 | Bathroom door | Square | Unit 237 | 32" nominal clear opening | 21-7/8" | MW-D-1717 |
| 30 | Bathroom door | Uptown Village | Unit 2147 | 32" nominal clear opening | 22" | MW-D-1811 |
| 31 | Bathroom door | Uptown Village | Unit 1301 | 32" nominal clear opening | 22" | MW-D-1811 |
| 32 | Bathroom door | Vineyard | Unit 102 | 32" nominal clear opening | 21-3/4" | MW-D-1756, 1757 |
| 33 | Bathroom door | Vineyard | Unit 408 | 32" nominal clear opening | 21-3/4" | MW-D-1766, 1756 |
| 34 | Bathroom door | Vineyard | Unit 202 | 32" nominal clear opening | 22" | MW-D-1751, 1752 |
| 35 | Bathroom door | Vintage | Unit 313 | 32" nominal clear opening | 22" | MW-D-2636 |
| 36 | Bathroom door | Vintage | Unit 103 | 32" nominal clear opening | 22" | MW-D-2637 |
| 37 | Bathroom door | Vintage | Unit 160 | 32" nominal clear opening | 22" | MW-D-2638 |

## Appendix B:  Requirement 3, Usable Doors

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 38 | Bathroom door | Vintage | Unit 161 | 32" nominal clear opening | 22" | MW-D-2638 |
| 39 | Bedroom door | Abbey | Unit 316 | 32" nominal clear opening | 21-7/8" | MW-D-1589 |
| 40 | Bedroom door | Abbey | Unit 217 | 32" nominal clear opening | 25-1/2" | MW-D-1588 |
| 41 | Bedroom door | Abbey | Unit 202 | 32" nominal clear opening | 29-3/4" | MW-D-1589 |
| 42 | Bedroom door | Abbey | Unit 206 | 32" nominal clear opening | 29-3/4" | MW-D-1589 |
| 43 | Bedroom door | Gallery | Unit 7011 | 32" nominal clear opening | 25-3/4" | MW-D-1567 |
| 44 | Bedroom door | Gallery | Unit 5015 | 32" nominal clear opening | 28-1/2" | MW-D-1571 |
| 45 | Bedroom door | Park at Phillips Place | Unit 4928 | 32" nominal clear opening | 23-5/8" | AV-D-1518 |
| 46 | Bedroom door | Park at Phillips Place | Unit 4928CV | 32" nominal clear opening | 29-3/4" | MW-D-2241 |
| 47 | Bedroom door | Park at Phillips Place | Unit 4952CL | 32" nominal clear opening | 29-3/4" | MW-D-2241 |
| 48 | Bedroom door | Park at Phillips Place | Unit 7029GT | 32" nominal clear opening | 29-3/4" | MW-D-2256 |
| 49 | Bedroom door | Park at Phillips Place | Unit 4910CL | 32" nominal clear opening | 29-7/8" | MW-D-2241 |
| 50 | Bedroom door | Park at Phillips Place | Unit 4818CH | 32" nominal clear opening | 29-7/8" | MW-D-2251 |
| 51 | Bedroom door | Uptown Village | Unit 1301 | 32" nominal clear opening | 30-1/8" | MW-D-1811 |
| 52 | Bedroom door | Vintage | Unit 313 | 32" nominal clear opening | 30" | MW-D-2636 |
| 53 | Dining room door | Abbey | Unit 212 | 32" nominal clear opening | 21-7/8" | MW-D-1588 |
| 54 | Hall door | Uptown Village | Unit 2127 | 32" nominal clear opening | 22-1/2" | MW-D-1810 |
| 55 | Kitchen door | Square | Unit 267 | 32" nominal clear opening | 22-1/4" | MW-D-1715 |
| 56 | Kitchen door | Uptown Village | Unit 1301 | 32" nominal clear opening | 30" | MW-D-1811 |
| 57 | Kitchen door | Vintage | Unit 313 | 32" nominal clear opening | 22-1/4" | MW-D-2636 |
| 58 | Laundry door | Gallery | Unit 6011 | 32" nominal clear opening | 26" | MW-D-1569 |
| 59 | Laundry door | Harbour Place | Unit 1412 | 32" nominal clear opening | 27-7/8" | MW-D-1642 |
| 60 | Laundry door | Legacy | Unit 2106 | 32" nominal clear opening | 27-7/8" | MW-D-2677 |
| 61 | Laundry door | Park at Phillips Place | Unit 4910CL | 32" nominal clear opening | 29-3/4" | MW-D-2241 |
| 62 | Laundry door | Park at Phillips Place | Unit 4952CL | 32" nominal clear opening | 29-3/4" | MW-D-2241 |
| 63 | Laundry door | Park at Phillips Place | Unit 7029GT | 32" nominal clear opening | 29-3/4" | MW-D-2256 |
| 64 | Laundry door | Park at Phillips Place | Unit 4928CV | 32" nominal clear opening | 29-7/8" | MW-D-2241 |
| 65 | Laundry door | Square | Unit 372 | 32" nominal clear opening | 21-3/4" | MW-D-1719 |
| 66 | Laundry door | Uptown Village | Unit 1301 | 32" nominal clear opening | 22" | MW-D-1811, 1814 |
| 67 | Laundry door | Vineyard | Unit 202 | 32" nominal clear opening | 27-3/4" | MW-D-1751, 1752 |
| 68 | Laundry door | Vineyard | Unit 102 | 32" nominal clear opening | 27-5/8" | MW-D-1756, 1757 |
| 69 | Laundry door | Vintage | Unit 119 | 32" nominal clear opening | 30-1/4" | MW-D-2635 |
| 70 | Master bath toilet room door | Gallery | Unit 7019 | 32" nominal clear opening | 24-1/2" | MW-D-1568 |
| 71 | Master bathroom door | Gallery | Unit 7018 | 32" nominal clear opening | 26" | MW-D-1569 |
| 72 | Master bathroom door | Gallery | Unit 4019 | 32" nominal clear opening | 26" | MW-D-1571 |
| 73 | Master bathroom door | Gallery | Unit 1011 | 32" nominal clear opening | 27" | AV-D-1265 |
| 74 | Master bathroom door | Square | Unit 276 | 32" nominal clear opening | 22-5/8" | MW-D-1715 |

# Appendix B:  Requirement 3, Usable Doors

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 75 | Pantry door | Abbey | Unit 305 | 32" nominal clear opening | 21-1/2" | MW-D-1591 |
| 76 | Pantry door | Gallery | Unit 8015 | 32" nominal clear opening | 28" | MW-D-1566, 1567 |
| 77 | Pantry door | Harbour Place | Unit 1412 | 32" nominal clear opening | 21-7/8" | MW-D-1642 |
| 78 | Pantry door | Harbour Place | Unit 1421 | 32" nominal clear opening | 28" | MW-D-1642 |
| 79 | Pantry door | Legacy | Unit 1254 | 32" nominal clear opening | 29-1/2" | MW-D-2678 |
| 80 | Pantry door | Uptown Village | Unit 1301 | 32" nominal clear opening | 18" | MW-D-1811 |
| 81 | Pantry door | Vintage | Unit 313 | 32" nominal clear opening | 30" | MW-D-2636 |
| 82 | Powder room door | Gallery | Unit 8015 | 32" nominal clear opening | 25-7/8" | MW-D-1566, 1567 |
| 83 | Powder room door | Gallery | Unit 5015 | 32" nominal clear opening | 26" | MW-D-1571 |
| 84 | Study door | Abbey | Unit 202 | 32" nominal clear opening | 21-7/8" | MW-D-1589 |
| 85 | Study door | Abbey | Unit 305 | 32" nominal clear opening | 21-7/8" | MW-D-1591 |
| 86 | Toilet room door | Gallery | Unit 7019 | 32" nominal clear opening | 25-1/2" | MW-D-1568 |
| 87 | Walk-in closet door | Abbey | Unit 212 | 32" nominal clear opening | 29-3/4" | MW-D-1588 |
| 88 | Walk-in closet door | Abbey | Unit 303 | 32" nominal clear opening | 29-3/4" | MW-D-1590 |
| 89 | Walk-in closet door | Abbey | Unit 316 | 32" nominal clear opening | 30" | MW-D-1589 |
| 90 | Walk-in closet door | Gallery | Unit 6011 | 32" nominal clear opening | 22" | MW-D-1569 |
| 91 | Walk-in closet door | Gallery | Unit 8015 | 32" nominal clear opening | 25-3/4" | MW-D-1566, 1567 |
| 92 | Walk-in closet door | Gallery | Unit 7011 | 32" nominal clear opening | 25-3/4" | MW-D-1567 |
| 93 | Walk-in closet door | Gallery | Unit 7019 | 32" nominal clear opening | 25-3/4" | MW-D-1568 |
| 94 | Walk-in closet door | Gallery | Unit 8015 | 32" nominal clear opening | 25-7/8" | MW-D-1566, 1567 |
| 95 | Walk-in closet door | Gallery | Unit 4019 | 32" nominal clear opening | 26" | MW-D-1571 |
| 96 | Walk-in closet door | Gallery | Unit 4019 | 32" nominal clear opening | 26" | MW-D-1571 |
| 97 | Walk-in closet door | Gallery | Unit 4019 | 32" nominal clear opening | 26" | MW-D-1571 |
| 98 | Walk-in closet door | Gallery | Unit 6011 | 32" nominal clear opening | 26" | MW-D-1569 |
| 99 | Walk-in closet door | Harbour Place | Unit 1103 | 32" nominal clear opening | 27-3/4" | MW-D-1641 |
| 100 | Walk-in closet door | Legacy | Unit 3134 | 32" nominal clear opening | 22" | MW-D-2675 |
| 101 | Walk-in closet door | Park at Phillips Place | Unit 4818CH | 32" nominal clear opening | 21-3/4" | MW-D-2251 |
| 102 | Walk-in closet door | Park at Phillips Place | Unit 4910CL | 32" nominal clear opening | 21-7/8" | MW-D-2241 |
| 103 | Walk-in closet door | Park at Phillips Place | Unit 4952CL | 32" nominal clear opening | 21-7/8" | MW-D-2241 |
| 104 | Walk-in closet door | Park at Phillips Place | Unit 7029GT | 32" nominal clear opening | 21-7/8" | MW-D-2256 |
| 105 | Walk-in closet door | Uptown Village | Unit 1301 | 32" nominal clear opening | 22" | MW-D-1811 |

