UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>POST PROPERTIES, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 10-1866 (RJL)<br>)<br>)<br>)<br>)<br>) |

**UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff United States of America respectfully submits the United States' Statement of Undisputed Material Facts in support of its Motion for Summary Judgment as to Liability ("Motion") against Defendants Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post").

## I.   THE PARTIES

1. The Plaintiff is the United States of America.

2. The Defendants are Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post").

3. Post Properties, Inc. is a self-administered and self-managed equity real estate investment trust, and indirectly through its subsidiaries, develops, owns, and manages multi-family apartment communities in selected markets in the United States.  Answer ¶ 4, Docket Entry 9 ("R.9").

4.      Post Properties, Inc. develops, owns, and manages multi-family apartment communities.  Answer ¶ 4, R.9.

5.      Post Apartment Homes, L.P., through operating divisions and subsidiaries, is the entity through which Post Properties, Inc. indirectly conducts substantially all of its operations.  Answer ¶ 4, R.9.

6.      The offices of Post Properties, Inc., Post GP Holdings, Inc., and Post Apartment Homes, L.P. are located at 4401 Northside Parkway, Suite 800, Atlanta, Georgia 30327.  Answer ¶ 4, R.9.

7.      Post Properties, Inc. and Post GP Holdings, Inc. are incorporated under the laws of Georgia.  Answer ¶ 4, R.9.

8.      Post Apartment Homes, L.P. is a Georgia limited partnership.  Answer ¶ 4, R.9.

**II.     POST'S 20 PROPERTIES SUBJECT TO THIS MOTION**

**POST ABBEY**

9.      Post Abbey is located at 2525 Worthington in Dallas, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

10.     Post Abbey is a multi-family apartment building with 34 units.  Defendants' Responses and Objections to Plaintiff's Requests for Admission (hereinafter "Post's Resps. to Plaintiff's First Reqs. for Admission") ¶ 3 (August 1, 2011), Mot. Ex. 2.

11.     All units at Post Abbey are served by an elevator.  Answer ¶ 5, R.9.

12.     Post Abbey was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 2, Mot. Ex. 2.

13.     Post acquired Post Abbey through a merger with Columbus Realty Trust on October 24, 1997.   Defendants' Responses and Objections to Plaintiff's Second Set of

Interrogatories (hereinafter "Post's Resps. to Plaintiff's Second Set of Interrogatories") No. 1 (May 22, 2013), Mot. Ex. 4; Merger Agreement at 7-8, Mot. Ex. 5.

14.     Columbus Realty Trust participated in the design and construction of Post Abbey. Deposition Transcript of Post's Executive Vice President Sherry Cohen ("Cohen Dep.") at 11:11-14, 73:11-18, 102:21-23 (July 18, 2013), Mot. Ex. 8.

15.     Post Abbey is owned by Post and offers units for rent.  Post Properties, Inc. and Post Apartment Homes, L.P., Annual Report (Form 10-K) (hereinafter "Annual Report") at 22 (Feb. 27, 2013), Mot. Ex. 3.

16.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 9-13 above.

**POST ALEXANDER**

17.     Post Alexander is located at 3410 Alexander Road NE in Atlanta, Georgia.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

18.     Post Alexander is a multi-family apartment building with 307 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 37, Mot. Ex. 2.

19.     All units at Post Alexander are served by an elevator.  Answer ¶ 5, R.9.

20.     Post Alexander was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 36, Mot. Ex. 2.

21.     Post participated in the design and construction of Post Alexander.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 35, Mot. Ex. 2.

22.     Post Alexander is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

23.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 17-21 above.

**POST BILTMORE**

24.     Post Biltmore is located at 855 West Peachtree Street, NW in Atlanta, Georgia. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

25.     Post Biltmore is a multi-family apartment building with 276 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 58, Mot. Ex. 2.

26.     All units at Post Biltmore are served by an elevator.  Answer ¶ 5, R.9.

27.     Post Biltmore was designed and constructed for first occupancy after March 13, 1991. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 57, Mot. Ex. 2.

28.     Post participated in the design and construction of Post Biltmore.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 56, Mot. Ex. 2.

29.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 24-28 above.

**POST COLES CORNER**

30.     Post Coles Corner is located at 3096 N. Hall Street in Dallas, Texas. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

31.     Post Coles Corner is a multi-family apartment building with 186 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 160, Mot. Ex. 2.

32.     All units at Post Coles Corner are served by an elevator.  Answer ¶ 5, R.9.

33.     Post Coles Corner was designed and constructed for first occupancy after March 13, 1991. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 159, Mot. Ex. 2.

34.     Post acquired Post Coles Corner through a merger with Columbus Realty Trust on October 24, 1997.  Post's Resps. to Plaintiff's Second Set of Interrogatories No. 1, Mot. Ex. 4; Merger Agreement at 7-8, Mot. Ex. 5.

35.     Columbus Realty Trust participated in the design and construction of Post Coles Corner.  Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

36.     Post Coles Corner is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

37.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 30-34 above.

**<u>POST GALLERY</u>**

38.     Post Gallery is located at 3006 Woodside Street in Dallas, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

39.     Post Gallery is a multi-family apartment building with 34 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 289, Mot. Ex. 2.

40.     All units at Post Gallery are served by an elevator.  Answer ¶ 5, R.9.

41.     Post Gallery was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 288, Mot. Ex. 2.

42.     Post acquired Post Gallery through a merger with Columbus Realty Trust on October 24, 1997.  Post's Resps. to Plaintiff's Second Set of Interrogatories No. 1, Mot. Ex. 4; Merger Agreement at 7-8, Mot. Ex. 5.

43.     Columbus Realty Trust participated in the design and construction of Post Gallery.  Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

44.     Post Gallery is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

45.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 38-42 above.

### POST HARBOUR PLACE

46.     Post Harbour Place is located at 800 Harbour Post Drive in Tampa, Florida.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

47.     Post Harbour Place is a multi-family apartment building with 578 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 362, Mot. Ex. 2.

48.     All units at Post Harbour Place are served by an elevator.  Answer ¶ 5, R.9.

49.     Post Harbour Place was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 361, Mot. Ex. 2.

50.     Post participated in the design and construction of Post Harbour Place.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 360, Mot. Ex. 2.

51.     Post Harbour Place is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

52.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 46-50 above.

### POST LEGACY

53.     Post Legacy is located at 5741 Martin Road in Plano, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

54.     Post Legacy is a multi-family apartment building with 384 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 441, Mot. Ex. 2.

55.     All units at Post Legacy are served by an elevator. Answer ¶ 5, R.9.

56.     Post Legacy was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 440, Mot. Ex. 2.

57.     Post participated in the design and construction of Post Legacy.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 439, Mot. Ex. 2.

58.     Post Legacy is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

59.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 53-57 above.

**POST LUMINARIA**

60.     Post Luminaria is located at 385 First Avenue in New York, New York.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

61.     Post Luminaria is a multi-family apartment building with 138 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 495, Mot. Ex. 2.

