# United States' Exhibit 2

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-CV-01866-RJL |
| | ) | Judge Richard J. Leon |
| POST PROPERTIES, INC. | ) | |
| POST APARTMENT HOMES, L.P. | ) | |
| POST GP HOLDINGS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO
PLAINTIFF'S REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36 and the limitations imposed on Plaintiff

for pursing new discovery in this continued matter, Defendants Post Properties, Inc., Post GP

Holdings, Inc., and Post Apartment Homes, L.P. (collectively "Post"), by undersigned counsel,

hereby submit these objections and responses to Plaintiff's Requests for Admission.

**GENERAL OBJECTION**

Despite being told that Defendants do not possess current knowledge of the

measurements of particular features of the properties at issue, Plaintiff served over 900 separate

requests for admission seeking information about the measurements of particular features at the

properties at issue.  By doing so, although Plaintiff claimed its requests were to narrow the

factual and legal issues in dispute, Plaintiff has inappropriately sought to have Defendants certify

the expert reports produced by the Plaintiff in the first portion of this litigation.  If Plaintiff

concludes there is a need to so certify those expert reports, Plaintiff is equally positioned to

Further, Defendants assert a general global objection to the measurement technique adopted by Plaintiff in asserting the measurements set forth in these requests and the irrelevancy of these requests to the issues to be decided in this litigation.

## RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION

### I. Post Abbey

1.     Admit that you participated in the design and/or construction of Post Abbey located in Dallas, Texas.

**Response:**

Denied.  Defendants took possession of Post Abbey after design and construction.

2.     Admit that Post Abbey was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

3.     Admit that Post Abbey has 34 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.   Without waiving this objection to the request as drafted, Defendants admit that Post Abbey is a single building with a total of 34 units.  *See* Defendants' Responses to ERC's SOMF, ¶ 124 (POST 177869).

3

Without waiving these objections, as was discussed during the in-chambers conference held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the request. To answer this request would require Defendants to inspect the current condition of the area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.

### III.   Post Alexander

35.    Admit that you participated in the design and/or construction of Post Alexander located in Atlanta, Georgia.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Alexander.

36.    Admit that Post Alexander was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

37.    Admit that Post Alexander has 307 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Alexander is an elevator building with 307 units. *See* Defendants' Responses to ERC's SOMF, ¶ 135 (POST 177869).

43

Rebuttal Report (US3440-3464); Ken Hill Inspection Video (KH001-002); Sheriff Report (POST177902); Sheriff Rebuttal Report (POST177902.01); Sheriff Roll-Thru Video (PS089); Vredenburgh Report (POST177901);Vredenburgh Rebuttal Report (POST177901.01 & POST177901.02); Vredenbrugh Appendix (AV504-545); Wales Report (POST177899.01); Wales Rebuttal Report (POST177899.02); and Wales Rebuttal Report, Attachment D, Tab L (W1827-1831).

Without waiving these objections, as was discussed during the in-chambers conference held on April 26, 2011, Defendants respond that they are unable to truthfully admit or deny the request.  Slope conditions can and do change at the properties due to soil movement, weather and other natural conditions, and thus Defendants do not know whether there now is a route with a spot location where the running slope exceeds 2% as this request asks.  To require Defendants to measure this feature would necessitate Defendants to incur substantial burden and expense to measure the current conditions of the property when Plaintiff is equally able to undertake those measurements if it deems necessary.

### V. Post Biltmore

56.　　Admit that you participated in the design and/or construction of Post Biltmore located in Atlanta, Georgia.

**Response:**

Denied as written.  Defendants admit that they had a role in the design and/or construction of the property currently known as Post Biltmore.

57.　　Admit that Post Biltmore was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

58.     Admit that Post Biltmore has 276 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.   Without waiving this objection to the request as drafted, Defendants admit that Post Biltmore is an apartment complex served by elevators with a total of 276 units. *See* Defendants' Responses to ERC's SOMF, ¶ 147 (POST 177869).

