# United States' Exhibit 5

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

```
>

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 KeLb86geaZglHD0P8k9u/7SHi026IpmYmla6GZ5kwgZkh6uqN/tkf88K6NZXuwRE
 NYpmRSzKS1YJfswMJMbbWA==

<SEC-DOCUMENT>0000950144-97-008568.txt : 19970807
<SEC-HEADER>0000950144-97-008568.hdr.sgml : 19970807
ACCESSION NUMBER:                0000950144-97-008568
CONFORMED SUBMISSION TYPE:       8-K
PUBLIC DOCUMENT COUNT:           3
CONFORMED PERIOD OF REPORT:      19970801
ITEM INFORMATION:                Other events
ITEM INFORMATION:                Financial statements and exhibits
FILED AS OF DATE:                19970806
SROS:              NYSE
SROS:              PHLX

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:              POST PROPERTIES INC
                CENTRAL INDEX KEY:                   0000903127
                STANDARD INDUSTRIAL CLASSIFICATION:  REAL ESTATE INVESTMENT TRUSTS [6798]
                IRS NUMBER:                          581550675
                STATE OF INCORPORATION:              GA
                FISCAL YEAR END:                     1231

        FILING VALUES:
                FORM TYPE:           8-K
                SEC ACT:             1934 Act
                SEC FILE NUMBER:     001-12080
                FILM NUMBER:         97652274

        BUSINESS ADDRESS:
                STREET 1:            3350 CUMBERLAND CIRCLE NW
                STREET 2:            STE 2200
                CITY:                ATLANTA
                STATE:               GA
                ZIP:                 30339
                BUSINESS PHONE:      7708504400

        MAIL ADDRESS:
                STREET 1:            3530 CUMBERLAND CIRCLE
                STREET 2:            SUITE 2200
                CITY:                ATLANTA
                STATE:               GA
                ZIP:                 30339
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<DESCRIPTION>POST PROPERTIES INC
<TEXT>

<PAGE>   1
```

Exhibit No. _Cohen 7_

Date: _7/18/13_
Reporter: David A. Kasdan
RDR-CRR

=================================================================

SECURITIES AND EXCHANGE COMMISSION

POST_D0000773

Washington, D.C. 20549

--------------------

FORM 8-K

CURRENT REPORT
PURSUANT TO SECTION 13 OR 15 (d) OF THE
SECURITIES EXCHANGE ACT OF 1934

Date of Report: (Date of earliest event reported): August 1, 1997

Post Properties, Inc.
-------------------------------------------------------
(Exact name of Registrant as Specified in Charter)

| Georgia | 1-12080 | 58-1550675 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 3350 Cumberland Circle, Atlanta, Georgia | 30339 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: (770) 850-4400

Not Applicable
-------------------------------------------------------
(Former Name or Former Address, if Changed Since Last Report)

<PAGE>   2

Item 5. Other Events

On August 4, 1997, the Registrant announced that it has entered into a definitive agreement and plan of merger with Columbus Realty Trust, a Texas real estate investment trust ("Columbus"), pursuant to which Columbus would be merged into a wholly owned subsidiary of the Registrant (the "Merger Agreement"). Columbus currently operates 24 completed communities containing 6,045 apartment units and has an additional six communities under development that will contain 1,481 apartment units upon completion located in Dallas and Houston, Texas and Jackson, Mississippi. Pursuant to the Merger Agreement, each outstanding share of Columbus common shares will be converted into .615 shares of common stock of the Registrant, which will result in the issuance of approximately 8.4 million shares of common stock of the Registrant. The merger, which will be accounted for as a purchase, is expected to be completed in November 1997, subject to the approval of the shareholders of the Registrant and Columbus and other customary conditions.

For further information concerning the merger and the Merger Agreement, see Exhibits 2 and 99 hereto, which are incorporated herein by reference.

Item 7. Financial Statement, Pro Forma Financial Information and Exhibits.

(c) Exhibits.

Exhibit 2   - Agreement and Plan of Merger, dated as of August 1, 1997, among Post Properties, Inc., Post LP Holdings, Inc. and Columbus Realty Trust

Exhibit 99 - Press Release dated August 4, 1997

<PAGE>    3


SIGNATURES

       Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

POST PROPERTIES, INC.

Date: August 6, 1997                    By: /s/ John A. Williams
                                            ------------------------
                                            John A. Williams
                                            Chairman of the Board,
                                            Chief Executive Officer
                                            and Director

<PAGE>    4


INDEX TO EXHIBITS

Exhibit    Number and Description

   2       Agreement and Plan of Merger, dated as of August 1, 1997, among
           Post Properties, Inc., Post LP Holdings, Inc. and Columbus Realty
           Trust.

   99      Press Release dated August 4, 1997.


</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-2
<SEQUENCE>2
<DESCRIPTION>AGREEMENT & PLAN OF MERGER
<TEXT>

<PAGE>    1


                                                    EXHIBIT 2

AGREEMENT AND PLAN OF MERGER

DATED AS OF AUGUST 1, 1997,

BY AND AMONG

POST PROPERTIES, INC.

POST LP HOLDINGS, INC.