# Appendix B:  Requirement 4, Changes in Level

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 1 | Balcony/patio/deck threshold | Biltmore | Unit 1301 | Maximum 3/4" interior threshold at door to patio or balcony | 1-3/8" interior side | AV-D-1678 |
| 2 | Balcony/patio/deck threshold | Biltmore | Unit 1634 | Maximum 3/4" interior threshold at door to patio or balcony | 1-3/4" interior side | MW-D-1993 |
| 3 | Balcony/patio/deck threshold | Biltmore | Unit 1301 | Maximum 3/4" interior threshold at door to patio or balcony | 13/16" interior side | MW-D-2030, 2031 |
| 4 | Balcony/patio/deck threshold | Biltmore | Unit 1422 | Maximum 3/4" interior threshold at door to patio or balcony | 7/8" interior side | MW-D-2031 |
| 5 | Balcony/patio/deck threshold | Biltmore | Unit 2404 | Maximum 3/4" interior threshold at door to patio or balcony | 1-3/16" interior side | MW-D-2039 |
| 6 | Balcony/patio/deck threshold | Harbour Place | Unit 4407 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/18" interior side | MW-D-1640 |
| 7 | Balcony/patio/deck threshold | Harbour Place | Unit 2406 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-1638 |
| 8 | Balcony/patio/deck threshold | Harbour Place | Unit 2408 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-1639 |
| 9 | Balcony/patio/deck threshold | Harbour Place | Unit 1106 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-1641 |
| 10 | Balcony/patio/deck threshold | Harbour Place | Unit 1421 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-1642 |
| 11 | Balcony/patio/deck threshold | Harbour Place | Unit 1437 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-1644 |
| 12 | Balcony/patio/deck threshold | Harbour Place | Unit 1214 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/8" | AV-D-2028 |
| 13 | Balcony/patio/deck threshold | Legacy | Unit 3134 | Maximum 3/4" interior threshold at door to patio or balcony | 2" interior side | MW-D-2675 |

# Appendix B: Requirement 4, Changes in Level

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|--------------------------------------|------------------|---------|
| 14 | Balcony/patio/deck threshold | Legacy | Unit 3134 | Maximum 3/4" interior threshold at door to patio or balcony | 1-3/8" interior side | MW-D-2675 |
| 15 | Balcony/patio/deck threshold | Legacy | Unit 3325 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-2679 |
| 16 | Balcony/patio/deck threshold | Legacy | Unit 3353 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-2680 |
| 17 | Balcony/patio/deck threshold | Luminaria | Unit 15E | Maximum 3/4" interior threshold at door to patio or balcony | 9-1/2" step out to balcony | MW-D-2360, 2365 |
| 18 | Balcony/patio/deck threshold | Massachusetts Avenue | Unit 1212 | Maximum 3/4" interior threshold at door to patio or balcony | 2-1/4" | MW-D-1151 |
| 19 | Balcony/patio/deck threshold | Massachusetts Avenue | Unit 1404 | Maximum 3/4" interior threshold at door to patio or balcony | "Step up balcony" with step 11-3/8" | AV-D-1073 |
| 20 | Balcony/patio/deck threshold | Park at Phillips Place | Unit 4952CL | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-2242 |
| 21 | Balcony/patio/deck threshold | Park at Phillips Place | Unit 4859CH | Maximum 3/4" interior threshold at door to patio or balcony | 1-7/8" interior side | MW-D-2251 |
| 22 | Balcony/patio/deck threshold | Square | Unit 347 | Maximum 3/4" interior threshold at door to patio or balcony | 1-1/4" interior side | MW-D-1717 |
| 23 | Balcony/patio/deck threshold | Square | Unit 164 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-1720, 1721 |
| 24 | Balcony/patio/deck threshold | Uptown Village | Unit 5145 | Maximum 4" below floor level of interior of dwelling unit | 8-1/8" | MW-D-1812 |
| 25 | Balcony/patio/deck threshold | Uptown Village | Unit 5147 | Maximum 4" below floor level of interior of dwelling unit | 14-1/2" | MW-D-1813 |
| 26 | Balcony/patio/deck threshold | Vineyard | Unit 202 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-1751, 1752 |

Appendix B:  Requirement 4, Changes in Level

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 27 | Balcony/patio/deck threshold | Vineyard | Unit 339 | Maximum 3/4" interior threshold at door to patio or balcony | 1" interior side | MW-D-1752 |

# Appendix B:  Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 1 | Light switch | Square | Unit 251 | Operable part maximum 48" above finished floor | 55-1/2" | MW-D-1714 |
| 2 | Light switch | Square | Unit 226 | Operable part maximum 48" above finished floor | 58-7/8" | MW-D-1716 |
| 3 | Light switch | Square | Unit 237 | Operable part maximum 48" above finished floor | 56-1/4" | MW-D-1717 |
| 4 | Light switch | Square | Unit 325 | Operable part maximum 48" above finished floor | 54-1/4" | MW-D-1718 |
| 5 | Light switch | Square | Unit 323 | Operable part maximum 48" above finished floor | 54-1/2" | MW-D-1719 |
| 6 | Thermostat | Biltmore | Unit 2214 | Operable part maximum 48" above finished floor | 62-5/8" | AV-D-1659 |
| 7 | Thermostat | Biltmore | Unit 1215 | Operable part maximum 48" above finished floor | 62-1/8" | AV-D-1666 |
| 8 | Thermostat | Biltmore | Unit 1520 | Operable part maximum 48" above finished floor | 59-1/2" | AV-D-1694 |
| 9 | Thermostat | Biltmore | Unit 1213 | Operable part maximum 48" above finished floor | 64" | AV-D-1710 |
| 10 | Thermostat | Biltmore | Unit 1124 | Operable part maximum 48" above finished floor | 63" | MW-D-1939 |
| 11 | Thermostat | Biltmore | Unit 1128 | Operable part maximum 48" above finished floor | 63-3/4" | MW-D-1939 |
| 12 | Thermostat | Biltmore | Unit 1133 | Operable part maximum 48" above finished floor | 62-1/8" | MW-D-1939 |
| 13 | Thermostat | Biltmore | Unit 1207 | Operable part maximum 48" above finished floor | 59" | MW-D-1947 |
| 14 | Thermostat | Biltmore | Unit 1208 | Operable part maximum 48" above finished floor | 61-1/4" | MW-D-1947 |
| 15 | Thermostat | Biltmore | Unit 1214 | Operable part maximum 48" above finished floor | 61-1/2" | MW-D-1962 |
| 16 | Thermostat | Biltmore | Unit 1215 | Operable part maximum 48" above finished floor | 62-3/8" | MW-D-1962 |
| 17 | Thermostat | Biltmore | Unit 1219 | Operable part maximum 48" above finished floor | 63-1/4" | MW-D-1962 |
| 18 | Thermostat | Biltmore | Unit 1221 | Operable part maximum 48" above finished floor | 63-3/4" | MW-D-1970 |
| 19 | Thermostat | Biltmore | Unit 1224 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-1970 |
| 20 | Thermostat | Biltmore | Unit 1226 | Operable part maximum 48" above finished floor | 60-3/4" | MW-D-1978 |
| 21 | Thermostat | Biltmore | Unit 1228 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-1978 |
| 22 | Thermostat | Biltmore | Unit 1233 | Operable part maximum 48" above finished floor | 60" | MW-D-1986 |
| 23 | Thermostat | Biltmore | Unit 1234 | Operable part maximum 48" above finished floor | 59-1/4" | MW-D-1986 |
| 24 | Thermostat | Biltmore | Unit 1614 | Operable part maximum 48" above finished floor | 59" | MW-D-1994 |
| 25 | Thermostat | Biltmore | Unit 1634 | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-1994 |
| 26 | Thermostat | Biltmore | Unit 2103 | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-2002 |
| 27 | Thermostat | Biltmore | Unit 2107 | Operable part maximum 48" above finished floor | 62-1/4" | MW-D-2002 |
| 28 | Thermostat | Biltmore | Unit 2108 | Operable part maximum 48" above finished floor | 61-3/8" | MW-D-2002 |
| 29 | Thermostat | Biltmore | Unit 2202 | Operable part maximum 48" above finished floor | 59" | MW-D-2017 |
| 30 | Thermostat | Biltmore | Unit 2208 | Operable part maximum 48" above finished floor | 57-1/2" | MW-D-2024 |
| 31 | Thermostat | Biltmore | Unit 1422 | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-2032 |
| 32 | Thermostat | Biltmore | Unit 1520 | Operable part maximum 48" above finished floor | 59-3/4" | MW-D-2032 |
| 33 | Thermostat | Biltmore | Unit 1301 | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-2032 |
| 34 | Thermostat | Harbour Place | Unit 2110 | Operable part maximum 48" above finished floor | 56-1/2" | MW_D-1638 |
| 35 | Thermostat | Harbour Place | Unit 2406 | Operable part maximum 48" above finished floor | 56-3/4" | MW-D-1638 |
| 36 | Thermostat | Harbour Place | Unit 2408 | Operable part maximum 48" above finished floor | 55-1/2" | MW-D-1639 |
| 37 | Thermostat | Harbour Place | Unit 4407 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-1640 |
| 38 | Thermostat | Harbour Place | Unit 1267 | Operable part maximum 48" above finished floor | 55-1/4" | MW-D-1640 |
| 39 | Thermostat | Harbour Place | Unit 1103 | Operable part maximum 48" above finished floor | 57" | MW-D-1103 |