62.     All units at Post Legacy are served by an elevator. Answer ¶ 5, R.9.

63.     Post Luminaria was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 494, Mot. Ex. 2.

64.     Post participated in the design and construction of Post Luminaria.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 493, Mot. Ex. 2.

65.     Post Luminaria is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

66.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 60-64 above.

## POST MASSACHUSETTS AVENUE

67.    Post Massachusetts Avenue is located at 1499 Massachusetts Avenue, NW in Washington, DC.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

68.    Post Massachusetts Avenue is a multi-family apartment building with 269 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 514, Mot. Ex. 2.

69.    All units at Post Massachusetts Avenue are served by an elevator.    Answer ¶ 5, R.9.

70.    Post Massachusetts Avenue was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 513, Mot. Ex. 2.

71.    Post participated in the design and construction of Post Massachusetts Avenue. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 512, Mot. Ex. 2.

72.    Post Massachusetts Avenue is owned by Post and offers units for sale.  Annual Report at 23, Mot. Ex. 3.

73.    Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 67-71 above.

## POST MIDTOWN SQUARE

74.    Post Midtown Square is located at 302 Gray Street in Houston, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

75.    Post Midtown Square is a multi-family apartment building with 429 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 553, Mot. Ex. 2.

76.    Not all the units at Post Midtown Square are served by an elevator. Answer, ¶ 5, R.9.

77.     Post Midtown Square was designed and constructed for first occupancy after March 13, 1991. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 552, Mot. Ex. 2.

78.     Post participated in the design and construction of Post Midtown Square.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 551, Mot. Ex. 2.

79.     Post Midtown Square is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

80.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 74-78 above.

81.     Post Midtown Square has four buildings.  Buildings A, B and C (or 1, 2 and 3) are elevator buildings and all units in these buildings are served by an elevator.  Construction/Permit Drawings for Post Midtown Square, 12/17/97: Building A, RTKL, POST DOJ ATL0010799-802; Building B, RTKL, DOJ ATL0010825-28; Building C, POST DOJ ATL0010836-839, Mot. Ex. 25; Mark Wales Field Notes for Post Midtown Square, MW-D-2536, MW-D-2554-55, 2558, Mot. Ex. 26.  Building D2 of Post Midtown Square is a non-elevator building.  The first floor of residential units in Building D2 is above the retail and commercial space.  Building D-2, Midtown Square, Construction Drawings, RTKL, 01/21/2000, POST DOJ ATL 0011199-200, Mot. Ex. 27;  Mark Wales Field Notes for Post Midtown Square, MW-D-2535, 2553, Mot. Ex. 26.

## POST PARK AT PHILLIPS PLACE

82.     Post Park at Phillips Place is located at 4835 Cameron Valley Parkway in Charlotte, North Carolina. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

83.     Post Park at Phillips Place is a multi-family apartment building with 402 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 602, Mot. Ex. 2.

84.     Not all the units at Post Park at Phillips Place are served by an elevator. Answer ¶ 5, R.9.

85.     Post Park at Phillips Place was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 601, Mot. Ex. 2.

86.     Post participated in the design and construction of Post Park at Phillips Place. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 600, Mot. Ex. 2.

87.     Post Park at Phillips Place is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

88.      Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 82-86 above.

89.     Post Park at Phillips Place has 12 garden-style buildings with breezeways and two high rise buildings at the courtyard.  The two high-rise buildings are elevator buildings and all the units in these buildings are served by an elevator.   Mark Wales Field Notes for Post Park at Phillips Place, MW-D-2199, 2201, Mot. Ex. 28.  Buildings 1 through 12 are non-elevator buildings, each with eight ground floor units.  Mark Wales Field Notes for Post Park at Phillips Place, MW-D-2158, 2169, 2171, 2175, 2177, 2179, 2180, 2182-83, 2185, 2188, 2190, 2192, 2194, 2197, Mot. Ex. 28.

## POST PARKSIDE ATLANTA

90.     Post Parkside Atlanta is located at 250 10th Street, NE in Atlanta, Georgia.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

91.     Post Parkside Atlanta is a multi-family apartment building with 188 units. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 614, Mot. Ex. 2.

92.     All units at Post Parkside Atlanta are served by an elevator. Answer ¶ 5, R.9.

93.     Post Parkside Atlanta was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 613, Mot. Ex. 2.

94.      Post participated in the design and construction of Post Parkside Atlanta.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 612, Mot. Ex. 2.

95.     Post Parkside Atlanta is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

96.      Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 90-94 above.

**POST PARKSIDE ORLANDO**

97.     Post Parkside Orlando is located at 425 E. Central Boulevard in Orlando, Florida. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

98.     Post Parkside Orlando is a multi-family apartment building with 245 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 627, Mot. Ex. 2.

99.      All units at Post Parkside Orlando are served by an elevator.  Answer ¶ 5, R.9.

100.     Other than the building known as the "Tower", Post Parkside Orlando was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 626, Mot. Ex. 2.

101.     Post participated in the design and construction of Post Parkside Orlando.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 625, Mot. Ex. 2.

102.    Post Parkside Orlando is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

103.     Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 97-101 above.

**POST PENTAGON ROW**

104.    Post Pentagon Row is located at 1201 South Joyce Street in Arlington, Virginia. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

105.    Post Pentagon Row is a multi-family apartment building with 504 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 659, Mot. Ex. 2.

106.    All units at Post Pentagon Row are served by an elevator.  Answer ¶ 5, R.9.

107.    Post Pentagon Row was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 658, Mot. Ex. 2.

108.    Post participated in the design and construction of Post Pentagon Row.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 657, Mot. Ex. 2.

109.    Post Pentagon Row is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

110.    Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 104-108 above.

**POST ROCKY POINT**

111.    Post Rocky Point is located at 3101 N. Rocky Point Drive, E, in Tampa, Florida. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

112.    Post Rocky Point is a multi-family apartment building with 916 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 737, Mot. Ex. 2.

113.    Not all units at Post Rocky Point are served by an elevator.  Answer ¶ 5, R.9.

114.    Post Rocky Point was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 736, Mot. Ex. 2.

115.    Post participated in the design and construction of Post Rocky Point.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 736, Mot. Ex. 2.

116.    Post Rocky Point is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

117.    Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 111-115 above.

118.    Post Rocky Point has 44 buildings on site.  At least 38 buildings are at grade, i.e., accessible from grade level without using stairs.  These buildings have varying numbers of ground floor units.  Four buildings, which are: 7401 Transom Ct., 7265 Barque Dr., 7501 Transom Ct., and 7201 Gennaker Dr., have stairs leading to the first level.  Mark Wales Field Notes for Post Rocky Point, MW-D-2742-44, 2781, 2783-84, 2868-69, Mot. Ex. 29.

**POST SQUARE**

119.    Post Square is located at 2815 Allen Street in Dallas, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

120.    Post Square is a multi-family apartment building with 218 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 773, Mot. Ex. 2.

121.    All units at Post Square are served by an elevator. Answer ¶ 5, R.9.

122.    Post Square was designed and constructed for first occupancy after March 13, 1991. Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 772, Mot. Ex. 2.