59.     Admit that one or more routes intended to be accessible routes at Post Biltmore have a location where the cross slope exceeds 2%.

**Response:**

Defendants object that the request is vague and ambiguous as to what Plaintiff considers a "location".   Defendants object that whether a route has one point where the cross slope exceeds 2% is irrelevant as the accessibility and usability of the property is not conclusively determined by measurement of an isolated point on that route.   Defendants further object that, even if there is one such point, the current slope is not conclusive of whether the route was designed and constructed in accordance with the federal accessibility laws, whether there is an alternative accessible route, or whether Defendants are engaged in a pattern or practice of discrimination.   The request also does not account for whether there are vehicular routes available and does not consider construction tolerances.

initial disclosure process in this action.  *See* Stratton Report (US497-518, 755-790); Stratton

Rebuttal Report (US3440-3464);Stratton Appendix B (US532-536); Sheriff Report

(POST177902); Sheriff Rebuttal Report (POST177902.01); Equal Right Center v. Post

Properties, No. 06-01991, Dkt. 40, Affidavit of Paul Stanley Sheriff (May 4, 2007)

(POST177929-178002 at Attachment A POST177950);Vredenburgh Report (POST177901);

Vredenburgh Rebuttal Report (POST177901.01 & POST177901.02); Vredenburgh Appendix

(AV05-66, 180-295); Wales Report (POST177899.01); Wales Rebuttal Report

(POST177899.02); and Wales Rebuttal Report, Attachment C, Tab D (W1029-1118).

      Without waiving these objections, as was discussed during the in-chambers conference

held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the

request.  To answer this request would require Defendants to inspect the current condition of the

area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.


## X. Post Coles Corner

      158.    Admit that you participated in the design and/or construction of Post Coles Corner

located in Dallas, Texas.

**Response:**

Denied.  Defendants took possession of Post Coles Corner after design and construction.


      159.    Admit that Post Coles Corner was designed and constructed for first occupancy

after March 13, 1991.

**Response:**

Admitted.

160.    Admit that Post Coles Corner has 186 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Coles Corner has 186 units. *See* Defendants' Responses to ERC's SOMF, ¶ 178 (POST 177869). To the extent a further response may be required, Defendants deny this request.

161.    Admit that one or more routes intended to be accessible routes at Post Coles Corner have a location where the cross slope exceeds 2%.

**Response:**

Defendants object that the request is vague and ambiguous as to what Plaintiff considers a "location". Defendants object that whether a route has one point where the cross slope exceeds 2% is irrelevant as the accessibility and usability of the property is not conclusively determined by measurement of an isolated point on that route. Defendants further object that, even if there is one such point, the current slope is not conclusive of whether the route was designed and constructed in accordance with the federal accessibility laws, whether there is an alternative accessible route, or whether Defendants are engaged in a pattern or practice of discrimination. The request also does not account for whether there are vehicular routes available and does not consider construction tolerances.

In addition, information regarding routes at the property is already in the record, rendering the request duplicative. During discovery in Civil Action No. 1:06-CV-01991,

200

substantial burden and expense to measure the current conditions of the property when Plaintiff is equally able to undertake those measurements if it deems necessary.

## XVI. Post Gallery

287. Admit that you participated in the design and/or construction of Post Gallery located in Dallas, Texas.

**Response:**

Denied. Defendants took possession of Post Gallery after design and construction.

288. Admit that Post Gallery was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

289. Admit that Post Gallery has 34 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Gallery has 34 units. *See* Defendants' Responses to ERC's SOMF, ¶ 216 (POST 177869).

290. Admit that one or more routes intended to be accessible routes at Post Gallery contain one or more stairs.

360

Without waiving these objections, as was discussed during the in-chambers conference held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the request. To answer this request would require Defendants to inspect the current condition of the area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.