AND

COLUMBUS REALTY TRUST

<PAGE>    2

POST_D0000775

TABLE OF CONTENTS

```
<TABLE>
<CAPTION>
```

|  |  |  | PAGE |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| ARTICLE I -- THE MERGER...................................................... |
| SECTION | 1.1 | The Merger........................................... |
| SECTION | 1.2 | Closing.............................................. |
| SECTION | 1.3 | Effective Time....................................... |
| SECTION | 1.4 | Effects of the Merger................................ |
| SECTION | 1.5 | Articles of Incorporation and Bylaws................. |
| SECTION | 1.6 | Board of Directors................................... |
| SECTION | 1.7 | Officers............................................. |
| ARTICLE II -- EFFECT OF THE MERGER ON THE CAPITAL STOCK OF THE CONSTITUENT |
|  |  | CORPORATIONS; EXCHANGE OF CERTIFICATES............... |
| SECTION | 2.1 | Effect on Capitalization............................. |
|  | 2.1.1 | Cancellation of Treasury Stock....................... |
|  | 2.1.2 | Conversion of Common Shares.......................... |
|  | 2.1.3 | Shares of Acquiror Common Stock...................... |
|  | 2.1.4 | Shares of Merger Sub................................. |
| SECTION | 2.2 | Exchange of Certificates............................. |
|  | 2.2.1 | Exchange Agent....................................... |
|  | 2.2.2 | Acquiror To Provide Merger Consideration............. |
|  | 2.2.3 | Exchange Procedure................................... |
|  | 2.2.4 | Record Dates for Final Dividends; Distributions with Respect |
|  |  | to Unexchanged Shares............................... |
|  | 2.2.5 | No Further Ownership Rights in Common Shares......... |
|  | 2.2.6 | No Liability......................................... |
|  | 2.2.7 | No Fractional Shares................................. |
|  | 2.2.8 | Withholding Rights................................... |
| ARTICLE III -- REPRESENTATIONS AND WARRANTIES............................... |
| SECTION | 3.1 | Representations and Warranties of the Company........ |
|  | 3.1.1 | Organization, Standing and Power of the Company...... |
|  | 3.1.2 | Company Subsidiaries................................. |
|  | 3.1.3 | Capital Structure.................................... |
|  | 3.1.4 | Authority; Noncontravention; Consents................ |
|  | 3.1.5 | SEC Documents; Financial Statements; Undisclosed |
|  |  | Liabilities........................................ |
|  | 3.1.6 | Absence of Certain Changes or Events................. |
|  | 3.1.7 | Litigation........................................... |
|  | 3.1.8 | Properties........................................... |
|  | 3.1.9 | Environmental Matters................................ |
|  | 3.1.10 | Related Party Transactions........................... |
|  | 3.1.11 | Absence of Changes in Benefit Plans; ERISA Compliance....... |
|  | 3.1.12 | Taxes................................................ |
|  | 3.1.13 | No Payments to Employees, Officers or Trust Managers........ |
|  | 3.1.14 | Brokers; Schedule of Fees and Expenses............... |
|  | 3.1.15 | Compliance with Laws................................. |
|  | 3.1.16 | Contracts; Debt Instruments.......................... |
|  | 3.1.17 | State Takeover Statutes.............................. |
|  | 3.1.18 | Registration Statement; Proxy Statement.............. |
|  | 3.1.19 | Hart-Scott-Rodino Antitrust Improvements Act of 1976........ |
|  | 3.1.20 | Vote Required........................................ |
|  | 3.1.21 | Opinion of Financial Advisor......................... |
|  | 3.1.22 | Investment Company Act of 1940....................... |

```
</TABLE>
```