# Appendix B:  Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 40 | Thermostat | Harbour Place | Unit 1106 | Operable part maximum 48" above finished floor | 57" | MW-D-1641, 1642 |
| 41 | Thermostat | Harbour Place | Unit 1412 | Operable part maximum 48" above finished floor | 54-3/4" | MW-D-1642 |
| 42 | Thermostat | Harbour Place | Unit 1421 | Operable part maximum 48" above finished floor | 58" | MW-D-1642 |
| 43 | Thermostat | Harbour Place | Unit 1425 | Operable part maximum 48" above finished floor | 58-3/4" | MW-D-1645 |
| 44 | Thermostat | Harbour Place | Unit 1214 | Operable part maximum 48" above finished floor | 61-1/2" | AV-D-2028 |
| 45 | Thermostat | Harbour Place | Unit 1210 | Operable part maximum 48" above finished floor | 55-1/4" | AV-D-2033 |
| 46 | Thermostat | Harbour Place | Unit 1265 | Operable part maximum 48" above finished floor | 55-1/2" | AV-D-2051 |
| 47 | Thermostat | Massachusetts Avenue | Unit G10 | Operable part maximum 48" above finished floor | 58" | MW-D-1147 |
| 48 | Thermostat | Massachusetts Avenue | Unit 616 | Operable part maximum 48" above finished floor | 59-1/4" | MW-D-1147 |
| 49 | Thermostat | Massachusetts Avenue | Unit 1013 | Operable part maximum 48" above finished floor | 56-1/8" | MW-D-1152 |
| 50 | Thermostat | Massachusetts Avenue | Unit 1207 | Operable part maximum 48" above finished floor | 59-1/4" | MW-D-1152 |
| 51 | Thermostat | Massachusetts Avenue | Unit 1115 | Operable part maximum 48" above finished floor | 56-1/8" | MW-D-1153 |
| 52 | Thermostat | Massachusetts Avenue | Unit 1404 | Operable part maximum 48" above finished floor | 64-1/2" | AV-D-1073 |
| 53 | Thermostat | Massachusetts Avenue | Unit 1004 | Operable part maximum 48" above finished floor | 57-1/8" | AV-D-1083 |
| 54 | Thermostat | Massachusetts Avenue | Unit 112A | Operable part maximum 48" above finished floor | 57-3/4" | AV-D-707 |
| 55 | Thermostat | Massachusetts Avenue | Unit 204 | Operable part maximum 48" above finished floor | 57-3/4" | AV-D-709 |
| 56 | Thermostat | Massachusetts Avenue | Unit 207 | Operable part maximum 48" above finished floor | 59-1/8" | AV-D-710 |
| 57 | Thermostat | Massachusetts Avenue | Unit 318 | Operable part maximum 48" above finished floor | 60-1/2" | AV-D-711 |
| 58 | Thermostat | Massachusetts Avenue | Unit 401 | Operable part maximum 48" above finished floor | 57-7/8" | AV-D-713 |
| 59 | Thermostat | Massachusetts Avenue | Unit 409 | Operable part maximum 48" above finished floor | 59" | AV-D-714 |
| 60 | Thermostat | Massachusetts Avenue | Unit 815 | Operable part maximum 48" above finished floor | 56-3/4" | AV-D-715 |
| 61 | Thermostat | Massachusetts Avenue | Unit 1017 | Operable part maximum 48" above finished floor | 59-7/8" | AV-D-717 |
| 62 | Thermostat | Massachusetts Avenue | Unit 1218 | Operable part maximum 48" above finished floor | 58" | AV-D-718 |
| 63 | Thermostat | Massachusetts Avenue | Unit 1310 | Operable part maximum 48" above finished floor | 58-1/2" | AV-D-720 |
| 64 | Thermostat | Massachusetts Avenue | Unit 1401 | Operable part maximum 48" above finished floor | 62-3/4" | AV-D-722 |
| 65 | Thermostat | Massachusetts Avenue | Unit 1405 | Operable part maximum 48" above finished floor | 62-5/8" | AV-D-723 |
| 66 | Thermostat | Massachusetts Avenue | Unit 1414 | Operable part maximum 48" above finished floor | 62-3/4" | AV-D-724 |
| 67 | Thermostat | Massachusetts Avenue | Unit 1416 | Operable part maximum 48" above finished floor | 58-3/4" | AV-D-725 |
| 68 | Thermostat | Park at Phillips Place | Unit 4818CV | Operable part maximum 48" above finished floor | 61" | MW-D-2233 |
| 69 | Thermostat | Park at Phillips Place | Unit 4830CV | Operable part maximum 48" above finished floor | 62-1/4" | MW-D-2233 |
| 70 | Thermostat | Park at Phillips Place | Unit 4844CV | Operable part maximum 48" above finished floor | 62-1/2" | MW-D-2233 |
| 71 | Thermostat | Park at Phillips Place | Unit 4858CV | Operable part maximum 48" above finished floor | 60" | MW-D-2233 |
| 72 | Thermostat | Park at Phillips Place | Unit 4882CV | Operable part maximum 48" above finished floor | 61" | MW-D-2238 |
| 73 | Thermostat | Park at Phillips Place | Unit 4854CH | Operable part maximum 48" above finished floor | 61" | MW-D-2238 |
| 74 | Thermostat | Park at Phillips Place | Unit 4853CH | Operable part maximum 48" above finished floor | 58-1/4" | MW-D-2238 |
| 75 | Thermostat | Park at Phillips Place | Unit 4828CL | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-2243 |
| 76 | Thermostat | Park at Phillips Place | Unit 4867CH | Operable part maximum 48" above finished floor | 62" | MW-D-2248 |
| 77 | Thermostat | Park at Phillips Place | Unit 4879CH | Operable part maximum 48" above finished floor | 60-3/4" | MW-D-2248 |

## Appendix B:  Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 78 | Thermostat | Park at Phillips Place | Unit 4859CH | Operable part maximum 48" above finished floor | 56-1/2" | MW-D-2253 |
| 79 | Thermostat | Park at Phillips Place | Unit 4873CH | Operable part maximum 48" above finished floor | 61" | MW-D-2253 |
| 80 | Thermostat | Park at Phillips Place | Unit 4818CH | Operable part maximum 48" above finished floor | 61-1/4" | MW-D-2253 |
| 81 | Thermostat | Parkside Atlanta | Unit 1402 | Operable part maximum 48" above finished floor | 60-3/4" | MW-D-2289 |
| 82 | Thermostat | Parkside Atlanta | Unit 1403 | Operable part maximum 48" above finished floor | 59-3/8" | MW-D-2290 |
| 83 | Thermostat | Parkside Atlanta | Unit 1408 | Operable part maximum 48" above finished floor | 58-7/8" | MW-D-2291 |
| 84 | Thermostat | Parkside Atlanta | Unit 2307 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-2291 |
| 85 | Thermostat | Parkside Atlanta | Unit 2417 | Operable part maximum 48" above finished floor | 61" | MW-D-2292 |
| 86 | Thermostat | Parkside Atlanta | Unit 2420 | Operable part maximum 48" above finished floor | 59-1/4" | MW-D-2292 |
| 87 | Thermostat | Parkside Atlanta | Unit 3412 | Operable part maximum 48" above finished floor | 60-1/4" | MW-D-2292 |
| 88 | Thermostat | Parkside Atlanta | Unit 3413 | Operable part maximum 48" above finished floor | 60" | MW-D-2293 |
| 89 | Thermostat | Parkside Atlanta | Unit 3417 | Operable part maximum 48" above finished floor | 58-1/4" | MW-D-2293 |
| 90 | Thermostat | Parkside Atlanta | Unit 3310 | Operable part maximum 48" above finished floor | 61" | MW-D-2294 |
| 91 | Thermostat | Parkside Atlanta | Unit 1206 | Operable part maximum 48" above finished floor | 56-3/8" | AV-D-518 |
| 92 | Thermostat | Parkside Atlanta | Unit 1410 | Operable part maximum 48" above finished floor | 56-5/8" | AV-D-526 |
| 93 | Thermostat | Parkside Atlanta | Unit 2103 | Operable part maximum 48" above finished floor | 56" | AV-D-526 |
| 94 | Thermostat | Parkside Atlanta | Unit 2122 | Operable part maximum 48" above finished floor | 57-1/2" | AV-D-531 |
| 95 | Thermostat | Parkside Atlanta | Unit 2217 | Operable part maximum 48" above finished floor | 58-1/2" | AV-D-532 |
| 96 | Thermostat | Parkside Atlanta | Unit 2413 | Operable part maximum 48" above finished floor | 57-1/2" | AV-D-540 |
| 97 | Thermostat | Parkside Atlanta | Unit 3208 | Operable part maximum 48" above finished floor | 57" | AV-D-541 |
| 98 | Thermostat | Parkside Atlanta | Unit 3414 | Operable part maximum 48" above finished floor | 59-1/2" | AV-D-542 |
| 99 | Thermostat | Parkside Orlando | Unit 3201 | Operable part maximum 48" above finished floor | 57" | AV-D-3201 |
| 100 | Thermostat | Parkside Orlando | Unit 3402 | Operable part maximum 48" above finished floor | 58" | MW-D-2331 |
| 101 | Thermostat | Parkside Orlando | Unit 2103 | Operable part maximum 48" above finished floor | 57-1/8" | MW-D-2332 |
| 102 | Thermostat | Parkside Orlando | Unit 2204 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-2332 |
| 103 | Thermostat | Parkside Orlando | Unit 2404 | Operable part maximum 48" above finished floor | 56-1/2" | MW-D-2333 |
| 104 | Thermostat | Parkside Orlando | Unit 2S, Bldg B | Operable part maximum 48" above finished floor | 60-1/2" | AV-D-634 |
| 105 | Thermostat | Parkside Orlando | Unit 506, Bldg C | Operable part maximum 48" above finished floor | 59-3/8" | AV-D-635 |
| 106 | Thermostat | Parkside Orlando | Unit 1101 | Operable part maximum 48" above finished floor | 59-3/8" | AV-D-637 |
| 107 | Thermostat | Parkside Orlando | Unit 1206 | Operable part maximum 48" above finished floor | 58-5/8" | AV-D-639 |
| 108 | Thermostat | Parkside Orlando | Unit 1208, Bldg A | Operable part maximum 48" above finished floor | 58-3/4" | AV-D-640 |
| 109 | Thermostat | Parkside Orlando | Unit 1303 | Operable part maximum 48" above finished floor | 57-1/4" | AV-D-641 |
| 110 | Thermostat | Parkside Orlando | Unit 1305 | Operable part maximum 48" above finished floor | 57-3/4" | AV-D-642 |
| 111 | Thermostat | Parkside Orlando | Unit 1311 | Operable part maximum 48" above finished floor | 57" | AV-D-643 |
| 112 | Thermostat | Parkside Orlando | Unit 1404 | Operable part maximum 48" above finished floor | 60" | AV-D-644 |
| 113 | Thermostat | Parkside Orlando | Unit 2205 | Operable part maximum 48" above finished floor | 57" | AV-D-645 |
| 114 | Thermostat | Parkside Orlando | Unit 2208 | Operable part maximum 48" above finished floor | 57-3/4" | AV-D-646 |
| 115 | Thermostat | Parkside Orlando | Unit 2310 | Operable part maximum 48" above finished floor | 57-1/2" | AV-D-647 |