123.    Post acquired Post Square through a merger with Columbus Realty Trust.  Post's Resps. to Plaintiff's Second Set of Interrogatories, No. 1, Mot. Ex. 4;  Merger Agreement at 7-8, Mot. Ex. 8.

124.    Columbus Realty Trust participated in the design and construction of Post Square. Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

125.    Post Square is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

126.    Appendix A to the United States' Motion accurately summarizes the facts in ¶¶ 119-123.

**POST TOSCANA**

127.    Post Toscana is located at 389 East 89th Street in New York, New York. POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

128.    Post Toscana is a multi-family apartment building with 199 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 805, Mot. Ex. 2.

129.    All units at Post Toscana are served by an elevator. Answer ¶ 5, R.9.

130.    Post Toscana was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 804, Mot. Ex. 2.

131.    Post participated in the design and construction of Post Toscana.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 803, Mot. Ex. 2.

132.    Post Toscana is owned by Post and offers units for rent.  Annual Report at 23, Mot. Ex. 3.

133.    Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 127-131 above.

**POST UPTOWN VILLAGE**

134.     Post Uptown Village is located at 2121 Routh Street in Dallas, Texas.  POST

PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

135.     Post Uptown Village is a multi-family apartment building with 496 units.  Annual

Report, at 22, Mot. Ex. 3.

136.     Not all units at Post Uptown Village are served by an elevator. Answer ¶ 5, R.9.

137.     Post Uptown Village was designed and constructed for first occupancy after

March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 831, Mot. Ex. 2.

138.     Post acquired Post Uptown Village through a merger with Columbus Realty

Trust.   Post's Resps. to Plaintiff's Second Set of Interrogatories No. 1, Mot. Ex. 4;   Merger

Agreement at 7-8, Mot. Ex. 5.

139.     Columbus Realty Trust participated in the design and construction of Post

Uptown Village.  Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

140.     Post Uptown Village is owned by Post and offers units for rent.  Annual Report at

22, Mot. Ex. 3.

141.     Appendix A to the United States' Motion is an accurate summary of the facts in

¶¶ 134-138.

142.     Post Uptown Village has six buildings. Building 5 is an elevator building and all

the units in this building are served by an elevator.  These units are:  5103-5147; 5203-5247; and,

5303-5347.  Mark Wales Field Notes for Post Uptown Village, MW-D-1772, 1785, 1793-94,

Mot. Ex. 30.  Buildings 1, 2, 3, 4 and A/B are non-elevator buildings.  Building 1 has a leasing

office on the first floor and the residential units on the upper levels.  Units 1201-1202 are located

on the level above the leasing office.  Buildings 2, 3, 5 and A/B have units on the first floor,

which are: Building 2 (2103-2145); Building 3 (3103-3149); Building 4 (4103-4149); and Building A/B (1001-1072). Construction Drawings for Post Uptown Village, RTKL 03/24/99: Building A/B, POST DOJ ATL0007517, Mot. Ex. 31; Mark Wales Field Notes for Post Uptown Village, MW-D-1780-82, 1784-86, 1793, 1807, 1809, Mot. Ex. 30.

**POST VINEYARD**

143.   Post Vineyard is located at 3015 Cole Avenue in Dallas, Texas.   POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

144.   Post Vineyard is a multi-family apartment building with 116 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 858, Mot. Ex. 2.

145.   All units at Post Vineyard are served by an elevator.  Answer ¶ 5, R.9.

146.   Post Vineyard was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 857, Mot. Ex. 2.

147.   Post acquired Post Vineyard through a merger with Columbus Realty Trust. Post's Resps. to Plaintiff's Second Set of Interrogatories No. 1, Mot. Ex. 4; Merger Agreement at 7-8, Mot. Ex. 5.

148.   Columbus Realty Trust participated in the design and construction of Post Vineyard.  Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

149.   Post Vineyard is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

150.   Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 143-147 above.

**POST VINTAGE**

151.    Post Vintage is located at 2800 Cole Avenue in Dallas, Texas.  POST PROPERTIES, http://www.postproperties.com (last visited Jan. 6, 2014).

152.    Post Vintage is a multi-family apartment building with 161 units.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 880, Mot. Ex. 2.

153.    Not all units at Post Vintage are served by an elevator. Answer ¶ 5, R.9.

154.    Post Vintage was designed and constructed for first occupancy after March 13, 1991.  Post's Resps. to Plaintiff's First Reqs. for Admission ¶ 879, Mot. Ex. 2.

155.    Post acquired Post Vintage through a merger with Columbus Realty Trust.  Post's Resps. to Plaintiff's Second Set of Interrogatories No. 1, Mot. Ex. 4;  Merger Agreement at 7-8, Mot. Ex. 5.

156.    Columbus Realty Trust participated in the design and construction of Post Vintage.  Cohen Dep. at 73:11-18, 102:21-23, Mot. Ex. 8.

157.    Post Vintage is owned by Post and offers units for rent.  Annual Report at 22, Mot. Ex. 3.

158.    Appendix A to the United States' Motion is an accurate summary of the facts in ¶¶ 151-155 above.

159.    Post Vintage consists of two buildings. Buildings 1 and 2 are non-elevator buildings and all first floor units, indicated on the plans as units 101-137, are on the ground floor.  Construction Drawing of Post Vintage, KSNG Architects, 11/1/92, POST 177194-95, Mot.  Ex. 32; Mark Wales Field Notes for Post Vintage, MW-D-2625-26, Mot. Ex. 33.

## III.    INSPECTIONS BY POST'S EXPERTS

160.    Mark Wales is one of Post's experts.  Post Expert Disclosure Statement, R.48.

161.    Mark Wales inspected 46 Post properties as an expert for Post in *Equal Rights Center v. Post Properties, Inc. et al.*, Civil Case No. 06-cv-1991 (RJL) ("*ERC* action"). Deposition Transcript of Mark Wales ("Wales Dep.") at 78: 11-19 (October 10, 2013), Mot. Ex. 9.

162.    The 46 properties that Mark Wales inspected in connection with the *ERC* action in 2007 and/or 2008 are: Post Abbey, Post Addison Circle, Post Alexander, Post Biltmore, Post Ballantyne, Post Briarcliff, Post Brookhaven, Post Carlyle Square, Post Coles Corner, Post Collier Hills, Post Corners, Post Crest, Post Crossing, Post Dunwoody, Post Gallery, Post Gardens, Post Glen, Post Harbour Place,  Post Heights, Post Hyde Park, Post Legacy, Post Lenox Park, Post Lindbergh, Post Luminaria, Post Massachusetts Avenue, Post Mercer Square Condos, Post Midtown Square, Post Oglethorpe, Post Park at Phillips Place, Post Parkside Atlanta, Post Parkside Orlando, Post Peachtree Hills, Post Pentagon Row, Post Rise Condos, Post Renaissance, Post Ridge, Post Riverside, Post Rocky Point, Post Spring, Post Square, Post Stratford, Post Toscana, Post Uptown Village, Post Vineyard, Post Vintage, and Post Worthington.   Mark Wales Expert Report ("Wales Report"), Attachment A to Exhibit B (MW-D-5597-98) (August 1, 2013), Mot. Ex. 6.