### XX.      Post Harbour Place

360.    Admit that you participated in the design and/or construction of Post Harbour Place located in Tampa, Florida.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Harbour Place.

361.    Admit that Post Harbour Place was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

362.    Admit that Post Harbour Place has 578 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Harbour Place is a six building apartment complex with 578 units. *See* Defendants' Responses to ERC's SOMF, ¶ 243 (POST 177869).

449

of discrimination.  The parties have produced records from both sets of experts as part of the

initial disclosure process in this action.  *See* Stratton Report (US497-518, 619-622); Stratton

Rebuttal Report (US3440-3464);Stratton Appendix C (PS-C-Hyde Park 1-47); Vredenburgh

Report (POST177901); Vredenburgh Rebuttal Report (POST177901.01 & POST177901.02);

Vredenburgh Appendix (AV983-1036); Wales Report (POST177899.01); Wales Rebuttal Report

(POST177899.02); and Wales Rebuttal Report, Attachment D, Tab L (W1827-1831).

Without waiving these objections, as was discussed during the in-chambers conference

held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the

request.  To answer this request would require Defendants to inspect the current condition of the

area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.


### XXIV.      Post Legacy

439.      Admit that you participated in the design and/or construction of Post Legacy

located in Plano, Texas.

**Response:**

Denied as written.  Defendants admit that they had a role in the design and/or

construction of the property currently known as Post Legacy.


440.      Admit that Post Legacy was designed and constructed for first occupancy after

March 13, 1991.

**Response:**

Admitted.


542

441.    Admit that Post Legacy has 384 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted, Defendants admit that Post Legacy has 384 units. *See* Defendants' Responses to ERC's SOMF, ¶ 269 (POST 177869).  To the extent a further response may be required, Defendants deny this request.


442.    Admit that one or more doors or gates at entrances to public use and common use areas at Post Legacy do not have a level landing extending at least 48 inches from the push side of the gate or door.

**Response:**

Defendants object to this request as being vague and ambiguous as to what Plaintiff views as a "level landing".  Defendants object that whether one gate or door lacks a level landing is irrelevant as there need only be one accessible entry to the public use or common area and the request does not consider construction tolerances.  Defendants further object that, even if one gate or door lacks a level landing, the current slope is not conclusive of whether the entrance was designed and constructed in accordance with the federal accessibility laws or whether Defendants are engaged in a pattern or practice of discrimination.

In addition, information regarding the slope of various landings is already in the record, rendering the request duplicative.  During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center conducted various measurements at the property and

543

**XXVII.   Post Luminaria**

493.   Admit that you participated in the design and/or construction of Post Luminaria located in New York, New York.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Luminaria.

494.   Admit that Post Luminaria was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

495.   Admit that Post Luminaria has 138 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Luminaria is an elevator building with 138 units. *See* Defendants' Responses to ERC's SOMF, ¶ 286 (POST 177869).

496.   Admit that one or more spaces in public use and common use areas at Post Luminaria have an object protruding more than 4 inches into the space without a barrier detectable to a person using a cane.

607

accessibility laws, whether there is an alternate, accessible route to that common use or public use area, or whether Defendants are engaged in a pattern or practice of discrimination.

In addition, information regarding the property is already in the record, rendering the request duplicative.  During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center inspected the property and rendered specific opinions regarding perceived opinions regarding the accessibility of the property.  Witnesses for Defendants also rendered opinions and concluded the criticisms raised were without merit, that the property is fully accessible, usable, and/or adaptable, and that there is no pattern or practice of discrimination. The parties have produced records from both sets of experts as part of the initial disclosure process in this action.  *See* Stratton Report (US497-518, 631-634); Stratton Rebuttal Report (US3440-3464);Stratton Appendix C (PS-C-Luminaria 1-47); Ken Hill Inspection Video (KH010-011); Sheriff Report (POST177902); Sheriff Rebuttal Report (POST177902.01); Sheriff Roll-Thru Video (PS102); Wales Report (POST177899.01); Wales Rebuttal Report (POST177899.02); and Wales Rebuttal Report, Attachment D, Tab L (W1827-1831).