(i)

```
<PAGE>   3

<TABLE>
<CAPTION>
```

PAGE

POST_D0000776

| \<S> | \<C> | \<C> | | \<C> |
|---|---|---|---|---|
| | 3.1.23 | Insurance.................................................. | | |
| | 3.1.24 | The Company's Rights Agreement............................ | | |
| SECTION | 3.2 | Representations and Warranties of Acquiror................ | | |
| | 3.2.1 | Organization, Standing and Corporate Power of Acquiror and Merger Sub............................................... | | |
| | 3.2.2 | Acquiror Subsidiaries..................................... | | |
| | 3.2.3 | Capital Structure......................................... | | |
| | 3.2.4 | Authority; Noncontravention; Consents..................... | | |
| | 3.2.5 | SEC Documents; Financial Statements; Undisclosed Liabilities............................................... | | |
| | 3.2.6 | Absence of Certain Changes or Events...................... | | |
| | 3.2.7 | Litigation................................................ | | |
| | 3.2.8 | Properties................................................ | | |
| | 3.2.9 | Environmental Matters..................................... | | |
| | 3.2.10 | Absence of Changes in Benefit Plans; ERISA Compliance..... | | |
| | 3.2.11 | Taxes..................................................... | | |
| | 3.2.12 | No Payments to Employees, Officers or Directors........... | | |
| | 3.2.13 | Brokers; Schedule of Fees and Expenses.................... | | |
| | 3.2.14 | Compliance with Laws...................................... | | |
| | 3.2.15 | Contracts; Debt Instruments............................... | | |
| | 3.2.16 | State Takeover Statutes................................... | | |
| | 3.2.17 | Registration Statement; Proxy Statement................... | | |
| | 3.2.18 | Hart-Scott-Rodino Antitrust Improvements Act of 1976...... | | |
| | 3.2.19 | Vote Required............................................. | | |
| | 3.2.20 | Opinion of Financial Advisor.............................. | | |
| | 3.2.21 | Investment Company Act of 1940............................ | | |
| | 3.2.22 | Insurance................................................. | | |
| | 3.2.23 | Interim Operations of Merger Sub.......................... | | |
| ARTICLE IV | -- COVENANTS.... | .......................................... | | |
| SECTION | 4.1 | Conduct of Business by the Company........................ | | |
| SECTION | 4.2 | Conduct of Business by Acquiror........................... | | |
| SECTION | 4.3 | Other Actions............................................. | | |
| ARTICLE V | -- ADDITIONAL COVENANTS.... | ................................... | | |
| SECTION | 5.1 | Preparation of the Registration Statement and the Proxy Statement; Company Shareholders Meeting and Acquiror Shareholders Meeting...................................... | | |
| SECTION | 5.2 | Access to Information: Confidentiality.................... | | |
| SECTION | 5.3 | Commercially Reasonable Efforts; Notification............. | | |
| SECTION | 5.4 | Affiliates................................................ | | |
| SECTION | 5.5 | Tax Treatment............................................. | | |
| SECTION | 5.6 | Acquiror Board of Directors............................... | | |
| SECTION | 5.7 | No Solicitation of Transactions by the Company............ | | |
| SECTION | 5.8 | No Solicitation of Transactions by Acquiror............... | | |
| SECTION | 5.9 | Public Announcements...................................... | | |
| SECTION | 5.10 | Listing................................................... | | |
| SECTION | 5.11 | Letters of Accountants.................................... | | |
| SECTION | 5.12 | Transfer and Gains Taxes.................................. | | |
| SECTION | 5.13 | Benefit Plans and Other Employee Arrangements............. | | |
| | 5.13.1 | Benefit Plans............................................. | | |
| | 5.13.2 | Stock Incentive Plan...................................... | | |
| | 5.13.3 | Cooperation............................................... | | |
| SECTION | 5.14 | Indemnification; Directors' and Officers' Insurance....... | | |
| SECTION | 5.15 | The Company Rights Plan................................... | | |

\</TABLE>

(ii)

\<PAGE>   4

\<TABLE>
\<CAPTION>

| | | | PAGE |
|---|---|---|---|
| | | | ---- |
| \<S> | \<C> | \<C> | \<C> |
| ARTICLE VI | -- CONDITIONS PRECEDENT............. | ................................ | |
| SECTION | 6.1 | Conditions to Each Party's Obligation To Effect the Merger................................................... | |

POST_D0000777

```
               6.1.1    Shareholder Approvals......................................
               6.1.2    Listing of Shares.........................................
               6.1.3    Registration Statement....................................
               6.1.4    No Injunctions or Restraints..............................
               6.1.5    Related Transactions......................................
     SECTION   6.2      Conditions to Obligations of Acquiror and Merger Sub........
               6.2.1    Representations and Warranties............................
               6.2.2    Performance of Obligations of the Company..................
               6.2.3    Material Adverse Change...................................
               6.2.4    Opinions Relating to REIT.................................
               6.2.5    Other Tax Opinion.........................................
               6.2.6    Consents..................................................
     SECTION   6.3      Conditions to Obligations of the Company..................
               6.3.1    Representations and Warranties............................
               6.3.2    Performance of Obligations of Acquiror....................
               6.3.3    Material Adverse Change...................................
               6.3.4    Opinion Relating to REIT Status...........................
               6.3.5    Other Tax Opinion.........................................
               6.3.6    Consents..................................................
ARTICLE VII -- BOARD ACTIONS...........................................................
     SECTION   7.1      Company Board Actions.....................................
     SECTION   7.2      Acquiror Board Actions....................................
ARTICLE VIII -- TERMINATION, AMENDMENT AND WAIVER......................................
     SECTION   8.1      Termination...............................................
     SECTION   8.2      Expenses..................................................
     SECTION   8.3      Effect of Termination.....................................
     SECTION   8.4      Amendment.................................................
     SECTION   8.5      Extension; Waiver.........................................
ARTICLE IX -- DEFINITIONS AND CONSTRUCTION............................................
     SECTION   9.1      Certain Definitions.......................................
     SECTION   9.2      Rules of Construction.....................................
ARTICLE X -- GENERAL PROVISIONS.......................................................
     SECTION   10.1     Nonsurvival of Representations and Warranties.............
     SECTION   10.2     Notices...................................................
     SECTION   10.3     Counterparts..............................................
     SECTION   10.4     Entire Agreement; No Third-Party Beneficiaries............
     SECTION   10.5     Governing Law.............................................
     SECTION   10.6     Assignment................................................
     SECTION   10.7     Enforcement...............................................
     SECTION   10.8     Severability..............................................
</TABLE>
```

(iii)

<PAGE>    5

EXHIBITS:

<TABLE>
<CAPTION>

```
                                                                            PAGE
                                                                            ----
<S>                        <C>                                              <C>
A                          Form of Affiliates Letter................................
SCHEDULES TO DISCLOSURE LETTERS:
Schedule 3.1.2             Company Subsidiaries.....................................
Schedule 3.1.3             Capital Structure........................................
Schedule 3.1.4             Authority; Noncontravention; Consents....................
Schedule 3.1.5             SEC Documents, Financial Statements; Undisclosed
                           Liabilities..............................................
Schedule 3.1.6             Certain Changes or Events................................
Schedule 3.1.7             Litigation...............................................
Schedule 3.1.8             Company Properties.......................................
Schedule 3.1.9             Environmental Matters....................................
Schedule 3.1.10            Company Related Party Transactions.......................
Schedule 3.1.11(i)         Changes in Benefit Plans.................................
Schedule 3.1.11(ii)        ERISA Compliance.........................................
Schedule 3.1.11(iii)       Change of Control Payments...............................
```

POST_D0000778

Schedule 3.1.12        Taxes.......................................................
Schedule 3.1.13        Payments to Employees, Officers or Trust Managers...........
Schedule 3.1.15        Compliance with Laws.......................................
Schedule 3.1.16(i)     Contracts..................................................
Schedule 3.1.16(ii)    Debt Instruments...........................................
Schedule 3.2.2         Acquiror Subsidiaries......................................
Schedule 3.2.3         Acquiror Capital Structure.................................
Schedule 3.2.4         Authority; Noncontravention; Consents......................
Schedule 3.2.5         Acquiror Liabilities.......................................
Schedule 3.2.6         Certain Changes or Events..................................
Schedule 3.2.7         Litigation.................................................
Schedule 3.2.9         Environmental Matters......................................
Schedule 3.2.10(i)     Changes in Benefit Plans...................................
Schedule 3.2.10(ii)    ERISA Compliance...........................................
Schedule 3.2.11        Taxes......................................................
Schedule 3.2.12        Payments to Employees, Officers or Directors...............
Schedule 3.2.15        Contracts..................................................
Schedule 4.1           Conduct of Business by the Company (Exceptions to
                       Covenants).................................................
Schedule 4.2           Conduct of Business by Acquiror (Exceptions to Covenants)...
Schedules 9.1          Persons with "Knowledge" of the Company or Acquiror.........
</TABLE>

(iv)

<PAGE>   6

THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") dated as of August 1,
1997 is made and entered into by and among Post Properties, Inc., a Georgia
corporation ("Acquiror"), Post LP Holdings, Inc., a Georgia corporation and a
direct wholly owned subsidiary of Acquiror ("Merger Sub"); and Columbus Realty
Trust, a Texas real estate investment trust (the "Company").

R E C I T A L S

A. Certain capitalized terms used herein shall have the meanings assigned
to them in SECTION 9.1.

B. The respective Boards of Directors of Acquiror and Merger Sub and the
Board of Trust Managers of the Company have approved the merger of the Company
with and into Merger Sub, Acquiror's direct wholly owned subsidiary, as set
forth below (the "Merger"), upon the terms and subject to the conditions set
forth in this Agreement, whereby each issued and outstanding common share of
beneficial interest, par value $.01 per share, of the Company (the "Common
Shares") will be converted into the right to receive the Merger Consideration.

C. Acquiror, Merger Sub and the Company desire to make certain
representations, warranties, covenants and agreements in connection with the
Merger and also to prescribe various conditions to the Merger.

D. For federal income tax purposes it is intended that the Merger qualify
as a reorganization within the meaning of Section 368(a) of the Internal Revenue
Code of 1986, as amended (the "Code").

E. Simultaneously with the execution of this Agreement, Armada Homes, Inc.,
a subsidiary of the Company ("Armada"), Robert L. Shaw ("Shaw"), Will Cureton
("Cureton"), John A. Williams ("Williams") and John T. Glover ("Glover") have
entered into a Stock Purchase Agreement (the "Armada Stock Purchase Agreement")
providing for the sale by Shaw and Cureton of all the issued and outstanding
voting stock of Armada owned by Shaw and Cureton to Williams and Glover.

F. Simultaneously with the execution of this Agreement, Addison Circle
Access, Inc., a subsidiary of the Company ("Addison"), Shaw, Cureton, Williams
and Glover have entered into a Stock Purchase Agreement (the "Addison Stock
Purchase Agreement") and together with the Armada Stock Purchase Agreement, the
"Stock Purchase Agreements") providing for the sale by Shaw and Cureton of all
the issued and outstanding voting stock of Addison owned by Shaw and Cureton to
Williams and Glover.

POST_D0000779

G. The transactions contemplated by this Agreement, the Stock Purchase Agreements and the other agreements and documents contemplated hereby, including, without limitation, the Merger, shall be referred to collectively in this Agreement as the "Transactions."

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in this Agreement, the parties hereto agree as follows:

ARTICLE I

THE MERGER

SECTION 1.1  THE MERGER.  Upon the terms and subject to the conditions set forth in this Agreement, and in accordance with the Texas Real Estate Investment Trust Act and the Georgia Business Corporation Code (collectively, the "Governing Laws"), the Company shall be merged with and into Merger Sub at the Effective Time. Following the Merger, the separate corporate existence of the Company shall cease and Merger Sub shall continue as the surviving entity (the "Surviving Company") and shall succeed to and assume all the rights and obligations of the Company in accordance with the Governing Laws. At the election of Acquiror, any other direct subsidiary of Acquiror acceptable to the Company in its reasonable judgment may be substituted for Merger Sub as a constituent corporation in the Merger. In such event, the parties agree to execute an appropriate amendment to this Agreement in order to reflect such substitution.