## Appendix B:  Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 116 | Thermostat | Parkside Orlando | Unit 3201 | Operable part maximum 48" above finished floor | 56-1/2" | AV-D-649 |
| 117 | Thermostat | Parkside Orlando | Unit 3303 | Operable part maximum 48" above finished floor | 58" | AV-D-6505 |
| 118 | Thermostat | Pentagon Row | Unit 1301 | Operable part maximum 48" above finished floor | 57-1/4" | AV-D-761 |
| 119 | Thermostat | Pentagon Row | Unit 1312 | Operable part maximum 48" above finished floor | 58-3/4" | AV-D-762 |
| 120 | Thermostat | Pentagon Row | Unit 1532 | Operable part maximum 48" above finished floor | 60-3/8" | AV-D-765 |
| 121 | Thermostat | Pentagon Row | Unit 2201 | Operable part maximum 48" above finished floor | 59-1/4" | AV-D-766 |
| 122 | Thermostat | Pentagon Row | Unit 2314 | Operable part maximum 48" above finished floor | 59-1/8" | AV-D-767 |
| 123 | Thermostat | Pentagon Row | Unit 2327 | Operable part maximum 48" above finished floor | 58-1/2" | AV-D-769 |
| 124 | Thermostat | Pentagon Row | Unit 2332 | Operable part maximum 48" above finished floor | 61-1/4" | AV-D-770 |
| 125 | Thermostat | Pentagon Row | Unit 3301 | Operable part maximum 48" above finished floor | 61" | AV-D-774 |
| 126 | Thermostat | Pentagon Row | Unit 3313 | Operable part maximum 48" above finished floor | 60" | AV-D-775 |
| 127 | Thermostat | Pentagon Row | Unit 4312 | Operable part maximum 48" above finished floor | 59-3/4" | AV-D-778 |
| 128 | Thermostat | Pentagon Row | Unit 4419 | Operable part maximum 48" above finished floor | 62-3/8" | AV-D-780 |
| 129 | Thermostat | Pentagon Row | Unit 4537 | Operable part maximum 48" above finished floor | 60-1/4" | AV-D-781 |
| 130 | Thermostat | Pentagon Row | Unit 1221 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-3557 |
| 131 | Thermostat | Pentagon Row | Unit 1219 | Operable part maximum 48" above finished floor | 63" | MW-D-3557 |
| 132 | Thermostat | Pentagon Row | Unit 1225 | Operable part maximum 48" above finished floor | 59" | MW-D-3557 |
| 133 | Thermostat | Pentagon Row | Unit 1233 | Operable part maximum 48" above finished floor | 59" | MW-D-3562 |
| 134 | Thermostat | Pentagon Row | Unit 1302 | Operable part maximum 48" above finished floor | 58" | MW-D-3562 |
| 135 | Thermostat | Pentagon Row | Unit 1320 | Operable part maximum 48" above finished floor | 60" | MW-D-3562 |
| 136 | Thermostat | Pentagon Row | Unit 2407 | Operable part maximum 48" above finished floor | 60-3/4" | MW-D-3572 |
| 137 | Thermostat | Pentagon Row | Unit 2301 | Operable part maximum 48" above finished floor | 56-1/2" | MW-D-3577 |
| 138 | Thermostat | Pentagon Row | Unit 2224 | Operable part maximum 48" above finished floor | 63-1/4" | MW-D-3577 |
| 139 | Thermostat | Pentagon Row | Unit 2228 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-3577 |
| 140 | Thermostat | Pentagon Row | Unit 2335 | Operable part maximum 48" above finished floor | 59-1/4" | MW-D-3582 |
| 141 | Thermostat | Pentagon Row | Unit 2333 | Operable part maximum 48" above finished floor | 59-3/8" | MW-D-3582 |
| 142 | Thermostat | Pentagon Row | Unit 2316 | Operable part maximum 48" above finished floor | 58-1/4" | MW-D-3582 |
| 143 | Thermostat | Pentagon Row | Unit 2422 | Operable part maximum 48" above finished floor | 59" | MW-D-3587 |
| 144 | Thermostat | Pentagon Row | Unit 2502 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-3587 |
| 145 | Thermostat | Pentagon Row | Unit 3309 | Operable part maximum 48" above finished floor | 57-1/2" | MW-D-3598 |
| 146 | Thermostat | Pentagon Row | Unit 3314 | Operable part maximum 48" above finished floor | 60-3/4" | MW-D-3597 |
| 147 | Thermostat | Pentagon Row | Unit 3413 | Operable part maximum 48" above finished floor | 58-3/4" | MW-D-3597 |
| 148 | Thermostat | Pentagon Row | Unit 3506 | Operable part maximum 48" above finished floor | 68-3/4" | MW-D-6002 |
| 149 | Thermostat | Pentagon Row | Unit 4329 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-6002 |
| 150 | Thermostat | Pentagon Row | Unit 4417 | Operable part maximum 48" above finished floor | 61" | MW-D-6007 |
| 151 | Thermostat | Pentagon Row | Unit 1216 | Operable part maximum 48" above finished floor | 56" | MW-D-6007 |
| 152 | Thermostat | Rocky Point | Unit 7138 | Operable part maximum 48" above finished floor | 58-1/8" | MW-D-2878 |
| 153 | Thermostat | Rocky Point | Unit 7169 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-2885 |

# Appendix B:  Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 154 | Thermostat | Rocky Point | Unit 7008 | Operable part maximum 48" above finished floor | 62-1/4" | MW-D-2891 |
| 155 | Thermostat | Rocky Point | Unit 7146 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-2898 |
| 156 | Thermostat | Rocky Point | Unit 3525 | Operable part maximum 48" above finished floor | 62-1/4" | MW-D-2898 |
| 157 | Thermostat | Rocky Point | Unit 3432 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-2904 |
| 158 | Thermostat | Rocky Point | Unit 3415 | Operable part maximum 48" above finished floor | 61-1/4" | MW-D-2911 |
| 159 | Thermostat | Rocky Point | Unit 7410 | Operable part maximum 48" above finished floor | 60-3/8" | MW-D-2917 |
| 160 | Thermostat | Rocky Point | Unit 3404 | Operable part maximum 48" above finished floor | 60-1/2" | MW-D-2924 |
| 161 | Thermostat | Rocky Point | Unit 3203 | Operable part maximum 48" above finished floor | 59-1/2" | MW-D-2924 |
| 162 | Thermostat | Square | Unit 251 | Operable part maximum 48" above finished floor | 58-3/4" | MW-D-1714 |
| 163 | Thermostat | Square | Unit 226 | Operable part maximum 48" above finished floor | 58-3/4" | MW-D-1716 |
| 164 | Thermostat | Square | Unit 235 | Operable part maximum 48" above finished floor | 58-3/4" | MW-D-1717 |
| 165 | Thermostat | Square | Unit 347 | Operable part maximum 48" above finished floor | 56-1/2" | MW-D-1717 |
| 166 | Thermostat | Square | Unit 323 | Operable part maximum 48" above finished floor | 57" | MW-D-1719 |
| 167 | Thermostat | Square | Unit 426 | Operable part maximum 48" above finished floor | 57-1/4" | AV-D-1308 |
| 168 | Thermostat | Square | Unit 223 | Operable part maximum 48" above finished floor | 56-5/8" | AV-D-1335 |
| 169 | Thermostat | Uptown Village | Unit 1301 | Operable part maximum 48" above finished floor | 56-3/8" | MW-D-1811 |
| 170 | Thermostat | Uptown Village | Unit 3103 | Operable part maximum 48" above finished floor | 56" | MW-D-1814 |
| 171 | Thermostat | Uptown Village | Unit 4305 | Operable part maximum 48" above finished floor | 56-1/4" | MW-D-1815 |
| 172 | Thermostat | Vintage | Unit 217 | Operable part maximum 48" above finished floor | 60-3/8" | MW-D-2635 |
| 173 | Vanity outlet(s) in bathroom | Biltmore | Unit 1219 | Operable part maximum 46" if located over obstruction for side reach | 49-1/2" | MW-D-1962 |
| 174 | Vanity outlet(s) in bathroom | Biltmore | Unit 1221 | Operable part maximum 46" if located over obstruction for side reach for side reach | 50" | MW-D-1970 |
| 175 | Vanity outlet(s) in bathroom | Biltmore | Unit 1224 | Operable part maximum 46" if located over obstruction for side reach | 49-3/4" | MW-D-1970 |
| 176 | Vanity outlet(s) in bathroom | Biltmore | Unit 1226 | Operable part maximum 46" if located over obstruction for side reach | 49-3/4" | MW-D-1978 |
| 177 | Vanity outlet(s) in bathroom | Biltmore | Unit 1229 | Operable part maximum 46" if located over obstruction for side reach | 49-1/4" - 49-3/4" | MW-D-1978 |
| 178 | Vanity outlet(s) in bathroom | Biltmore | Unit 1233 | Operable part maximum 46" if located over obstruction for side reach | 49-3/4" | MW-D-1986 |
| 179 | Vanity outlet(s) in bathroom | Biltmore | Unit 1234 | Operable part maximum 46" if located over obstruction for side reach | 49-1/2" | MW-D-1986 |
| 180 | Vanity outlet(s) in bathroom | Biltmore | Unit 2013 | Operable part maximum 46" if located over obstruction for side reach | 49-1/2", 49-3/4" | MW-D-2002 |
| 181 | Vanity outlet(s) in bathroom | Biltmore | Unit 2107 | Operable part maximum 46" if located over obstruction for side reach | 49-3/4", 50", 50" | MW-D-2002 |
| 182 | Vanity outlet(s) in bathroom | Biltmore | Unit 2108 | Operable part maximum 46" if located over obstruction for side reach | 50", 50" | MW-D-2002 |