163.    Mark Wales inspected the following 11 Post properties in 2013 as an expert for Post in the current action:  Post Alexander, Post Collier Hills, Post Glen, Post Luminaria, Post Massachusetts Avenue, Post Parkside Atlanta, Post Parkside Orlando, Post Pentagon Row, Post Riverside, Post Spring, and Post Stratford.  Wales Report ¶ 10, Mot. Ex. 6.

164.    Mark Wales recorded certain written measurements at the Post properties he inspected.  Wales Dep. at 233:16-243:17, Mot. Ex. 9.

165. The inspection notes containing those recorded measurements were produced to the United States.  CD labeled MW-D-1 through MW-D-5568 produced by Post, Mot. Ex. 23; Wales Report ¶ 39, Mot. Ex. 6.

166. An example of a field note produced by Mark Wales is MW-D-2352.  Mot. Ex. 34.  This field note has been authenticated by Post.  Defendants' Responses and Objections to Plaintiff's Fourth Set of Requests for Admission ¶ 611 (November 1, 2013), Mot. Ex. 22.  The field note identifies the subject property ("Post Luminaria"); and records a measurement or description of a feature, i.e., "Roof deck-stairs."  Mot. Ex. 34.

167. Mark Wales uses abbreviations in his notes, such as "T" for thermostats, "S" for switches, and "O" for outlets, and the measurements beside the abbreviations correspond to the feature being measured.  Wales Dep. at 233:16-243:17, Mot. Ex. 9.

168. Mark Wales' conclusions regarding accessibility at the Post properties do not rely on a written standard.  Wales Dep. at 136:3-137:8, 195:2-196:4, Mot. Ex. 9.

169. Mark Wales used an amalgam of sources to evaluate accessibility at the Post properties including studies by social scientists, technical assistance material, his own experience, and "things that go beyond the safe harbors".  Wales Dep. at 62:8-10, 68:6-13, 73:8-12, 75:4-15, Mot. Ex. 9.

170. Mark Wales did not rely on HUD-approved safe harbors to determine the accessibility of doors at the Post properties.  Wales Dep. at 131:7-138:12, Mot. Ex. 9.

171. Mark Wales did not rely on a written standard to determine the accessibility of doors at the Post properties.  Wales Dep. at 131:7-138:12, Mot. Ex. 9.

172. Mark Wales' belief that a door 29 or 30 inches wide is sufficient for user passage is a personal belief, and outside any safe harbor.  Wales Dep. at 131:7-138:12, Mot. Ex. 9.

173.    Mark Wales did not rely on HUD-approved safe harbors to determine the accessibility of thresholds at the Post properties.  Wales Dep. at 192:13-194:16, Mot. Ex. 9.

174.    Mark Wales did not rely on a written standard to determine the accessibility of thresholds at the Post properties.  Wales Dep. at 192:13-194:16, Mot. Ex. 9.

175.    Mark Wales did not rely on HUD-approved safe harbors to determine the accessibility of thermostats or other environmental controls at the Post properties.  Wales Dep. at 194:17-198:5, Mot. Ex. 9.

176.    Mark Wales did not rely on a written standard to determine the accessibility of thermostats or other environmental controls at the Post properties.  Wales Dep. at 194:17-198:5, Mot. Ex. 9.

177.    Mark Wales testified in two previous cases in which he offered expert testimony on behalf of developers that his methodology is subjective.  Deposition Transcript of Mark Wales in *United States v. Edward Rose & Sons*, No. 02-CV-73518 at 154:2-10 (E.D. Mich. Oct. 5, 2004), Mot. Ex. 17; Deposition Transcript of Mark Wales in *United States v. Shanrie Co.*, No. 05-CV-306-DRH at 174:15-177:12 (S.D. Ill. Mar. 10, 2006), Mot. Ex. 18.

178.    Alison Vredenburgh is one of Post's experts.   Post Expert Disclosure Statement, R.48.

179.    In 2008, Alison Vredenburgh inspected Post properties as an expert for Post in the *ERC* action.  Properties she inspected include:  Post Ballantyne, Post Biltmore, Post Briarcliff, Post Carlyle, Post Coles Corner, Post Corners, Post Gallery, Post Harbour Place, Post Gateway Place, Post Hyde Park, Post Massachusetts Avenue, Post Mercer Square Condos, Post Oglethorpe, Post Park at Phillips Place, Post Parkside Orlando, Post Peachtree Hills, Post Pentagon Row, Post Rocky Point, Post Square, Post Uptown Village, Post Vintage, and Post

Worthington.  Deposition Transcript of Alison Vredenburgh ("Vredenburgh Dep.") at 12:9-15 (October 15, 2013), Mot. Ex. 10; Alison Vredenburgh Expert Report ("Vredenburgh Report") at 2 (July 31, 2013), Mot. Ex. 7.

180.    Alison Vredenburgh inspected the following seven Post properties in 2013 as an expert for Post in the current action:  Post Alexander,  Post Gateway Place, Post Massachusetts Avenue, Post Parkside Atlanta,  Post Parkside Orlando, Post Pentagon Row, and Post Riverside. Vredenburgh Dep. at 13:22-24, Mot. Ex. 10; Vredenburgh Report at 1, Mot. Ex. 7.

181.    Alison Vredenburgh recorded certain written measurements at the Post properties she inspected. Vredenburgh Dep. at 66:7-24, Mot. Ex. 10.

182.    The inspection notes containing Alison Vredenburgh's recorded measurements were produced to the United States by Post.  CD labeled AV-D-1 through AV-D-920 and AV-D-932 through AV-D-3129 produced by Post, Mot. Ex. 24.

183.    An example of a field note produced by Alison Vredenburgh is AV-D-707.  Mot. Ex. 35.  Post verified this field note to be true and correct.  Defendants' Responses and Objections to Plaintiff's Fourth Set of Requests for Admission ¶¶ 669-670 (November 1, 2013), Mot. Ex. 22.  The field note identifies the property ("Post Massachusetts Avenue"); identifies the unit number ("unit 112A"); records the feature ("thermostat"); and indicates the measurement for the feature ("57 and ¾ inches").  Mot. Ex.  35.

184.    Alison Vredenburgh did not rely on HUD-approved safe harbors to determine accessibility at the Post properties.  Vredenburgh Dep. at 62:13-63:17, Mot. Ex. 10.

185.    Alison Vredenburgh did not rely on any code or building standard to determine accessibility at the Post properties.  Vredenburgh Dep. at 62:13-63:17, Mot. Ex. 10.

186.    Alison Vredenburgh relied on her own studies to conclude that a level of accessibility less than is required by the HUD-approved safe harbors is acceptable at the Post properties.  Vredenburgh Dep. at 19:4-21:23, 62:13-63:17, 79:5-81:25, Mot. Ex. 10.