Without waiving these objections, the request is denied.

### XXVIII.   Post Massachusetts Avenue

512.    Admit that you participated in the design and/or construction of Post Massachusetts Avenue located in Washington DC.

**Response:**

Denied as written.  Defendants admit that they had a role in the design and/or construction of the property currently known as Post Massachusetts Avenue.

513.    Admit that Post Massachusetts Avenue was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

514.    Admit that Post Massachusetts Avenue has 269 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Massachussetts Avenue is a complex served by elevators and has 269 units. *See* Defendants' Responses to ERC's SOMF, ¶ 292 (POST 177869).

515.    Admit that one or more routes intended to be accessible routes at Post Massachusetts Avenue have a location where the cross slope exceeds 2%.

**Response:**

Defendants object that the request is vague and ambiguous as to what Plaintiff considers a "location". Defendants object that whether a route has one point where the cross slope exceeds 2% is irrelevant as the accessibility and usability of the property is not conclusively determined by measurement of an isolated point on that route. Defendants further object that, even if there is one such point, the current slope is not conclusive of whether the route was designed and constructed in accordance with the federal accessibility laws, whether there is an alternative accessible route, or whether Defendants are engaged in a pattern or practice of

630

initial disclosure process in this action. *See* Zook Report (US072-74, 488-495); Vredenburgh

Report (POST177901); Vredenburgh Rebuttal Report (POST177901.01 & POST177901.02);

Vredenburgh Appendix (AV299-319); Wales Report (POST177899.01); Wales Rebuttal Report

(POST177899.02); and Wales Rebuttal Report, Attachment B, Tab N (W774-784).

Without waiving these objections, as was discussed during the in-chambers conference

held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the

request. To answer this request would require Defendants to inspect the current condition of the

area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.


### XXX.     Post Midtown Square

551.     Admit that you participated in the design and/or construction of Post Midtown

Square located in Houston, Texas.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or

construction of the property currently known as Post Midtown Square.


552.     Admit that Post Midtown Square was designed and constructed for first

occupancy after March 13, 1991.

**Response:**

Admitted.


553.     Admit that Post Midtown Square has dwelling units that are "covered multifamily

dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

681

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.   Without waiving this objection to the request as drafted, Defendants admit that Post Midtown Square has 429 units.   *See* Defendants' Responses to ERC's SOMF, ¶ 298 (POST 177869).   To the extent a further response may be required, Defendants deny this request.


554.   Admit that one or more routes intended to be accessible routes at Post Midtown Square have a location where the cross slope exceeds 2%.

**Response:**

Defendants object that the request is vague and ambiguous as to what Plaintiff considers a "location".   Defendants object that whether a route has one point where the cross slope exceeds 2% is irrelevant as the accessibility and usability of the property is not conclusively determined by measurement of an isolated point on that route.   Defendants further object that, even if there is one such point, the current slope is not conclusive of whether the route was designed and constructed in accordance with the federal accessibility laws, whether there is an alternative accessible route, or whether Defendants are engaged in a pattern or practice of discrimination.   The request also does not account for whether there are vehicular routes available and does not consider construction tolerances.

In addition, information regarding routes at the property is already in the record, rendering the request duplicative.   During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center conducted various measurements at the property and rendered specific opinions regarding perceived opinions regarding the accessibility of the

**XXXII.   Post Park at Phillips Place**

600.    Admit that you participated in the design and/or construction of Post Park at Phillips Place located in Charlotte, North Carolina.

**Response:**

Denied as written.  Defendants admit that they had a role in the design and/or construction of the property currently known as Post Park at Phillips Place.