SECTION 1.2  CLOSING.  The closing of the Merger will take place at 10:00 a.m., local time, on a date to be specified by the parties, which (subject to satisfaction or waiver of the conditions set forth in SECTIONS 6.2
<PAGE>  7

and 6.3) shall be no later than the second business day after satisfaction or waiver of the conditions set forth in ARTICLE VI (the "Closing Date"), at the offices of King & Spalding, 191 Peachtree Street, Atlanta, Georgia 30303, unless another date or place is agreed to by the parties hereto.

SECTION 1.3  EFFECTIVE TIME.  As soon as practicable following the satisfaction or waiver of the conditions set forth in ARTICLE VI, the parties shall file the articles of merger or other appropriate documents (the "Articles of Merger") executed in accordance with the Governing Laws and shall make all other filings or recordings required under the Governing Laws. The Merger shall become effective upon the filing of the Articles of Merger with the office of the County Clerk of Dallas County, Texas and the office of the Secretary of State of the State of Georgia (the "Applicable Bodies"), or at such later time which Acquiror, Merger Sub and the Company have agreed upon and designated in such filings in accordance with the Governing Laws (the time the Merger becomes effective being the "Effective Time"), it being understood that the parties shall cause the Effective Time to occur on the Closing Date.

SECTION 1.4  EFFECTS OF THE MERGER.  The Merger shall have the effects set forth in the Governing Laws.

SECTION 1.5  ARTICLES OF INCORPORATION AND BYLAWS.  The Articles of Incorporation of Merger Sub, as in effect immediately prior to the Effective Time, shall be the Articles of Incorporation of the Surviving Company, until duly amended in accordance with applicable law. The Bylaws of Merger Sub, as in effect immediately prior to the Effective Time, shall be the Bylaws of the Surviving Company, until duly amended in accordance with applicable law.

SECTION 1.6  BOARD OF DIRECTORS.  The Board of Directors of Merger Sub immediately prior to the Effective Time shall be the Board of Directors of the Surviving Company until the earlier of their resignation or removal or until their respective successors are duly elected and qualified, as the case may be.

SECTION 1.7  OFFICERS.  The officers of Merger Sub immediately prior to the

POST_D0000780

Effective Time shall be the officers of the Surviving Company until the earlier of their resignation or removal or until their respective successors are duly elected and qualified, as the case may be.

ARTICLE II

EFFECT OF THE MERGER ON THE CAPITAL STOCK OF THE
CONSTITUENT CORPORATIONS; EXCHANGE OF CERTIFICATES

SECTION 2.1  EFFECT ON CAPITALIZATION.  By virtue of the Merger and without any action on the part of the holder of any shares of Common Shares or the holder of any shares of capital stock of Acquiror:

2.1.1  CANCELLATION OF TREASURY STOCK.  As of the Effective Time, any shares of capital stock of the Company that are owned by the Company or any Company Subsidiary shall automatically be canceled and retired and all rights with respect thereto shall cease to exist, and no consideration shall be delivered in exchange therefor.

2.1.2  CONVERSION OF COMMON SHARES.  Upon the Effective Time, each issued and outstanding share of Common Shares (other than any shares to be canceled in accordance with SECTION 2.1.1) shall be converted into the right to receive from Acquiror .615 (six hundred fifteen one-thousandths) of a fully paid and nonassessable share of Acquiror Common Stock (the "Exchange Ratio"). As of the Effective Time, all Common Shares shall no longer be outstanding and shall automatically be canceled and retired and all rights with respect thereto shall cease to exist, and each holder of a certificate representing any such Common Shares shall cease to have any rights with respect thereto, except the right to receive, upon surrender of such certificate in accordance with SECTION 2.2.3, certificates representing the shares of Acquiror Common Stock required to be delivered under this SECTION 2.1.2 and any cash in lieu of fractional shares of Acquiror Common Stock to be issued or paid in consideration therefor upon surrender of such certificate (the "Merger Consideration") as set forth in SECTION 2.2.7, and any dividends or other distributions to which such holder is entitled pursuant to SECTION 2.2.4, in each case without interest and less any required withholding taxes. The Exchange Ratio shall be adjusted to reflect fully the effect of any

2

<PAGE>   8

stock split, reverse stock split, stock dividend (including any dividend or distribution of securities convertible into Acquiror Common Stock or Common Shares), reorganization, recapitalization or other like change with respect to Acquiror Common Stock or Common Shares occurring after the date hereof and prior to the Effective Time.

2.1.3  SHARES OF ACQUIROR COMMON STOCK.  Upon the Effective Time, each share of Acquiror Common Stock outstanding immediately prior to the Effective Time shall remain outstanding and shall represent one share of validly issued, fully paid and nonassessable Acquiror Common Stock.

2.1.4  SHARES OF MERGER SUB.  Upon the Effective Time, each share of common stock, par value $.01 per share, of Merger Sub outstanding immediately prior to the Effective Time shall remain outstanding and shall represent one share of common stock, par value $.01 per share, of the Surviving Company.

SECTION 2.2  EXCHANGE OF CERTIFICATES.

2.2.1  EXCHANGE AGENT.  Prior to the Effective Time, Acquiror shall appoint, or shall cause to be appointed, Wachovia Bank of North Carolina or another bank or trust company reasonably acceptable to the Company to act as exchange agent (the "Exchange Agent") for the exchange of the Merger Consideration upon surrender of certificates representing issued and outstanding Common Shares.