# Appendix B: Requirement 5, Accessible Light Switches, Electrical Outlets, and Environmental Controls

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 183 | Vanity outlet(s) in bathroom | Biltmore | Unit 2202 | Operable part maximum 46" if located over obstruction for side reach | 50" | MW-D-2017 |
| 184 | Vanity outlet(s) in bathroom | Biltmore | Unit 2203 | Operable part maximum 46" if located over obstruction for side reach | 50" | MW-D-2017 |
| 185 | Vanity outlet(s) in bathroom | Biltmore | Unit 2209 | Operable part maximum 46" if located over obstruction for side reach | 50" | MW-D-2024 |
| 186 | Vanity outlet(s) in bathroom | Biltmore | Unit 2007 | Operable part maximum 46" if located over obstruction for side reach | 50", 50-1/4" | MW-D-2024 |
| 187 | Vanity outlet(s) in bathroom | Biltmore | Unit 1422 | Operable part maximum 46" if located over obstruction for side reach | 48-3/8" | MW-D-2032 |
| 188 | Vanity outlet(s) in bathroom | Biltmore | Unit 1520 | Operable part maximum 46" if located over obstruction for side reach | 49-1/2" | MW-D-2032 |
| 189 | Vanity outlet(s) in bathroom | Biltmore | Unit 2214 | Operable part maximum 46" if located over obstruction for side reach | 50" | MW-D-2041 |
| 190 | Wall outlet(s) | Biltmore | Unit 1614 | Operable part minimum 15" above finished floor | 13-5/8" | MW-D-1994 |
| 191 | Wall outlet(s) | Biltmore | Unit 1615 | Operable part minimum 15" above finished floor | 13-3/8"-13-3/4" | MW-D-1994 |
| 192 | Wall outlet(s) | Luminaria | Unit 4E | Operable part minimum 15" above finished floor | 14" | MW-D-2354 |
| 193 | Wall outlet(s) | Luminaria | Unit 7C | Operable part minimum 15" above finished floor | 14" | MW-D-2355 |
| 194 | Wall outlet(s) | Luminaria | Unit 7G | Operable part minimum 15" above finished floor | 14" | MW-D-2356 |
| 195 | Wall outlet(s) | Luminaria | Unit 9F | Operable part minimum 15" above finished floor | 13-3/4" | MW-D-2357 |
| 196 | Wall outlet(s) | Luminaria | Unit 8A | Operable part minimum 15" above finished floor | 13-7/8" | MW-D-2358 |
| 197 | Wall outlet(s) | Luminaria | Unit 12H | Operable part minimum 15" above finished floor | 14" | MW-D-2359 |
| 198 | Wall outlet(s) | Luminaria | Unit 15E | Operable part minimum 15" above finished floor | 14" | MW-D-2360 |
| 199 | Wall outlet(s) | Rocky Point | Unit 3525 | Operable part minimum 15" above finished floor | 13-3/4" | MW-D-2898 |
| 200 | Wall outlet(s) | Rocky Point | Unit 3432 | Operable part minimum 15" above finished floor | 13-1/2" | MW-D-2904 |
| 201 | Wall outlet(s) | Square | Unit 237 | Operable part minimum 15" above finished floor | 12-3/4" | MW-D-1717 |
| 202 | Wall outlet(s) | Square | Unit 347 | Operable part minimum 15" above finished floor | 13-3/4" | MW-D-1717 |
| 203 | Wall outlet(s) | Square | Unit 325 | Operable part minimum 15" above finished floor | 11-1/2" | MW-D-1718 |
| 204 | Wall outlet(s) | Square | Unit 323 | Operable part minimum 15" above finished floor | 12-3/4" | MW-D-1719 |
| 205 | Wall outlet(s) | Vintage | Unit 217 | Operable part minimum 15" above finished floor | 13-1/2" | MW-D-2635 |
| 206 | Wall outlet(s) | Vintage | Unit 111 | Operable part minimum 15" above finished floor | 13-1/2" | MW-D-2637 |
| 207 | Wall outlet(s) | Vintage | Unit 103 | Operable part minimum 15" above finished floor | 14" | MW-D-2637 |
| 208 | Wall outlet(s) | Vintage | Unit 161 | Operable part minimum 15" above finished floor | 13-1/2" | MW-D-2638 |
| 209 | Wall outlet(s) | Vintage | Unit 164 | Operable part minimum 15" above finished floor | 13-3/4" | MW-D-2639 |
| 210 | Wall outlet(s) | Vintage | Unit 167 | Operable part minimum 15" above finished floor | 13-1/2" | MW-D-2639 |
| 211 | Wall outlet(s) | Vintage | Unit 173 | Operable part minimum 15" above finished floor | 13-3/4" | MW-D-2640 |

# Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|-------------------------------------|------------------|---------|
| 1 | Toilet alcove | Abbey | Unit 212 | Alcove more than 24" deep must be at least 48" wide | 43-7/8" deep by 34" wide | MW-D-1588 |
| 2 | Toilet alcove | Abbey | Unit 206 | Alcove more than 24" deep must be at least 48" wide | 44" deep by 34" wide | MW-D-1589 |
| 3 | Toilet alcove | Coles Corner | Unit 161 | Alcove more than 24" deep must be at least 48" wide | 42-1/8" deep by 36-3/4" wide | MW-D-1544 |
| 4 | Toilet alcove | Gallery | Unit 7011 | Alcove more than 24" deep must be at least 48" wide | 46" deep by 37-3/4" wide | MW-D-1567 |
| 5 | Toilet alcove | Gallery | Unit 2021 | Alcove more than 24" deep must be at least 48" wide | 42" deep by 35-1/2" wide | MW-D-1571 |
| 6 | Toilet alcove | Gallery | Unit 4019 | Alcove more than 24" deep must be at least 48" wide | 67-1/2" deep by 35-1/4" wide | MW-D-1571 |
| 7 | Toilet alcove | Gallery | Unit 4015 | Alcove more than 24" deep must be at least 48" wide | 41" deep by 36" wide | MW-D-1572 |
| 8 | Toilet alcove | Harbour Place | Unit 1106 | Alcove more than 24" deep must be at least 48" wide | 26-7/8" deep by 37-3/8" wide | MW-D-1641, 1642 |
| 9 | Toilet alcove | Harbour Place | Unit 1106 (master) | Alcove more than 24" deep must be at least 48" wide | 26" deep by 34" wide | MW-D-1641, 1642 |
| 10 | Toilet alcove | Parkside Atlanta | Unit 1402 | Alcove more than 24" deep must be at least 48" wide | 27-1/2" deep by 34-1/4" wide | MW-D-2289 |
| 11 | Toilet alcove | Parkside Atlanta | Unit 1402 | Alcove more than 24" deep must be at least 48" wide | 32-1/2" deep by 36-1/8" wide | MW-D-2290 |
| 12 | Toilet alcove | Parkside Atlanta | Unit 1408 | Alcove more than 24" deep must be at least 48" wide | 33-1/2" deep by 36-1/4" wide | MW-D-2291 |
| 13 | Toilet alcove | Parkside Atlanta | Unit 2307 | Alcove more than 24" deep must be at least 48" wide | 34-1/2" deep by 34-5/8" wide | MW-D-2291 |
| 14 | Toilet alcove | Parkside Atlanta | Unit 2307 (bath #2) | Alcove more than 24" deep must be at least 48" wide | 34-1/2" deep by 36-5/8" wide | MW-D-2291 |
| 15 | Toilet alcove | Parkside Orlando | Unit 2205 | Alcove more than 24" deep must be at least 48" wide | 37-1/2"+ deep by 34-1/2" - 39" wide | MW-D-871 |
| 16 | Toilet alcove | Parkside Orlando | Unit 2204 | Alcove more than 24" deep must be at least 48" wide | 43" deep by 34-1/2" wide | MW-D-2333 |
| 17 | Toilet alcove | Parkside Orlando | Unit 1102 | Alcove more than 24" deep must be at least 48" wide | 34" deep by 46-1/2" wide | MW-D-2334 |
| 18 | Toilet alcove | Parkside Orlando | Unit 1102 (bath #2) | Alcove more than 24" deep must be at least 48" wide | 25-3/4" deep by 37" wide | MW-D-2334 |
| 19 | Toilet alcove | Square | Unit 251 | Alcove more than 24" deep must be at least 48" wide | 46" deep by 36-1/2" wide | MW-D-1714 |

## Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 20 | Toilet alcove | Square | Unit 276 | Alcove more than 24" deep must be at least 48" wide | 45-7/8" deep by 35-1/2" wide | MW-D-1715 |
| 21 | Toilet alcove | Square | Unit 426 | Alcove more than 24" deep must be at least 48" wide | 57-1/2" deep by 35-1/8" wide | AV-D-1308 |
| 22 | Toilet alcove | Uptown Village | Unit 1301 | Alcove more than 24" deep must be at least 48" wide | 30-3/8" deep by 30-3/4" wide | MW-D-1812 |
| 23 | Toilet alcove | Vineyard | Unit 202 (master) | Alcove more than 24" deep must be at least 48" wide | 32" deep by 32-3/4" wide | MW-D-1751, 1752 |
| 24 | Toilet alcove | Vineyard | Unit 202 | Alcove more than 24" deep must be at least 48" wide | 34-5/16" deep by 40-3/4" wide | MW-D-1751, 1752 |
| 25 | Toilet alcove | Vineyard | Unit 408 | Alcove more than 24" deep must be at least 48" wide | 36-3/4" deep by 36" wide | MW-D-1755, 1756 |
| 26 | Toilet alcove | Vineyard | Unit 102 | Alcove more than 24" deep must be at least 48" wide | 29-1/2" deep by 40-1/2" wide | MW-D-1756, 1757 |
| 27 | Toilet alcove | Vintage | Unit 313 | Alcove more than 24" deep must be at least 48" wide | 33-1/2" deep by 36-1/2" wide | MW-D-2636 |
| 28 | Kitchen space - cabinet to opposing cabinet | Uptown Village | Unit 1301 | Minimum 40" between opposing barriers in kitchen | 33-5/8" | MW-D-1811, 1812 |
| 29 | Kitchen space - cabinet to opposing cabinet | Vintage | Unit 161 | Minimum 40" between opposing barriers in kitchen | 35-5/8" | MW-D-2638 |
| 30 | Kitchen space - cabinet to opposing counter | Vintage | Unit 103 | Minimum 40" between opposing barriers in kitchen | 34" | MW-D-2635 |
| 31 | Kitchen space - cabinet to opposing range | Coles Corner | Unit 483 | Minimum 40" between opposing barriers in kitchen | 30-3/4" | MW-D-1545 |
| 32 | Kitchen space - cabinet to opposing range | Square | Unit 323 | Minimum 40" between opposing barriers in kitchen | 36-5/8" | MW-D-1719 |
| 33 | Kitchen space - cabinet to opposing range | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 35-15/16" | MW-D-1813 |
| 34 | Kitchen space - cabinet to opposing range | Vintage | Unit 103 | Minimum 40" between opposing barriers in kitchen | 32-3/4" | MW-D-2636 |
| 35 | Kitchen space - cabinet to opposing range | Vintage | Unit 317 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | MW-D-2636 |
| 36 | Kitchen space - cabinet to opposing range | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | MW-D-2639 |
| 37 | Kitchen space - cabinet to opposing wall | Coles Corner | Unit 165 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1544 |
| 38 | Kitchen space - cabinet to opposing wall | Coles Corner | Unit 483 | Minimum 40" between opposing barriers in kitchen | 30-5/8" | MW-D-1545 |

## Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 39 | Kitchen space - counter to opposing counter | Square | Unit 347 | Minimum 40" between opposing barriers in kitchen | 34-3/8" | MW-D-1717 |
| 40 | Kitchen space - counter to opposing counter | Square | Unit 325 | Minimum 40" between opposing barriers in kitchen | 27" | MW-D-1718 |
| 41 | Kitchen space - counter to opposing counter | Square | Unit 323 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | MW-D-1719 |
| 42 | Kitchen space - counter to opposing counter | Uptown Village | Unit 1301 | Minimum 40" between opposing barriers in kitchen | 31-7/8" | MW-D-1811, 1812 |
| 43 | Kitchen space - counter to opposing counter | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 37-1/2" | MW-D-1813 |
| 44 | Kitchen space - counter to opposing counter | Uptown Village | Unit 4304 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1815 |
| 45 | Kitchen space - counter to opposing counter | Vineyard | Unit 202 | Minimum 40" between opposing barriers in kitchen | 36-5/8" | MW-D-1751, 1752 |
| 46 | Kitchen space - counter to opposing counter | Vintage | Unit 103 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | MW-D-2636 |
| 47 | Kitchen space - counter to opposing counter | Vintage | Unit 317 | Minimum 40" between opposing barriers in kitchen | 34-1/4" | MW-D-2636 |
| 48 | Kitchen space - counter to opposing counter | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | MW-D-2639 |
| 49 | Kitchen space - counter to opposing counter | Vintage | Unit 161 | Minimum 40" between opposing barriers in kitchen | 34-3/8" | MW-D-2638 |
| 50 | Kitchen space - counter to opposing door face | Uptown Village | Unit 1301 | Minimum 40" between opposing barriers in kitchen | 32-1/4" | MW-D-1811, 1812 |
| 51 | Kitchen space - counter to opposing range | Square | Unit 323 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | MW-D-1719 |
| 52 | Kitchen space - counter to opposing range | Uptown Village | Unit 2147 | Minimum 40" between opposing barriers in kitchen | 38" | MW-D-1811 |
| 53 | Kitchen space - counter to opposing range | Uptown Village | Unit 3113 | Minimum 40" between opposing barriers in kitchen | 37-3/4" | MW-D-1814 |
| 54 | Kitchen space - counter to opposing range | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 36-1/4" | MW-D-2639 |
| 55 | Kitchen space - counter to opposing range | Vintage | Unit 173 | Minimum 40" between opposing barriers in kitchen | 37-1/2" | MW-D-2640 |
| 56 | Kitchen space - counter to opposing wall | Biltmore | Unit 2107 | Minimum 40" between opposing barriers in kitchen | 36-1/4" | MW-D-2003 |
| 57 | Kitchen space - counter to opposing wall | Coes Corner | Unit 483 | Minimum 40" between opposing barriers in kitchen | 29-3/8" | MW-D-1545 |

# Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 58 | Kitchen space - counter to opposing wall | Coles Corner | Unit 165 | Minimum 40" between opposing barriers in kitchen | 35" | MW-D-1544 |
| 59 | Kitchen space - counter to opposing wall | Coles Corner | Unit 257 | Minimum 40" between opposing barriers in kitchen | 33-5/8" | MW-D-1545 |
| 60 | Kitchen space - counter to opposing wall | Uptown Village | Unit 4304 | Minimum 40" between opposing barriers in kitchen | 35-1/8" | MW-D-1815 |
| 61 | Kitchen space - counter to opposing wall | Vineyard | Unit 129 | Minimum 40" between opposing barriers in kitchen | 37-3/4" | MW-D-1751 |
| 62 | Kitchen space - dishwasher to opposing barrier | Massachusetts Avenue | Unit 318 | Minimum 40" between opposing barriers in kitchen | 35-5/8" | AV-D-711 |
| 63 | Kitchen space - dishwasher to opposing cabinet | Square | Unit 347 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1717 |
| 64 | Kitchen space - dishwasher to opposing cabinet | Square | Unit 325 | Minimum 40" between opposing barriers in kitchen | 26-3/4" | MW-D-1718 |
| 65 | Kitchen space - dishwasher to opposing cabinet | Square | Unit 164 | Minimum 40" between opposing barriers in kitchen | 37" | MW-D-1720, 1721 |
| 66 | Kitchen space - dishwasher to opposing cabinet | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 35-1/2" | MW-D-1813 |
| 67 | Kitchen space - dishwasher to opposing counter | Vintage | Unit 103 | Minimum 40" between opposing barriers in kitchen | 36-1/8" | MW-D-2636 |
| 68 | Kitchen space - dishwasher to opposing kitchen island | Gallery | Unit 7019 | Minimum 40" between opposing barriers in kitchen | 37" | MW-D-1568 |
| 69 | Kitchen space - dishwasher to opposing range | Uptown Village | Unit 4304 | Minimum 40" between opposing barriers in kitchen | 33-7/8" | MW-D-1815 |
| 70 | Kitchen space - dishwasher to opposing range | Vintage | Unit 167 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | MW-D-2639 |
| 71 | Kitchen space - dishwasher to opposing wall | Coles Corner | Unit 257 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1544 |
| 72 | Kitchen space - dishwasher to opposing wall | Massachusetts Avenue | Unit 319 | Minimum 40" between opposing barriers in kitchen | 37-1/2" | AV-D-712 |
| 73 | Kitchen space - dishwasher to opposing wall | Massachusetts Avenue | Unit 616 | Minimum 40" between opposing barriers in kitchen | 37-3/4" | MW-D-1148 |
| 74 | Kitchen space - dishwasher to opposing wall | Massachusetts Avenue | Unit 815 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | AV-D-715 |
| 75 | Kitchen space - dishwasher to opposing wall | Uptown Village | Unit 2127 | Minimum 40" between opposing barriers in kitchen | 30-3/4" | MW-D-1810 |
| 76 | Kitchen space - range to opposing kitchen island | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 35-1/2" | MW-D-1813 |

# Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 77 | Kitchen space - range to opposing sink | Uptown Village | Unit 2147 | Minimum 40" between opposing barriers in kitchen | 38" | MW-D-1811 |
| 78 | Kitchen space - range to opposing sink | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | AV-D-1380 |
| 79 | Kitchen space - range to opposing sink | Vintage | Unit 173 | Minimum 40" between opposing barriers in kitchen | 37" | AV-D-1368 |
| 80 | Kitchen space - range to opposing wall | Toscana | Unit 3C | Minimum 40" between opposing barriers in kitchen | 37-3/4" | MW-D-1670 |
| 81 | Kitchen space - range to opposing wall | Uptown Village | Unit 3103 | Minimum 40" between opposing barriers in kitchen | 34-5/8" | MW-D-1814 |
| 82 | Kitchen space - range to opposing wall | Vineyard | Unit 129 | Minimum 40" between opposing barriers in kitchen | 37-7/8" | MW-D-1751 |
| 83 | Kitchen space - refrigerator to opposing barrier | Parkside Orlando | Unit 1206 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | AV-D-639 |
| 84 | Kitchen space - refrigerator to opposing cabinet | Abbey | Unit 303 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1590 |
| 85 | Kitchen space - refrigerator to opposing cabinet | Parkside Atlanta | Unit 1301 | Minimum 40" between opposing barriers in kitchen | 37-1/4" | MW-D-878 |
| 86 | Kitchen space - refrigerator to opposing cabinet | Parkside Atlanta | Unit 1307 | Minimum 40" between opposing barriers in kitchen | 32" | AV-D-524 |
| 87 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 276 | Minimum 40" between opposing barriers in kitchen | 27-1/4" | MW-D-1715 |
| 88 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 323 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | MW-D-1719 |
| 89 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 372 | Minimum 40" between opposing barriers in kitchen | 31-3/4" | MW-D-1719 |
| 90 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 169 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1720 |
| 91 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 223 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | AV-D-1335 |
| 92 | Kitchen space - refrigerator to opposing cabinet | Square | Unit 232 | Minimum 40" between opposing barriers in kitchen | 34" | AV-D-1340 |
| 93 | Kitchen space - refrigerator to opposing cabinet | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 33-1/4" | MW-D-1813 |
| 94 | Kitchen space - refrigerator to opposing cabinet | Uptown Village | Unit 3113 | Minimum 40" between opposing barriers in kitchen | 33-3/4" | MW-D-1814 |
| 95 | Kitchen space - refrigerator to opposing cabinet | Vineyard | Unit 202 | Minimum 40" between opposing barriers in kitchen | 35-9/16" | MW-D-1751, 1752 |

# Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|-------------------------------------|------------------|---------|
| 96 | Kitchen space - refrigerator to opposing cabinet | Vineyard | Unit 408 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | MW-D-1755, 1756 |
| 97 | Kitchen space - refrigerator to opposing cabinet | Vintage | Unit 102 | Minimum 40" between opposing barriers in kitchen | 34-1/2" | AV-D-1351 |
| 98 | Kitchen space - refrigerator to opposing counter | Biltmore | Unit 1233 | Minimum 40" between opposing barriers in kitchen | 37-3/4" | MW-D-1987 |
| 99 | Kitchen space - refrigerator to opposing counter | Harbour Place | Unit 2408 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1639 |
| 100 | Kitchen space - refrigerator to opposing counter | Harbour Place | Unit 1425 | Minimum 40" between opposing barriers in kitchen | 32-1/2" | MW-D-1645 |
| 101 | Kitchen space - refrigerator to opposing counter | Square | Unit 276 | Minimum 40" between opposing barriers in kitchen | 26-3/4" | MW-D-1715 |
| 102 | Kitchen space - refrigerator to opposing counter | Square | Unit 372 | Minimum 40" between opposing barriers in kitchen | 31" | MW-D-1719 |
| 103 | Kitchen space - refrigerator to opposing counter | Toscana | Unit 21E | Minimum 40" between opposing barriers in kitchen | 35-1/8" | MW-D-1673 |
| 104 | Kitchen space - refrigerator to opposing counter | Toscana | Unit 25A | Minimum 40" between opposing barriers in kitchen | 34-3/8" | MW-D-1675 |
| 105 | Kitchen space - refrigerator to opposing counter | Uptown Village | Unit 2147 | Minimum 40" between opposing barriers in kitchen | 34-7/8" | MW-D-1811 |
| 106 | Kitchen space - refrigerator to opposing counter | Uptown Village | Unit 3103 | Minimum 40" between opposing barriers in kitchen | 34-1/2" | MW-D-1814 |
| 107 | Kitchen space - refrigerator to opposing counter | Uptown Village | Unit 3113 | Minimum 40" between opposing barriers in kitchen | 33-1/2" | MW-D-1814 |
| 108 | Kitchen space - refrigerator to opposing counter | Uptown Village | Unit 4304 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1815 |
| 109 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 129 | Minimum 40" between opposing barriers in kitchen | 34-3/4" | MW-D-1751 |
| 110 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 202 | Minimum 40" between opposing barriers in kitchen | 34-5/8" | MW-D-1751, 1752 |
| 111 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 415 | Minimum 40" between opposing barriers in kitchen | 36-1/4" | MW-D-1754 |
| 112 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 413 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1755 |
| 113 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 408 | Minimum 40" between opposing barriers in kitchen | 35" | MW-D-1755, 1756 |
| 114 | Kitchen space - refrigerator to opposing counter | Vineyard | Unit 406 | Minimum 40" between opposing barriers in kitchen | 32-3/4" | MW-D-1756 |

# Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|-------------------------------------|------------------|---------|
| 115 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 119 | Minimum 40" between opposing barriers in kitchen | 32-7/8" | MW-D-2635 |
| 116 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 103 | Minimum 40" between opposing barriers in kitchen | 30-3/4" | MW-D-2636 |
| 117 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 317 | Minimum 40" between opposing barriers in kitchen | 35" | MW-D-2636 |
| 118 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 313 | Minimum 40" between opposing barriers in kitchen | 34-1/2" | MW-D-2636 |
| 119 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 33-3/4" | MW-D-2639 |
| 120 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 167 | Minimum 40" between opposing barriers in kitchen | 34-3/16" | MW-D-2639 |
| 121 | Kitchen space - refrigerator to opposing counter | Vintage | Unit 173 | Minimum 40" between opposing barriers in kitchen | 33-1/8" | MW-D-2640 |
| 122 | Kitchen space - refrigerator to opposing dishwasher | Biltmore | Unit 1219 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | MW-D-1962 |
| 123 | Kitchen space - refrigerator to opposing dishwasher | Harbour Place | Unit 1106 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1641 |
| 124 | Kitchen space - refrigerator to opposing dishwasher | Square | Unit 225 | Minimum 40" between opposing barriers in kitchen | 34" | AV-D-1343 |
| 125 | Kitchen space - refrigerator to opposing dishwasher | Toscana | Unit 6B | Minimum 40" between opposing barriers in kitchen | 36-1/2" | MW-D-1671 |
| 126 | Kitchen space - refrigerator to opposing dishwasher | Toscana | Unit 8C | Minimum 40" between opposing barriers in kitchen | 34" | MW-D-1672 |
| 127 | Kitchen space - refrigerator to opposing dishwasher | Uptown Village | Unit 2147 | Minimum 40" between opposing barriers in kitchen | 33-1/2" | MW-D-1811 |
| 128 | Kitchen space - refrigerator to opposing dishwasher | Uptown Village | Unit 5145 | Minimum 40" between opposing barriers in kitchen | 37-5/8" | MW-D-1812 |
| 129 | Kitchen space - refrigerator to opposing dishwasher | Uptown Village | Unit 3103 | Minimum 40" between opposing barriers in kitchen | 33-1/2" | MW-D-1814 |
| 130 | Kitchen space - refrigerator to opposing dishwasher | Vineyard | Unit 129 | Minimum 40" between opposing barriers in kitchen | 34-1/2" | MW-D-1751 |
| 131 | Kitchen space - refrigerator to opposing dishwasher | Vineyard | Unit 415 | Minimum 40" between opposing barriers in kitchen | 36" | MW-D-1754 |
| 132 | Kitchen space - refrigerator to opposing dishwasher | Vineyard | Unit 413 | Minimum 40" between opposing barriers in kitchen | 32-1/4" | MW-D-1755 |
| 133 | Kitchen space - refrigerator to opposing dishwasher | Vineyard | Unit 406 | Minimum 40" between opposing barriers in kitchen | 32-3/8" | MW-D-1756 |

## Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 134 | Kitchen space - refrigerator to opposing dishwasher | Vintage | Unit 119 | Minimum 40" between opposing barriers in kitchen | 32-1/4" | MW-D-2635 |
| 135 | Kitchen space - refrigerator to opposing dishwasher | Vintage | Unit 317 | Minimum 40" between opposing barriers in kitchen | 30" | MW-D-2636 |
| 136 | Kitchen space - refrigerator to opposing dishwasher | Vintage | Unit 164 | Minimum 40" between opposing barriers in kitchen | 32-7/8" | MW-D-2639 |
| 137 | Kitchen space - refrigerator to opposing dishwasher | Vintage | Unit 173 | Minimum 40" between opposing barriers in kitchen | 21" | MW-D-2640 |
| 138 | Kitchen space - refrigerator to opposing kitchen island | Abbey | Unit 202 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | MW-D-1589 |
| 139 | Kitchen space - refrigerator to opposing kitchen island | Abbey | Unit 308 | Minimum 40" between opposing barriers in kitchen | 32" | MW-D-1590 |
| 140 | Kitchen space - refrigerator to opposing kitchen island | Gallery | Unit 7011 | Minimum 40" between opposing barriers in kitchen | 30-1/4" | MW-D-1567 |
| 141 | Kitchen space - refrigerator to opposing kitchen island | Parkside Atlanta | Unit 1307 | Minimum 40" between opposing barriers in kitchen | 32" | MW-D-881 |
| 142 | Kitchen space - refrigerator to opposing kitchen island | Uptown Village | Unit 5147 | Minimum 40" between opposing barriers in kitchen | 32-3/4" | MW-D-1813 |
| 143 | Kitchen space - refrigerator to opposing pantry door | Parkside Orlando | Unit 1208, Bldg A | Minimum 40" between opposing barriers in kitchen | 35-3/8" | AV-D-640 |
| 144 | Kitchen space - refrigerator to opposing pantry door | Square | Unit 164 | Minimum 40" between opposing barriers in kitchen | 29-1/2" | MW-D-1720, 1721 |
| 145 | Kitchen space - refrigerator to opposing range | Toscana | Unit 22B | Minimum 40" between opposing barriers in kitchen | 34" | MW-D-1674 |
| 146 | Kitchen space - refrigerator to opposing stove | Parkside Atlanta | Unit 2223 | Minimum 40" between opposing barriers in kitchen | 34" | AV-D-533 |
| 147 | Kitchen space - refrigerator to opposing stove | Square | Unit 225 | Minimum 40" between opposing barriers in kitchen | 25-7/8" | AV-D-1343 |
| 148 | Kitchen space - refrigerator to opposing wall | Abbey | Unit 309 | Minimum 40" between opposing barriers in kitchen | 37" | MW-D-1590 |
| 149 | Kitchen space - refrigerator to opposing wall | Biltmore | Unit 2110 | Minimum 40" between opposing barriers in kitchen | 36-1/2" | MW-D-1971 |
| 150 | Kitchen space - refrigerator to opposing wall | Biltmore | Unit 1221 | Minimum 40" between opposing barriers in kitchen | 36-3/4" | MW-D-1971 |
| 151 | Kitchen space - refrigerator to opposing wall | Massachusetts Avenue | Unit 1416 | Minimum 40" between opposing barriers in kitchen | 35-3/4" | AV-D-725 |
| 152 | Kitchen space - refrigerator to opposing wall | Parkside Orlando | Unit 1303 | Minimum 40" between opposing barriers in kitchen | 36" | AV-D-641 |

Appendix B:  Requirement 7, Kitchen and Bathroom Maneuvering Space

| Line # | Feature | Property | Location | Guidelines Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 153 | Kitchen space - refrigerator to opposing wall | Square | Unit 251 | Minimum 40" between opposing barriers in kitchen | 33" | MW-D-1714 |
| 154 | Kitchen space - refrigerator to opposing wall | Toscana | Unit 3G | Minimum 40" between opposing barriers in kitchen | 34" | MW-D-1669 |
| 155 | Kitchen space - refrigerator to opposing wall | Toscana | Unit 21E | Minimum 40" between opposing barriers in kitchen | 34-1/4" | MW-D-1673 |
| 156 | Kitchen space - refrigerator to opposing wall | Uptown Village | Unit 5145 | Minimum 40" between opposing barriers in kitchen | 32" | MW-D-1812 |
| 157 | Kitchen space - refrigerator to opposing wall | Vineyard | Unit 439 | Minimum 40" between opposing barriers in kitchen | 36-7/8" | MW-D-1753, 1754 |

# Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 1 | Dispenser - paper towels on side wall | Biltmore | Public toilet room | 54" maximum above finished floor for side reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 55" | MW-D-2074 |
| 2 | Dispenser - paper towels on side wall | Parkside Orlando | Public toilet room (women's) | 54" maximum above finished floor for side reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 54-3/4" | MW-D-2323 |
| 3 | Dispenser - paper towels on side wall | Parkside Orlando | Public toilet room (men's) | 54" maximum above finished floor for side reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 55" | MW-D-2323 |
| 4 | Dispenser - paper towels over toilet | Parkside Atlanta | Public toilet room (unisex) | 48" maximum above finished floor for forward reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 50-1/2" | MW-D-1140, 2283 |
| 5 | Dispenser - seat protector over toilet | Massachusetts Avenue | Public toilet room (women's) | 48" maximum above finished floor for forward reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 51" | MW-D-1163 |
| 6 | Dispenser - seat protector over toilet | Massachusetts Avenue | Public toilet room (men's) | 48" maximum above finished floor for forward reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 59" | MW-D-1163 |
| 7 | Dispenser - soap on back wall | Parkside Orlando | Public toilet room (men's) | 48" maximum above finished floor for forward reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 52-1/2" | MW-D-2323 |
| 8 | Dispenser - soap on back wall | Parkside Orlando | Public toilet room (women's) | 48" maximum above finished floor for forward reach.  ADAAG §§ 4.1.3(13), 4.27.3. | 51-1/2" | MW-D-2323 |
| 9 | Door clear maneuvering area | Parkside Orlando | Public toilet room (women's) | 48" minimum perpendicular to the door if door does not have a closer.  ADAAG §§ 4.1.3(7), 4.13.6. | 41-3/4" wide without closer | MW-D-2323 |
| 10 | Door clear maneuvering area | Parkside Orlando | Public toilet room (men's) | 48" minimum perpendicular to the door if door does not have a closer.  ADAAG §§ 4.1.3(7), 4.13.6. | 42" wide without closer | MW-D-2323 |
| 11 | Door stall hinge | Massachusetts Avenue | Public toilet room (women's) | Hinge side of door 4" maximum from side wall on opposite corner of water closet.  ADAAG §§ 4.1.3(11), 4.17.3. | 6-3/8" from side wall | MW-D-1163 |
| 12 | Door stall hinge | Massachusetts Avenue | Public toilet room (men's) | Hinge side of door 4" maximum from side wall on opposite corner of water closet.  ADAAG §§ 4.1.3(11), 4.17.3. | 8" | MW-D-1163 |

Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 13 | Lavatory hot water and drain pipes | Biltmore | Public toilet room | Required to be insulated or otherwise configured to protect against contact. ADAAG §§ 4.1.3(11), 4.19.4. | No pipe protection | MW-D-2074 |
| 14 | Lavatory hot water and drain pipes | Legacy | Publict toilet room | Required to be insulated or otherwise configured to protect against contact. ADAAG §§ 4.1.3(11), 4.19.4. | No insulation or protection | MW-D-2659 |
| 15 | Lavatory hot water and drain pipes | Luminaria | Public toilet room (unisex) | Required to be insulated or otherwise configured to protect against contact. ADAAG §§ 4.1.3(11), 4.19.4. | Pipes not protected | MW-D-2350 |
| 16 | Lavatory hot water and drain pipes | Toscana | Public toilet room (unisex, right side) | Required to be insulated or otherwise configured to protect against contact. ADAAG §§ 4.1.3(11), 4.19.4. | No pipe protection | MW-D-1662 |
| 17 | Lavatory hot water and drain pipes | Toscana | Public toilet room (unisex, left side) | Required to be insulated or otherwise configured to protect against contact. ADAAG §§ 4.1.3(11), 4.19.4. | No pipe protection | MW-D-1662 |
| 18 | Lavatory knee and toe clearance | Coles Corner | Public toilet room | Toe clearance at least 9" high, knee clearance at least 27" from the floor to the bottom of the lavatory, knee clearance 8" deep.  ADAAG §§ 4.1.3(11), 4.19.2. | No toe space | MW-D-1541 |
| 19 | Lavatory knee and toe clearance | Park at Phillips Place | Public toilet room | Toe clearance at least 9" high, knee clearance at least 27" from the floor to the bottom of the lavatory, knee clearance 8" deep.  ADAAG §§ 4.1.3(11), 4.19.2. | Knee clearance 5" deep to removable panel | MW-D-2164 |
| 20 | Lavatory knee and toe clearance | Rocky Point | Phase 1 east public toilet room (men's) | Toe clearance at least 9" high, knee clearance at least 27" from the floor to the bottom of the lavatory, knee clearance 8" deep.  ADAAG §§ 4.1.3(11), 4.19.2. | "Men's room (private) toe clearance below lavatory is obstructed" | MW-D-2754 |
| 21 | Mirror | Biltmore | Public toilet room | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 43-1/2" | MW-D-2074 |
| 22 | Mirror | Coles Corner | Public toilet room | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 51-1/4" | MW-D-1541 |
| 23 | Mirror | Legacy | Public toilet room | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 48-3/4" | MW-D-2659 |

Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 24 | Mirror | Park at Phillips Place | Public toilet room | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 41-1/2" | MW-D-2164 |
| 25 | Mirror | Parkside Orlando | Public toilet room (women's) | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 48" | MW-D-2323 |
| 26 | Mirror | Parkside Orlando | Public toilet room (men's) | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 48" | MW-D-2323 |
| 27 | Mirror | Toscana | Public toilet room (unisex, right side) | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 43-1/4" | MW-D-1662 |
| 28 | Mirror | Toscana | Public toilet room (unisex, left side) | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 43-1/4" | MW-D-1662 |
| 29 | Mirror | Uptown Village | Public toilet room | Bottom edge of reflective surface no higher than 40" from floor.  ADAAG §§ 4.1.3(11), 4.19.6. | 41-3/4" | MW-D-1805 |
| 30 | Public walkways | Parkside Atlanta | Walkway at south side of building 1000 | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 5% | MW-D-1140, 2283 |
| 31 | Public walkways | Parkside Atlanta | Walkway at south side of building 1000 | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 4.2% | MW-D-1140, 2282 |
| 32 | Rear wall grab bar | Luminaria | Public toilet room (unisex) | Minimum 36" long.  ADAAG §§ 4.1.3(11), 4.16.4. | 24" | MW-D-2350 |
| 33 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7 | 3.4% | MW-D-178, 2370 |
| 34 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 5.3% | MW-D-178, 2370 |
| 35 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 5% | MW-D-178, 2370 |
| 36 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 3% | MW-D-178, 2370 |
| 37 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 4.9% | MW-D-178, 2370 |
| 38 | Route from arrival point to leasing office | Alexander | NE corner of site | 2% maximum cross slope.  ADAAG §§ 4.1.2(1)-(2), 4.3.7. | 6.4% | MW-D-178, 2370 |
| 39 | Route from arrival point to leasing office | Massachusetts Avenue | Main entry door at automatic door opener push pad | 2% maximum cross slope.  ADAAG §§  4.1.2(1)-(2), 4.3.7. | 3.1% | MW-D-1162 |

Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 40 | Side wall grab bar | Alexander | Public toilet room | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 48-1/2" | MW-D-180, 2372 |
| 41 | Side wall grab bar | Coles Corner | Public toilet room | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 46-1/2" | MW-D-1541 |
| 42 | Side wall grab bar | Legacy | Public toilet room | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 51" | MW-D-2659 |
| 43 | Side wall grab bar | Luminaria | Public toilet room (unisex) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 43-1/2" | MW-D-2350 |
| 44 | Side wall grab bar | Massachusetts Avenue | Public toilet room (men's) | Back edge shall be mounted maximum 12" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 13" | MW-D-1163 |
| 45 | Side wall grab bar | Midtown Square | Public toilet room (men's) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 48" | MW-D-2557 |
| 46 | Side wall grab bar | Parkside Orlando | Public toilet room (women's) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 42" | MW-D-2323 |
| 47 | Side wall grab bar | Parkside Orlando | Public toilet room (men's) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 42" | MW-D-2323 |
| 48 | Side wall grab bar | Parkside Orlando | Public toilet room (women's) | Minimum 42" long.  ADAAG §§ 4.1.3(11), 4.16.4. | 36" | MW-D-2323 |
| 49 | Side wall grab bar | Parkside Orlando | Public toilet room (men's) | Minimum 42" long.  ADAAG §§ 4.1.3(11), 4.16.4. | 36" | MW-D-2323 |
| 50 | Side wall grab bar | Rocky Point | Phase 1 east public toilet room (women's) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 52" | MW-D-2753 |
| 51 | Side wall grab bar | Rocky Point | Phase 1 east public toilet room (men's) | Leading edge shall be minimum 54" from rear wall.  ADAAG §§ 4.1.3(11), 4.16.4. | 51-1/2" | MW-D-2752 |
| 52 | Turning circle or T-shaped turn space | Midtown Square | Public toilet room (men's) | Circle at least 60" in diameter or a T-shaped space within a 60" square to permit a person in a wheelchair to turn around.  ADAAG §§ 4.1.3(11), 4.22.3. | Turning circle provided only in stall | MW-D-2557 |

# Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|---|---|---|---|---|---|---|
| 53 | Turning circle or T-shaped turn space | Toscana | Public toilet room (unisex, right side) | Circle at least 60" in diameter or a T-shaped space within a 60" square to permit a person in a wheelchair to turn around.  ADAAG §§ 4.1.3(11), 4.22.3. | No turning circle or T-shape turn | MW-D-1662 |
| 54 | Turning circle or T-shaped turn space | Uptown Village | Public toilet room | Circle at least 60" in diameter or a T-shaped space within a 60" square to permit a person in a wheelchair to turn around.  ADAAG §§ 4.1.3(11), 4.22.3. | No turning circle | MW-D-1805 |
| 55 | Van accessible parking - location of space | Alexander | Parking level 1 (leasing center visitor entry) | Accessible space shall be on shortest accessible route to accessible entrance. ADAAG §§ 4.1.2(5)(a), 4.6.2. | Van accessible space located at NW corner of parking level, must maneuver 100+ feet through garage to the leasing entry | MW-D-131, 2376 |
| 56 | Van accessible parking - location of space | Alexander | Parking level 2 | Accessible space shall be on shortest accessible route to accessible entrance. ADAAG §§ 4.1.2(5)(a), 4.6.2. | Van accessible space located at NE corner of parking level, route to leasing office provided outside at street | MW-D-178, 179, 2370, 2371 |
| 57 | Van accessible parking - sign | Midtown Square | Leasing office | Sign identifying space as "van accessible" required.  ADAAG §§ 4.1.2(5)(b). | No van accessible sign | MW-D-2558 |
| 58 | Van accessible parking - size of space and access aisle | Alexander | Parking level 1 (leasing center visitor entry) | 16' total width including 8' each for the space and the access aisle.  ADAAG §§ 4.1.2(5)(b), 4.6.3. | 13'-11" total width of space and aisle | MW-D-131 |
| 59 | Van accessible parking - size of space and access aisle | Midtown Square | Leasing office | 16' total width including 8' for each the space and the access aisle.  ADAAG §§ 4.1.2(5)(b), 4.6.3. | Access aisle is 5' | MW-D-2558 |
| 60 | Water closet centerline | Coles Corner | Public toilet room | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.16.2. | 25-1/4" | MW-D-1541 |
| 61 | Water closet centerline | Legacy | Public toilet room | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.16.2. | 21-7/8" | MW-D-2659 |
| 62 | Water closet centerline | Luminaria | Public toilet room (unisex) | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.16.2. | 21-7/8" | MW-D-2350 |
| 63 | Water closet centerline | Massachusetts Avenue | Public toilet room (women's) | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.16.2. | 19" | MW-D-1163 |

Appendix B:  ADA

| Line # | Feature | Property | Location | ADAAG Standard (for reference) | Post Measurement | Bates # |
|--------|---------|----------|----------|-------------------------------|------------------|---------|
| 64 | Water closet centerline | Park at Phillips Place | Public toilet room | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.16.2. | 29-1/2" | MW-D-2164 |
| 65 | Water closet centerline | Rocky Point | Phase 1 east public toilet room (women's) | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.6.2. | 19-3/16" | MW-D-2753 |
| 66 | Water closet centerline | Toscana | Public toilet room (unisex, left side) | 18" from adjacent side wall.  ADAAG §§ 4.1.3(11), 4.6.2. | 19" | MW-D-1662 |