187.    Alison Vredenburgh had an assistant named Ilene Zackowitz who accompanied her on the inspections of the Post properties. Vredenburgh Dep. at 151:2-152:9, Mot. Ex.10.

188.    Ilene Zackowitz is not a person with a disability.  Vredenburgh Dep. at 158:5-8, Mot. Ex. 10.

189.    Alison Vredenburgh had Ilene Zackowitz position herself in a wheelchair during the inspections at Post properties.  Vredenburgh Dep. at 151:2-152:9, Mot. Ex. 10.

190.    Alison Vredenburgh photographed Ilene Zackowitz in a wheelchair testing certain features at the Post properties during the inspections of the Post properties.  Vredenburgh Dep. at 151:2-152:9, Mot. Ex. 10.

191.    Paul Sheriff is one of Post's experts.  Post Expert Disclosure Statement, R.48.

192.    Paul Sheriff inspected 32 Post properties in 2008 as an expert for Post in the *ERC* action.  Deposition Transcript of Paul Sheriff ("Sheriff Dep.") at 15:6-19:2 (October 17, 2013), Mot. Ex. 11.

193.    Paul Sheriff inspected the following properties in 2008:  Post Abbey, Post Addison Row, Post Alexander, Post Biltmore, Post Briarcliff, Post Brookhaven, Post Carlyle Square, Post Crest, Post Crossing, Post Dunwoody, Post Gardens, Post Glen, Post Heights, Post Lenox Park, Post Legacy, Post Lindbergh, Post Luminaria, Post Massachusetts Avenue, Post Mercer Square Condos, Post Oglethorpe, Post Peachtree Hills, Post Pentagon Row, Post Renaissance, Post Ridge, Post Riverside,  Post Spring, Post Square, Post Stratford, Post Toscana,

Post Uptown Village, Post Vineyard, and Post Worthington.  Sheriff Dep. at 15:6-19:2, Mot. Ex. 11.

194.    Paul Sheriff did not conduct any inspections of Post properties in 2013.   Sheriff Dep. at 65:1-3, Mot. Ex. 11.

195.    Paul Sheriff did and does not offer any expert opinions regarding the 18 Post properties he did not inspect.  Sheriff Dep. at 65:1-66:19, Mot. Ex. 11.

196.    Paul Sheriff did not take measurements with a measuring tape or digital level at the Post properties he inspected.  Sheriff Dep. at 85:19-22, Mot. Ex. 11.

197.    Paul Sheriff used the dimensions of his body and his custom-designed wheelchair to evaluate the Post properties.  Sheriff Dep. at 85:23-86:25, Mot. Ex. 11.

198.    Paul Sheriff inspected the Post properties by using his wheelchair to navigate a sample of units at those properties.  Sheriff Dep. at 86:2-87:11, Mot. Ex. 11; Paul Sheriff Expert Report at 5 (July 31, 2013), Mot. Ex. 37.

199.    Paul Sheriff's inspections of the Post Properties included videotapes that were taken of his navigating through the Post properties.  Sheriff Dep. at 43:5-44:1, Mot. Ex. 11.

200.    Paul Sheriff did not rely on HUD-approved safe harbors to determine accessibility at the Post properties.  Sheriff Dep. at 108:19-109:3, Mot. Ex. 11.

201.    Paul Sheriff testified in a previous FHA case in which he offered expert testimony on behalf of the defendants that the HUD Guidelines are the least-restrictive safe harbor. Deposition Transcript of Paul Sheriff in *United States v. JPI Construction, LP*, Civil Action No. 3:09-cv-0412B at 120:8-14 (N.D. Tex. Jan. 20, 2011), Mot. Ex. 16.

202.    In 2008, during his inspection of Post Luminaria, Paul Sheriff observed a balcony in Unit 15E which he concluded was not accessible.  Sheriff Dep. at 22:19-25, 36:9-15, 42:2-24, Mot. Ex. 11.

203.    The inaccessible condition of the balcony in Unit 15E at Post Luminaria at the time of Paul Sheriff's inspection in 2008 was a result of the way it was designed and constructed. Sheriff Dep. at 42:7-14, Mot. Ex. 11.

204.    Post knew that the balconies in the units at Post Luminaria were inaccessible at the time Post participated in the design and construction of Post Luminaria.  Deposition Transcript of Post's Vice President of Design William Cartwright ("Cartwright Dep.") at 183:16-184:2 (October 29, 2013), Mot. Ex. 12.

205.    Post knew that the balconies in the units at Post Luminaria had thresholds that were higher than what was allowed by federal law at the time Post participated in the design and construction of Post Luminaria.  Cartwright Dep. at 183:16-184:6, Mot. Ex.12.

206.    Post knew that there was no accessible route to the rooftop deck at Post Luminaria at the time Post participated in the design and construction of Post Luminaria.  Cartwright Dep. at 180:8-181:25, Mot. Ex. 12.

207.    Mark Wales inspected the roof deck at Post Luminaria in 2008.  Defendants' Responses and Objections to Plaintiff's Fourth Set of Requests for Admission ¶ 610 (November 1, 2013), Mot. Ex. 22.  The document marked MW-D-2352 is a true and accurate copy of handwritten notes taken by Mark Wales during his inspection of the roof deck at Post Luminaria on May 19, 2008.  *Id*. ¶ 611, Mot. Ex. 22; Mark Wales Field Notes for Post Luminaria, MW-D-2352, Mot. Ex. 34.

208.     There is no route to the roof deck at Post Luminaria that does not require going up stairs.   Defendants' Responses and Objections to Plaintiff's Fourth Set of Requests for Admission ¶ 612, Mot. Ex. 22; Cartwright Dep. at 182:15-18, Mot. Ex.12.

209.     Mark Wales inspected the Sky Terrace at Post Vineyard on or about May 7, 2008. Defendants' Responses and Objections to Plaintiff's Third Set of Requests for Admission ¶ 186, Mot. Ex. 21.

210.     The document marked MW-D-1748 is a true and accurate copy of handwritten notes taken by Mark Wales during his inspection of the Sky Terrace at Post Vineyard. Defendants' Responses and Objections to Plaintiff's Third Set of Requests for Admission ¶ 187, Mot. Ex. 21; Mark Wales Field Notes for Post Vineyard, MW-D-1748, Mot. Ex. 36.

211.     There is no route to the Sky Terrace at Post Vineyard that does not require going up stairs. Defendants' Responses and Objections to Plaintiff's Third Set of Requests for Admission ¶ 188, Mot. Ex. 21.

**IV.     FEATURES RECORDED BY POST'S EXPERTS**

**Fair Housing Act**

**Requirement 2 – Public and Common Use Areas**

212.     Mark Wales inspected routes to the first floor residential units above the retail space at Post Midtown Square.  App. B at B1, lines 1-7.  At the time of inspection, the route to eight residential units above the retail space at Post Midtown Square did not have an elevator or other means of access that did not require climbing stairs.  *Id.*  These observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" (Mark Wales) in Appendix B ("App. B") attached to this Motion.  *Id.*; Alice Hung Declaration ¶¶ 10-14 ("Hung Decl."), Mot. Ex. 1 (explaining the construction of Appendix B).