601.    Admit that Post Park at Phillips Place was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.


602.    Admit that Post Park at Phillips Place has dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted, Defendants admit that Post Park at Phillips Place is a garden style apartment complex with two elevator buildings and 402 units. *See* Defendants' Responses to ERC's SOMF, ¶ 311 (POST 177869).  To the extent a further response may be required, Defendants deny this request.


603.    Admit that one or more routes intended to be accessible routes at Post Park at Phillips Place contain one or more stairs.

Rebuttal Report (US3440-3464); Stratton Appendix B (US937-982); Sheriff Report

(POST177902); Sheriff Rebuttal Report (POST177902.01); Sheriff Roll-Thru Video (PS105);

Vredenburgh Report (POST177901); Vredenburgh Rebuttal Report (POST177901.01 &

POST177901.02); Vredenburgh Appendix (AV546-590); Wales Report (POST177899.01);

Wales Rebuttal Report (POST177899.02); and Wales Rebuttal Report, Attachment D, Tab I

(W1509-1639).

Without waiving these objections, as was discussed during the in-chambers conference

held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the

request. To answer this request would require Defendants to inspect the current condition of the

area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.

### XXXIII.    Post Parkside Atlanta

612.    Admit that you participated in the design and/or construction of Post Parkside

Atlanta located in Atlanta, Georgia.

#### Response:

Denied as written. Defendants admit that they had a role in the design and/or

construction of the property currently known as Post Parkside Atlanta.

613.    Admit that Post Parkside Atlanta was designed and constructed for first

occupancy after March 13, 1991.

#### Response:

Admitted.

756

614.    Admit that Post Parkside Atlanta has 188 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted, Defendants admit that Post Parkside is a development of several elevator building with 188 units. *See* Defendants' Responses to ERC's SOMF, ¶ 317 (POST 177869).

615.    Admit that one or more routes intended to be accessible routes at Post Parkside Atlanta have a location where the cross slope exceeds 2%.

**Response:**

Defendants object that the request is vague and ambiguous as to what Plaintiff considers a "location".   Defendants object that whether a route has one point where the cross slope exceeds 2% is irrelevant as the accessibility and usability of the property is not conclusively determined by measurement of an isolated point on that route.  Defendants further object that, even if there is one such point, the current slope is not conclusive of whether the route was designed and constructed in accordance with the federal accessibility laws, whether there is an alternative accessible route, or whether Defendants are engaged in a pattern or practice of discrimination.  The request also does not account for whether there are vehicular routes available and does not consider construction tolerances.

In addition, information regarding routes at the property is already in the record, rendering the request duplicative.  During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center conducted various measurements at the property and

757

### XXXIV.    Post Parkside Orlando

625.    Admit that you participated in the design and/or construction of Post Parkside Orlando located in Orlando, Florida.

### Response:

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Parkside Orlando.

626.    Admit that Post Parkside Orlando was designed and constructed for first occupancy after March 13, 1991.

### Response:

Admitted.

627.    Admit that Post Parkside Orlando has 245 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

### Response:

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Parkside Orlando is a development of several elevator buildings with 245 units. *See* Defendants' Responses to ERC's SOMF, ¶ 323 (POST 177869).

628.    Admit that one or more routes intended to be accessible routes at Post Parkside Orlando contain one or more stairs.

Wales Rebuttal Report (POST177899.02); and Wales Rebuttal Report, Attachment D, Tab G (W1300-1386).

Without waiving these objections, as was discussed during the in-chambers conference held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the request. To answer this request would require Defendants to inspect the current condition of the area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.

**XXXVI.   Post Pentagon Row**

657.   Admit that you participated in the design and/or construction of Post Pentagon Row located in Arlington, Virginia.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Pentagon Row.

658.   Admit that Post Pentagon Row was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

659.   Admit that Post Pentagon Row has 504 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted,

Defendants admit that Post Pentagon Row is a four building apartment complex with 504 units. *See* Defendants' Responses to ERC's SOMF, ¶ 336 (POST 177869).