POST_D0000781

(vii) all references herein to constitutions, treaties, statutes, laws, rules, regulations, ordinances, codes or orders include any successor thereto or replacement thereof, and mean references to any of them as amended, modified or supplemented from time to time;

(viii) the words "herein," "hereof," "hereto" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision;

(ix) all terms used herein which are defined in the Securities Act, the Exchange Act or the rules and regulations promulgated thereunder have the meanings assigned to them therein unless otherwise defined herein; and

(x) all accounting terms not otherwise defined herein have the meaning assigned to them in accordance with GAAP.

ARTICLE X

GENERAL PROVISIONS

SECTION 10.1  NONSURVIVAL OF REPRESENTATIONS AND WARRANTIES.  None of the representations and warranties in this Agreement or in any instrument delivered pursuant to this Agreement shall survive the Effective Time. This SECTION 10.1 shall not limit any covenant or agreement of the parties which by its terms contemplates performance after the Effective Time.

SECTION 10.2  NOTICES.  All notices, requests, claims, demands and other communications under this Agreement shall be in writing and shall be deemed given if delivered personally, sent by overnight courier (providing proof of delivery) to the parties or sent by telecopy (providing confirmation of transmission) at the following addresses or telecopy numbers (or at such other address or telecopy number for a party as shall be specified by like notice):

10.2.1 if to Acquiror, to:

Post Properties, Inc.
3350 Cumberland Circle
Suite 2200
Atlanta, Georgia 30339
Attention: John T. Glover
Telecopy: (770) 850-4400

with a copy to:

King & Spalding
191 Peachtree Street
Atlanta, Georgia 30303
Attention: John J. Kelley III
Telecopy: (404) 572-5100

44

<PAGE>  50

10.2.2 if to the Company, to:

Columbus Realty Trust
15851 Dallas Parkway
Suite 855
Dallas, Texas 75248
Attention: Robert L. Shaw
Telecopy: (972) 770-5109

with a copy to:

Winstead Sechrest & Minick, P.C.
5400 Renaissance Tower

POST_D0000830

1201 Elm Street
Dallas, Texas 75270
Attention: Michelle P. Goolsby
Telecopy: (214) 745-5390

and:

Skadden, Arps, Slate, Meagher & Flom LLP
919 Third Avenue
New York, New York 10022
Attention: J. Gregory Milmoe
Telecopy: (212) 735-3594

SECTION 10.3  COUNTERPARTS.  This Agreement may be executed in one or more
counterparts, all of which shall be considered one and the same agreement and
shall become effective when one or more counterparts have been signed by each of
the parties and delivered to the other parties.

SECTION 10.4  ENTIRE AGREEMENT; NO THIRD-PARTY BENEFICIARIES.  This
Agreement, the Confidentiality Agreement and the other agreements entered into
in connection with the Transactions (a) constitute the entire agreement and
supersedes all prior agreements and understandings, both written and oral,
between the parties with respect to the subject matter of this Agreement and,
(b) except for the provisions of ARTICLE II, SECTION 5.13.2 and SECTION 5.14,
are not intended to confer upon any Person other than the parties hereto any
rights or remedies.

SECTION 10.5  GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND
CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, REGARDLESS OF
THE LAWS THAT MIGHT OTHERWISE GOVERN UNDER APPLICABLE PRINCIPLES OF CONFLICT OF
LAWS THEREOF, EXCEPT TO THE EXTENT THAT THE MERGER OR OTHER TRANSACTIONS
CONTEMPLATED HEREBY ARE REQUIRED TO BE GOVERNED BY THE GOVERNING LAW.

SECTION 10.6  ASSIGNMENT.  Neither this Agreement nor any of the rights,
interests or obligations under this Agreement shall be assigned or delegated, in
whole or in part, by operation of law or otherwise by any of the parties without
the prior written consent of the other parties. Subject to the preceding
sentence, this Agreement will be binding upon, inure to the benefit of, and be
enforceable by, the parties and their respective successors and assigns.

SECTION 10.7  ENFORCEMENT.  The parties agree that irreparable damage would
occur in the event that any of the provisions of this Agreement were not
performed in accordance with their specific terms or were otherwise breached. It
is accordingly agreed that the parties shall be entitled to an injunction or
injunctions to prevent breaches of this Agreement and to enforce specifically
the terms and provisions of this Agreement in any federal court of competent
jurisdiction, this being in addition to any other remedy to which they are
entitled at law or in equity. In addition, each of the parties hereto (a)
consents to submit itself (without making such submission exclusive) to the
personal jurisdiction of any federal court located in the

45

<PAGE>   51

State of Georgia in the event any dispute arises out of this Agreement or any of
the transactions contemplated by this Agreement and (b) agrees that it will not
attempt to deny or defeat such personal jurisdiction by motion or other request
for leave from any such court.