213.    Mark Wales inspected routes and recorded written measurements and observations about the ground surfaces, cross slopes, and running slopes of routes at the following three properties: Post Park at Phillips Place, Post Parkside Atlanta, and Post Rocky Point.  App. B at B1, lines 8-11.  At the time of inspection, the urban garden at Post Park at Phillips Place and the route to the tennis court at Phase 1 of Post Rocky Point were observed to have crushed-stone and stepping-stone surfaces.  *Id.* at B1, lines 8-9.  At the time of inspection, portions of routes at Post Parkside Atlanta had cross slopes greater than 2%, measuring from 3.8% to 5.2%, and running slopes greater than 8.33%, measuring from 8.4% to 11.4%.  *Id.* at B1, lines 10-11.  These measurements and observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B1, lines 8-11.

214.    Mark Wales and Alison Vredenburgh inspected changes in level on routes and in common areas and recorded written measurements and observations regarding changes in level at the following five properties: Post Luminaria, Post Park at Phillips Place, Post Pentagon Row, Post Rocky Point, and Post Vineyard.  App. B at B1-B2, lines 12-21.  At the time of inspection, these changes in level included steps and other changes in level measuring higher than ½ inch.  *Id.*  These measurements and observations are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" (Alison Vredenburgh) in Appendix B.  *Id.*

215.    Mark Wales inspected door maneuvering clearances and door thresholds and recorded written measurements regarding six door maneuvering clearances and door thresholds in common areas at the following four properties: Post Luminaria, Post Massachusetts Avenue, Post Parkside Orlando, and Post Rocky Point.  App. B at B2, lines 22-27.  At the time of inspection, the latch-side clearance on the pull side of common-area doors at these properties

measured less than 18 inches, measuring between 2 and ¾ inches and 16 and ¼ inches.  *Id.* at B2, lines 22-25.  At the time of inspection, common-area door thresholds at Post Luminaria measured higher than ½ inch, measuring between 1 and 1/18 inch and 2 inches.  *Id.* at B2, lines 26-27.  These measurements and observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B2, lines 22-27.

216.    Mark Wales inspected lavatory pipe protection in common-area restrooms and recorded written observations regarding four lavatories in common-area restrooms at Post Rocky Point.  App. B at B2, lines 28-31.  At the time of inspection, these lavatories were observed to have pipes that lacked protection.  *Id.*  These observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

217.    Mark Wales inspected mirror heights in common-area restrooms and recorded written measurements regarding four mirror heights in the common-area restrooms at the following two properties: Post Pentagon Row and Post Rocky Point.  App. B at B2-B3, lines 32-35.  At the time of inspection, the bottom edge of the reflective surface of these mirrors measured higher than 40 inches from the floor, measuring between 42 and ¼ inches and 46 inches above the floor.  *Id.*  These observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

218.    Mark Wales and Alison Vredenburgh inspected mail boxes, letter drops, rent drop boxes, and similar features and recorded written measurements regarding 12 rows of mail boxes and seven letter drops, rent drop boxes, and similar features in common areas at the following three properties: Post Massachusetts Avenue, Post Parkside Atlanta, and Post Parkside Orlando.  App. B at B3, lines 36-47.  At the time of inspection, these rows of mail boxes, letter drops, rent drop boxes, and similar features measured greater than 54 inches above the floor, measuring

between 54 and ½ inches and 65 and ¼ inches.  *Id.*  These measurements and observations are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

219.    Mark Wales and Alison Vredenburgh inspected ramps and recorded written observations regarding two ramps in common areas at the following two properties: Post Parkside Atlanta and Post Parkside Orlando.  App. B at B3-B4, lines 48-49.  At the time of inspection, no handrails were provided on these ramps that rise more than six inches.  *Id.*  These observations are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

220.    Mark Wales inspected roll-in shower features (e.g. shower size, curb height, and location of grab bars) and recorded written measurements and observations regarding 10 roll-in shower features in common areas at the following two properties: Post Park at Phillips Place and Post Rocky Point.  App. B at B4, lines 50-59.  At the time of inspection, five of these roll-in showers measured smaller than 30 inches by 60 inches, measuring between 25 and ½ inches by 61 inches and 27 and ½ inches by 59 and ¼ inches.  *Id.* at B4, lines 50-54.  At the time of inspection, two of these roll-in showers had curbs measuring higher than ½ inch, each measuring 5 and ½ inches.  *Id.* at B4, lines 55-56.  At the time of inspection, three of these roll-in showers did not have grab bars on all three walls.  *Id.* at B4, lines 58-59.  These measurements and observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B4, lines 50-59.

221.    Mark Wales inspected a shower and recorded written measurements regarding a shower in a common area at Post Massachusetts Avenue.  App. B at B4, line 60.  At the time of inspection, the shower size measured 42 inches by 42 inches.  *Id.*  These measurements are

recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

222.    Mark Wales inspected transfer shower features (e.g. size, clear floor space, curb height, and presence of grab bars) and recorded written measurements and observations regarding eight transfer shower features in common areas at the following two properties: Post Pentagon Row and Post Rocky Point. App. B at B4-B5, lines 61-68. At the time of inspection, two of these transfer showers measured smaller than 36 inches by 36 inches, measuring between 34 inches by 43 and ½ inches and 34 and ¼ inches by 36 inches. *Id.* at B4, lines 61-62. At the time of inspection, the clear floor space at two of these transfer showers measured smaller than 36 inches by 48 inches because they were observed with built-in benches that block the clear floor space. *Id.* at B4, lines 63-64. At the time of inspection, two of these transfer showers had curbs measuring higher than 4 inches, with each curb height measuring 6 inches. *Id.* at B4, lines 65-66. At the time of inspection, two of these transfer showers were observed not to have grab bars. *Id.* at B5, lines 67-68. These measurements and observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.* at B4-B5, lines 61-68.

223.    Appendix B to the United States' Motion accurately summarizes the facts in ¶¶ 212-222.

**Requirement 3 – Usable Doors**

224.    Mark Wales inspected balcony, patio, and/or deck doors and recorded written measurements regarding eight balcony, patio, and/or deck doors at the following three properties: Post Abbey, Post Park at Phillips Place, and Post Vintage. App. B at B6, lines 1-8. At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between

22 and 1/16 inches and 29 and ½ inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

225.    Mark Wales and Alison Vredenburgh inspected bathroom, toilet room, and powder room doors and recorded written measurements regarding 38 bathroom, toilet room, and powder room doors at the following nine properties: Post Abbey, Post Gallery, Post Harbour Place, Post Legacy, Post Park at Phillips Place, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  App. B at B6-B8, lines 9-38, 70-74, 82-83, 86.  At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 21 and ¾ inches and 27 and ⅛ inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

226.    Mark Wales and Alison Vredenburgh inspected bedroom doors and recorded written measurements regarding 14 bedroom doors at the following five properties: Post Abbey, Post Gallery, Post Park at Phillips Place, Post Uptown Village, and Post Vintage.  App. B at B7, line 39-51.  At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 21 and ⅞ inches and 30 and ⅛ inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

227.    Mark Wales inspected laundry doors and recorded written measurements regarding 12 laundry doors at the following eight properties: Post Gallery, Post Harbour Place, Post Legacy, Post Park at Phillips Place, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  App. B at B7, lines 58-69.  At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 21 and ¾ inches and 30 and ¼ inches.