660.    Admit that one or more doors or gates at public use and common use areas at Post Pentagon Row have less than 18 inches of clear floor space beside the latch side of the door or gate on the pull side approach.

**Response:**

Defendants object to this request as being vague and ambiguous as to how Plaintiff measures the area at issue.   Defendants also object that whether a door or gate has less than 18 inches of clear floor space beside the latch side is irrelevant as to the accessibility and usability of the door or gate.  Defendants further object that, even if there is, that would not be conclusive of whether the property was designed and constructed in accordance with the federal accessibility laws or whether Defendants are engaged in a pattern or practice of discrimination. As Plaintiff is aware, the Act only specifies that doors be wide enough for people using wheelchairs, and research shows that 11 inches is adequate for most people.   The request also does not consider construction tolerances.

In addition, information regarding the property is already in the record, rendering the request duplicative.   During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center conducted various measurements at the property and rendered specific opinions regarding perceived opinions regarding the accessibility of the property.   Witnesses for Defendants also rendered opinions and concluded the criticisms raised were without merit, that the property is fully accessible, usable, and/or adaptable, and that there is no pattern or practice of discrimination.   The parties have produced records from both sets of experts as part of the

810

unable to be turned without pinching or twisting and Plaintiff is equally able to undertake that inspection if it deems necessary.

### XLI.    Post Rocky Point

735.    Admit that you participated in the design and/or construction of Post Rocky Point located in Tampa, Florida.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Rocky Point.

736.    Admit that Post Rocky Point was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

737.    Admit that Post Rocky Point has dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted, Defendants admit that Post Rocky Point is a garden style apartment complex with 916 units. *See* Defendants' Responses to ERC's SOMF, ¶ 360 (POST 177869).  To the extent a further response may be required, Defendants deny this request.

request.  Slope conditions can and do change at the properties due to soil movement, weather and other natural conditions, and thus Defendants do not know whether there now is a route with a spot location where the running slope exceeds 2% as this request asks.  To require Defendants to measure this feature would necessitate Defendants to incur substantial burden and expense to measure the current conditions of the property when Plaintiff is equally able to undertake those measurements if it deems necessary.

### XLIII.    Post Square

771.    Admit that you participated in the design and/or construction of Post Square located in Dallas, Texas.

**Response:**

Denied.  Defendants took possession of Post Square after design and construction.


772.    Admit that Post Square was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.


773.    Admit that Post Square has 218 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted,

944

Defendants admit that Post Square has 218 units. *See* Defendants' Responses to ERC's SOMF, ¶ 372 (POST 177869).

774.     Admit that one or more routes intended to be accessible routes at Post Square contain one or more stairs.

**Response:**

Defendants object that even if one route were to require use of a stair, that would not be conclusive of whether an element of the property was designed and constructed in accordance with the federal accessibility laws, whether there is an alternate, accessible route to that dwelling, common use or public use area, or whether Defendants are engaged in a pattern or practice of discrimination. Defendants further object that the request does not account for whether there are vehicular routes at the property.

In addition, information regarding the property is already in the record, rendering the request duplicative. During discovery in Civil Action No. 1:06-CV-01991, witnesses for the Equal Rights Center inspected the property and rendered specific opinions regarding perceived opinions regarding the accessibility of the property. Witnesses for Defendants also rendered opinions and concluded the criticisms raised were without merit, that the property is fully accessible, usable, and/or adaptable, and that there is no pattern or practice of discrimination. The parties have produced records from both sets of experts as part of the initial disclosure process in this action. *See* Zook Report (US054-56, 301-342); Sheriff Report (POST177902); Sheriff Rebuttal Report (POST177902.01); Sheriff Roll-Thru Video (PS111); Vredenburgh Report (POST177901); Vredenburgh Rebuttal Report (POST177901.01 & POST177901.02);

945

### XLV.     Post Toscana

803.     Admit that you participated in the design and/or construction of Post Toscana located in New York, New York.

**Response:**

Denied as written. Defendants admit that they had a role in the design and/or construction of the property currently known as Post Toscana.