SECTION 10.8  SEVERABILITY.  If any provision of this Agreement is held to
be illegal, invalid or unenforceable under any current or future law, and if the
rights or obligations of the parties under this Agreement would not be
materially and adversely affected thereby, such provision shall be fully
separable, and this Agreement shall be construed and enforced as if such
illegal, invalid or unenforceable provision had never comprised a part thereof,
the remaining provisions of this Agreement shall remain in full force and effect
and shall not be affected by the illegal, invalid or unenforceable provision or

POST_D0000831

by its severance therefrom. In lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible, and the parties hereto request the court or any arbitrator to whom disputes relating to this Agreement are submitted to reform the otherwise illegal, invalid or unenforceable provision in accordance with this SECTION 10.8.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

46

<PAGE>   52

SIGNATURE PAGE TO
AGREEMENT AND PLAN OF MERGER

IN WITNESS WHEREOF, Acquiror, Merger Sub and the Company have caused this Agreement to be signed by their respective officers thereunto duly authorized, all as of the date first written above.

ACQUIROR:

POST PROPERTIES, INC.

By:      /s/ JOHN T. GLOVER
-------------------------------------------
                John T. Glover
                President

MERGER SUB:

POST LP HOLDINGS, INC.

By:      /s/ JOHN T. GLOVER
-------------------------------------------
                John T. Glover
                President

COMPANY:

COLUMBUS REALTY TRUST

By:      /s/ ROBERT L. SHAW
-------------------------------------------
                Robert L. Shaw
                Chief Executive Officer

47

<PAGE>   53

EXHIBIT A

FORM OF COMPANY AFFILIATE LETTER

                                        , 1997

Post Properties, Inc.
3350 Cumberland Circle
Suite 2200
Atlanta, Georgia 30339

Ladies and Gentlemen:

I have been advised that as of the date of this letter, I may be deemed to be an "affiliate" of Columbus Realty Trust, a Texas real estate investment trust (the "Company"), as the term affiliate is defined for purposes of paragraphs (c) and (d) of Rule 145 of the rules and regulations (the "Rules and Regulations")

POST_D0000832

of the Securities and Exchange Commission (the "Commission") under the
Securities Act of 1933, as amended (the "Securities Act"). Pursuant to the terms
of the Agreement and Plan of Merger, dated as of August    , 1997 (the "Merger
Agreement"), by and among Post Properties, Inc., a Georgia corporation ("Post"),
Post LP Holdings, Inc., a Georgia corporation ("Merger Sub"), and the Company,
the Company will be merged with and into Merger Sub (the "Merger").

As a result of the Merger, I may receive shares of common stock, par value
$.01 per share, of Post (the "Post Securities"). I would receive such shares in
exchange for shares owned by me of beneficial interest, par value $.01 per
share, of the Company.

I represent, warrant and covenant to Post that in the event I receive any
Post Securities as a result of the Merger:

A. I shall not make any sale, transfer or other disposition of the
Post Securities in violation of the Securities Act or the Rules and
Regulations.

B. I have carefully read this letter and the Agreement and discussed
the requirements of such documents and other applicable limitations upon my
ability to sell, transfer or otherwise dispose of the Post Securities to
the extent I felt necessary with my counsel or counsel for the Company.

C. I have been advised that the issuance of the Post Securities to me
pursuant to the Merger will be registered with the Commission under the
Securities Act on a Registration Statement on Form S-4. However, I have
also been advised that, since at the time the Merger is to be submitted for
a vote of the shareholders of the Company, I may be deemed to have been an
affiliate of the Company and the distribution by me of the Post Securities
has not been registered under the Securities Act, I may not sell, transfer
or otherwise dispose of the Post Securities issued to me pursuant to the
Merger unless (i) such sale, transfer or other disposition is registered
under the Securities Act, (ii) such sale, transfer or other disposition is
made in conformity with the volume and other limitations of Rule 145
promulgated by the Commission under the Securities Act or (iii) such sale,
transfer or other disposition is otherwise exempt from registration under
the Securities Act.

D. I understand that Post is under no obligation to register the sale,
transfer or other disposition of the Post Securities by me or on my behalf
under the Securities Act. By its execution hereof, Post agrees that it
will, as long as I own any Post Securities, take all reasonable efforts to
make timely filings with the Commission of all reports required to be filed
by it pursuant to the Securities Exchange Act of 1934, as
<PAGE>    54

amended, and will promptly furnish upon my written request a written
statement confirming that such reports have been so timely filed.

E. I also understand and agree that stop transfer instructions will be
given to Post's transfer agent with respect to the Post Securities and that
there will be placed on the certificates for the Post Securities issued to
me, or any substitutions therefor, a legend to the effect of the above
restrictions. It is understood and agreed that such legend shall be removed
upon surrender of certificates bearing such legend by delivery of
substitute certificates without such legend if (i) one year shall have
elapsed from the date I acquired the Post Securities and the provisions of
Rule 145(d)(2) are then available to me, (ii) two years shall have elapsed
from the date the undersigned acquired the Post Securities and the
provisions of Rule 145(d)(3) are then applicable to me or (iii) Post has
received either an opinion of counsel, in form and substance reasonably
satisfactory to Post, or a "no action" letter obtained by me from the staff
of the Commission, to the effect that the restrictions imposed by Rule 145
under the Securities Act no longer apply to me.

Execution of this letter should not be considered an admission on my part

POST_D0000833

that I am an "affiliate" of the Company as described in the first paragraph of this letter, or as a waiver of any rights I may have to object to any claim that I am such an affiliate on or after the date of this letter.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Merger Agreement.

Very truly yours,

------------------------------------------
Name:

Accepted this       day of
         , 1997 by

POST PROPERTIES, INC.