*Id.* These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

228.   Mark Wales inspected kitchen and pantry doors and recorded written measurements regarding 10 kitchen and pantry doors at the following seven properties: Post Abbey, Post Gallery, Post Harbour Place, Post Legacy, Post Square, Post Uptown Village, and Post Vintage. App. B at B7-B8, lines 55-57, 75-81. At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 18 inches and 30 inches. *Id.* Those measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

229.   Mark Wales inspected walk-in closet doors and recorded written measurements regarding 19 walk-in closet doors at the following six properties: Post Abbey, Post Gallery, Post Harbour Place, Post Legacy, Post Park at Phillips Place, and Post Uptown Village. App. B at B8, lines 87-105. At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 21 and ¾ inches and 30 inches. *Id.* These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

230.   Mark Wales inspected miscellaneous doors (e.g. dining room door, hall door, study doors) and recorded written measurements regarding four miscellaneous doors at the following two properties: Post Abbey and Post Uptown Village. App. B at B7-B8, lines 53-54, 84-85. At the time of inspection, these doors had nominal clear openings of less than 32 inches, measuring between 21 and ⅞ inches and 22 and ½ inches. *Id.* These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

231.    Appendix B to the United States' Motion accurately summarizes the facts in ¶¶ 224-230.

**Requirement 4 – Changes in Level**

232.    Mark Wales and Alison Vredenburgh inspected balcony, patio and/or deck thresholds and recorded measurements and observations regarding 27 balcony, patio, and/or deck thresholds at the following nine properties: Post Biltmore, Post Harbour Place, Post Legacy, Post Luminaria, Post Massachusetts Avenue, Post Park at Phillips Place, Post Square, Post Uptown Village, and Post Vineyard.  App. B at B9-B11, lines 1-27.  At the time of inspection, these balcony, patio, and/or deck thresholds measured greater than ¾ inch above the floor on the interior side, or greater than four inches on the exterior side, measuring between one inch and 14 and ½ inches.  *Id.*  At the time of inspection, steps to balconies were observed and measured at the following three properties:  Post Luminaria, Post Massachusetts Avenue, and Post Uptown Village.  *Id.* at B10, lines 17, 19, 24-25.  These measurements and observations are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.* at B9-B11, lines 1-27.

233.    Appendix B to the United States' Motion accurately summarizes the facts in ¶ 232.

**Requirement 5 – Accessible Light Switches, Electrical Outlets, and Environmental Controls**

234.    Mark Wales inspected light switches and recorded measurements regarding five light switches at Post Square.  App. B at B12, lines 1-5.  At the time of inspection, the operable parts of the light switches measured higher than 48 inches above the floor, measuring between 54 and ¼ inches and 58 and ⅞ inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

235.   Mark Wales and Alison Vredenburgh inspected thermostats and recorded measurements regarding 167 thermostats at the following 11 properties: Post Biltmore, Post Harbour Place, Post Massachusetts Avenue, Post Park at Phillips Place, Post Parkside Atlanta, Post Parkside Orlando, Post Pentagon Row, Post Rocky Point, Post Square, Post Uptown Village, and Post Vintage.   App. B at B12-B17, lines 6-172.   At the time of inspection, the operable part of these thermostats measured higher than 48 inches above the floor, measuring between 54 and ¾ inches and 68 and ¾ inches.   *Id.*   These measurements are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.   *Id.*

236.   Mark Wales inspected vanity outlets in bathrooms and recorded measurements regarding at least 22 vanity outlets in bathrooms at Post Biltmore.   App. B at B16-B17.   At the time of inspection, the operable part of these outlets over the vanities measured higher than 46 inches, measuring between 48 and⅜ inches and 50 and ¼ inches.   *Id.*   These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.   *Id.*

237.   Mark Wales inspected wall outlets and recorded measurements regarding at least 22 wall outlets at the following five properties: Post Biltmore, Post Luminaria, Post Rocky Point, Post Square, and Post Vintage.   App. B at B17, lines 190-211.   At the time of inspection, the operable part of these wall outlets measured lower than 15 inches above the floor, measuring between 11 and ½ inches and 14 inches.   *Id.*   These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.   *Id.*

238.   Appendix B to the United States' Motion accurately summarizes the facts in ¶¶ 234-237.

**Requirement 7 – Kitchen and Bathroom Maneuvering Space**

239.    Mark Wales and Alison Vredenburgh inspected toilet alcoves and recorded measurements regarding 27 toilet alcoves at the following 10 properties: Post Abbey, Post Coles Corner, Post Gallery, Post Harbour Place, Post Parkside Atlanta, Post Parkside Orlando, Post Square, Post Uptown Village, Post Vineyard, and Post Vintage.  App. B at B18-B19, lines 1-27. At the time of inspection, the toilet alcoves measured more than 24 inches deep and less than 48 inches wide, measuring between 25 and ¾ inches deep by 37 inches wide and 57 and ½ inches deep by 35 and ⅛ inches wide.  *Id.*  These measurements are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

240.    Mark Wales and Alison Vredenburgh inspected spaces between opposing barriers in kitchens and recorded measurements regarding 130 spaces between opposing barriers in kitchens at the following 13 properties: Post Abbey, Post Biltmore, Post Coles Corner, Post Gallery, Post Harbour Place, Post Massachusetts Avenue, Post Parkside Atlanta, Post Parkside Orlando, Post Square, Post Toscana, Post Uptown Village, Post Vineyard, and Post Vintage. App. B at B19-B26, lines 28-157.  At the time of inspection, these spaces between opposing barriers in kitchens measured less than 40 inches, measuring between 21 inches and 38 inches. *Id.*  These measurements are recorded in the field notes of Mark Wales and Alison Vredenburgh, indicated by the bates-stamp initials "MW" or "AV" in Appendix B.  *Id.*

241.    Appendix B to the United States' Motion accurately summarizes the facts in ¶¶ 239-240.

**Americans with Disabilities Act**

242.    Mark Wales inspected dispensers for paper towels, seat protectors, and soap in public toilet rooms and recorded measurements regarding eight dispensers for paper towels, seat protectors, and soap at the following four properties: Post Biltmore, Post Massachusetts Avenue, Post Parkside Atlanta, and Post Parkside Orlando.   App. B at B27, lines 1-8.   At the time of inspection, three paper towel dispensers on side walls in public toilet rooms measured higher than 54 inches above the floor, measuring 54 and ¾ inches and 55 inches.   *Id.* at B27, lines 1-3. At the time of inspection, five dispensers requiring a forward reach for paper towels, seat protectors, and soap measured higher than 48 inches above the floor, measuring between 50 and ½ inches and 59 inches.   *Id.* at B27, lines 4-8.   These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.   *Id.* at B27, lines 1-8.