804.     Admit that Post Toscana was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

805.     Admit that Post Toscana has 199 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Toscana has 199 units. *See* Defendants' Responses to ERC's SOMF, ¶ 380 (POST 177869).

806.     Admit that one or more doors or gates at public use and common use areas at Post Toscana have less than 18 inches of clear floor space beside the latch side of the door or gate on the pull side approach.

984

**Response:**

Denied.   Defendants took possession of Post Uptown Village after design and construction.

831.   Admit that Post Uptown Village was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

832.   Admit that Post Uptown Village has dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.   Without waiving this objection to the request as drafted, Defendants admit that Post Uptown Village is a six building development and has dwelling units. *See* Defendants' Responses to ERC's SOMF, ¶ 390 (POST 177869).   To the extent a further response may be required, Defendants deny this request.

833.   Admit that one or more doors or gates at public use and common use areas at Post Uptown Village have less than 18 inches of clear floor space beside the latch side of the door or gate on the pull side approach.

Without waiving these objections, as was discussed during the in-chambers conference held on April 26, 2011, Defendants respond that it is unable to truthfully admit or deny the request. To answer this request would require Defendants to inspect the current condition of the area at issue, and Plaintiff is equally able to undertake that inspection if it deems necessary.

### XLVIII.   Post Vineyard

856.   Admit that you participated in the design and/or construction of Post Vineyard located in Dallas, Texas.

**Response:**

Denied. Defendants took possession of Post Vineyard after design and construction.

857.   Admit that Post Vineyard was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

858.   Admit that Post Vineyard has 116 dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act. Without waiving this objection to the request as drafted, Defendants admit that Post Vineyard has 116 units. *See* Defendants' Responses to ERC's SOMF, ¶ 396 (POST 177869).

1046

**XLIX.      Post Vintage**

878.      Admit that you participated in the design and/or construction of Post Vintage located in Dallas, Texas.

**Response:**

Denied.  Defendants took possession of Post Vintage after design and construction.

879.      Admit that Post Vintage was designed and constructed for first occupancy after March 13, 1991.

**Response:**

Admitted.

880.      Admit that Post Vintage has dwelling units that are "covered multifamily dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(7).

**Response:**

Defendants object that this request seeks a legal conclusion regarding the number of units covered by the Fair Housing Act.  Without waiving this objection to the request as drafted, Defendants admit that Post Vintage has 161 units. *See* Defendants' Responses to ERC's SOMF, ¶ 401 (POST 177869).

881.      Admit that one or more doors or gates at public use and common use areas at Post Vintage have less than 18 inches of clear floor space beside the latch side of the door or gate on the pull side approach.

1072

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  /s/ Lynn E. Calkins
    Christopher B. Hanback (Bar # 232579)
    Lynn E. Calkins (Bar # 445854)
    Rafe Petersen (Bar # 465542)
    2099 Pennsylvania Avenue, N.W., Suite 100
    Washington, D.C. 20006
    Telephone: (202) 955 3000
    Facsimile: (202) 955 5564
    E-mail: christopher.hanback@hklaw.com
    E-mail: lynn.calkins@hklaw.com
    E-mail: rafe.petersen@hklaw.com

    *Counsel for Post Properties, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of August, 2011, a true and accurate copy of the foregoing was served via email:

Beth Pepper, Esq.               Beth.Pepper@usdoj.gov
Max P. Lapertosa, Esq.          Max.Lapertosa@usdoj.gov
Brian Hudak, Esq.               Brian.Hudak@usdoj.gov
Joel A. Flaxman, Esq.           Joel.Flaxman@usdoj.gov

And via first-class mail, postage pre-paid on:

Beth Pepper, Esq.
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
1800 G Street, NW, Suite 7002
Washington, D.C.  20006


    /s Lynn E. Calkins
Lynn E. Calkins