By:
------------------------------------------------------------
   Name:
   Title:

2

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99
<SEQUENCE>3
<DESCRIPTION>PRESS RELEASE
<TEXT>

<PAGE>   1
```

EXHIBIT 99

[POST PROPERTIES LOGO]
NEWS
POST PROPERTIES, INC.
3350 Cumberland Circle, N.W. Suite 2200 Atlanta, Georgia 30339-3363
(404)850-4400

For Immediate Release:                          Atlanta, Georgia
                                                August 4, 1997

POST PROPERTIES and COLUMBUS REALTY TRUST
ANNOUNCE MERGER

Post Properties, Inc. (NYSE: PPS) and Columbus Realty Trust (NYSE: CLB) today announced that they have entered into a definitive agreement and plan of merger pursuant to which Columbus would be merged into Post.

The merger, which was unanimously approved by both companies' Boards of Directors, will combine Columbus' 7,526 apartment homes (including its development portfolio), 83% of which are in Dallas, with Post Properties' 21,673 (including its development portfolio) apartment homes throughout the Southeast. Following the merger, Post Properties will be the largest multi-family real estate investment trust (REIT) concentrating on the development of upscale multi-family apartment homes in the major metropolitan markets of the Southeast and Southwest, with a total market capitalization of approximately $2.2 billion. The combined companies will operate under the Post Properties name, with headquarters in Atlanta.

The merger has been structured as a tax-free merger transaction and will be treated as a purchase for accounting purposes. Under the terms of the merger agreement, each share of Columbus will be exchanged for .615 shares of Post Properties. Based upon the closing stock price of Post Properties on August 1, 1997, the transaction values Columbus at approximately $600 million,

POST D0000834

including debt and other liabilities. The merger is subject to approval of shareholders of both companies and other customary closing conditions, and is expected to be completed in November 1997. Upon completion of the merger, Robert L. Shaw, Vice Chairman and CEO of Columbus, will become a member of the senior management team of Post Properties and will join the Board of Directors of Post Properties.

John A. Williams, Chairman of the Board and Chief Executive Officer of Post Properties, Inc. said, "We consider Dallas as one of the few major metropolitan markets in the country with the long-term appeal of our home base, Atlanta, and we had therefore targeted Dallas as the next major market in which to introduce our Post Apartment Homes (R). This merger will immediately provide Post with a critical mass of outstanding upscale apartment communities in Dallas and a wonderful base for continued expansion in that market, and in Houston and Denver, where Columbus is also active. We are impressed with the exceptionally high quality of the Columbus portfolio, which is in large measure comparable to our own, and we are delighted to be joining forces with the outstanding team which Robert Shaw has assembled at Columbus. Columbus has a proven track record of building successful upscale apartment communities in niche and infill locations and will fit right in line with Post's commitment to "Setting the Standard" for the apartment industry."

Post (R) is a registered service mark of Post Apartment Homes, L.P.

<PAGE>    2


Press Release                      -2-                      August 4, 1997

John T. Glover, President of Post Properties, Inc., commented, "The presence of a substantial base of operations in Dallas will obviously complement and diversify our Atlanta base, and the merger offers an attractive, accretive, opportunity for Post to enter Dallas, Houston and Denver, while maintaining the integrity of our longstanding development strategy. Our balance sheet strength will allow us to reissue virtually all of Columbus' currently outstanding debt with the obvious benefit of significantly reduced interest expense. With these savings, coupled with the expense savings resulting from the combination of the two companies, we expect the transaction to be immediately accretive on the order of approximately $0.10 per share for 1998. All in all, the transaction is one that we believe is favorable for the shareholders of both companies."

Robert L. Shaw, Vice Chairman and Chief Executive Officer of Columbus, stated, "For twenty-five years, Post Properties has truly set the standard by which all other multi-family companies are measured. Our Columbus associates - and I personally - are flattered and excited to be joining this exceptional team of dedicated professionals."

Shaw added, "Our board is confident that the merger will accelerate our growth and lower our cost of capital and are pleased that we will have created immediate geographic diversity for the Columbus shareholder."

Merrill Lynch & Co. acted as exclusive financial advisor to Post Properties and Prudential Securities acted as exclusive financial advisor to Columbus Realty Trust.

Certain matters discussed in this press release are forward-looking statements within the meaning of the federal securities laws. Although the Companies believe that the expectations reflected in such forward-looking statements are based upon reasonable assumptions, they can give no assurance that such expectations, including the expectation with respect to potential accretion, will be achieved. Factors that could cause the actual results to differ materially from the Companies' current expectations include general

POST_D0000835

economic conditions, local real estate conditions, the timely development and lease-up of communities and the other risks detailed from time to time in the Companies' SEC reports, including the annual reports on Form 10-K for the year ended December 31, 1996.

Post Properties is one of the largest developers and operators of upscale multi-family apartment communities in the southeastern United States. Post operates as a self-administered and self-managed equity Real Estate Investment Trust whose primary business consists of developing and managing Post(R) brand name apartment communities for its own account.

For additional information contact:

POST PROPERTIES, INC.
Timothy A. Peterson
Karen E. Misuraca
770-850-4400

COLUMBUS REALTY TRUST
J. Michael Lewis
972-770-5182

</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----

POST D0000836