243.    Mark Wales inspected door clear maneuvering areas at public toilet rooms and recorded measurements regarding two door clear maneuvering areas at public toilet rooms at Post Parkside Orlando.   App. B at B27, lines 9-10.   At the time of inspection, the door clear maneuvering areas perpendicular to doors without closers at public toilet rooms measured less than 48 inches, measuring 41 and ¾ inches and 42 inches wide without closers.   *Id.*   These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.   *Id.*

244.    Mark Wales inspected door stall hinges in public toilet rooms and recorded measurements regarding two door stall hinges in public toilet rooms at Post Massachusetts Avenue.   App. B at B27, lines 11-12.   At the time of inspection, the hinge side of the doors measured greater than four inches from the side walls on the opposite corner of the water closet,

measuring 6 and ⅜ inches and 8 inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

245.    Mark Wales inspected lavatory hot water and drain pipes in public toilet rooms and recorded observations regarding five lavatories in public toilet rooms at the following four properties: Post Biltmore, Post Legacy, Post Luminaria, and Post Toscana.  App. B at B28, lines 13-17.  At the time of inspection, these lavatories were observed to have pipes that lacked protection.  *Id.*  Those observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

246.    Mark Wales inspected lavatory knee and toe clearances in public toilet rooms and recorded measurements and observations regarding lavatory knee and toe clearances in public toilet rooms at the following three properties: Post Coles Corner, Post Park at Phillips Place, and Post Rocky Point.  App. B at B28, lines 18-20.  At the time of inspection, the knee clearance at a lavatory in a public toilet room at Post Park at Phillips Place measured less than eight inches deep, measuring five inches.  *Id.* at B28, line 19.  At the time of inspection, the toe clearance was less than nine inches high at lavatories in public toilet rooms at Post Coles Corner and Post Rocky Point, with toe clearance observed as obstructed or not provided.  *Id.* at B28, lines 18, 20. These measurements and observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B28, lines 18-20.

247.    Mark Wales inspected mirror heights in public toilet rooms and recorded measurements regarding nine mirrors in public toilet rooms at the following seven properties: Post Biltmore, Post Coles Corner, Post Legacy, Post Park at Phillips Place, Post Parkside Orlando, Post Toscana, and Post Uptown Village.  App. B at B28-B29, lines 21-29.  At the time of inspection, the bottom edge of the reflective surface of these mirrors measured higher than 40

inches from the floor, measuring between 41 and ½ inches and 51 and ¼ inches above the floor. *Id.* These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

248. Mark Wales inspected public walkways and recorded measurements regarding two public walkways at Post Parkside Atlanta. App. B at B29, lines 30-31. At the time of inspection, cross slopes of public walkways measured greater than 2%, measuring 4.2% and 5%. *Id.* These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B. *Id.*

249. Mark Wales inspected grab bars in public toilet rooms and recorded measurements regarding 13 rear wall and side wall grab bars in public toilet rooms at the following eight properties: Post Alexander, Post Coles Corner, Post Legacy, Post Luminaria, Post Massachusetts Avenue, Post Midtown Square, Post Parkside Orlando, and Post Rocky Point. App. B at B29-B30, lines 32, 40-51. At the time of inspection, a rear wall grab bar in a public toilet room at Post Luminaria measured less than 36 inches long, measuring 24 inches. *Id.* at B29, line 32. At the time of inspection, two side wall grab bars at Post Parkside Orlando measured less than 42 inches long, each measuring 36 inches. *Id.* at B30, lines 48-49. At the time of inspection, side wall grab bars in nine public toilet rooms at Post Alexander, Post Coles Corner, Post Legacy, Post Luminaria, Post Midtown Square, Post Parkside Orlando, and Post Rocky Point were mounted with the leading edge less than 54 inches from the rear wall, with the leading edge measuring between 42 inches and 52 inches from the rear wall. *Id.* at B30, lines 40-43, 45-47, 50-51. At the time of inspection, a side wall grab bar at Post Massachusetts Avenue was mounted with the back edge more than 12 inches from the rear wall, with the back edge measuring 13 inches from the rear wall. *Id.* at B30, line 44. These measurements are

recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B29-B30, lines 32, 40-51.

250.     Mark Wales inspected turning turning spaces in public toilet rooms and recorded written observations regarding turning spaces in public toilet rooms at the following three properties: Post Midtown Square, Post Toscana, and Post Uptown Village.  App. B at B30-B31, lines 52-54.  At the time of inspection, these public toilet rooms lacked a circle at least 60 inches in diameter or a T-shaped space within a 60" square, with turning spaces observed as not provided or provided only in a stall.  *Id.*  These observations are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

251.     Mark Wales inspected routes from arrival points to leasing offices and recorded measurements regarding routes from arrival points to leasing offices at the following two properties: Post Alexander and Post Massachusetts Avenue.  App. B at B29, lines 33-39.  At the time of inspection, cross slopes on routes from arrival points to leasing offices measured greater than 2%, measuring between 3% and 6.4%.  *Id.*  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

252.     Mark Wales inspected features of van accessible parking spaces (e.g. location, signage, and size of the space and the access aisle) and recorded measurements and observations regarding van accessible parking space features at the following two properties: Post Alexander and Post Midtown Square.  App. B at B31, lines 55-59.  At the time of inspection, two van accessible parking spaces at Post Alexander were not located on the shortest accessible route to the accessible entrance, but were observed to be over 100 feet from the accessible entrance to the leasing entry or on a route outside at the street.  *Id.* at B31, lines 55-56.  At the time of inspection, a van accessible parking space at Post Midtown Square was observed to lack a sign

identifying it as a van accessible space.  *Id.* at B31, line 57.  At the time of inspection, the size of the space and the access aisle for two van accessible parking spaces was measured to be less than 16 feet wide including eight feet for each the space and the access aisle, with one space measuring 13 feet and 11 inches in total width and another space with an access aisle measuring five feet.  *Id.* at B31, lines 58-59.  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.* at B31, lines 55-59.

253.    Mark Wales inspected water closet centerlines in public toilet rooms and recorded written measurements regarding seven water closet centerlines in public toilet rooms at the following seven properties: Post Coles Corner, Post Legacy, Post Luminaria, Post Massachusetts Avenue, Post Park at Phillips Place, Post Rocky Point, and Post Toscana.  App. B at B31-B32, lines 60-66.  These water closet centerlines measured greater than 18 inches from the adjacent side wall, measuring between 19 inches and 29 and ½ inches.  *Id.*  These measurements are recorded in the field notes of Mark Wales, indicated by the bates-stamp initials "MW" in Appendix B.  *Id.*

254.    Appendix B to the United States' Motion accurately summarizes the facts in ¶¶ 242-253.