# United States' Exhibit 12

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

UNITED STATES OF AMERICA, )
Plaintiff, )
v. )
POST PROPERTIES, INC., )
POST APARTMENT HOMES, L.P., )
and POST GP HOLDINGS, INC., )
Defendants. )
)

DEPOSITION OF WILLIAM H. CARTWRIGHT

Washington, D.C.

October 29, 2013

Reported by: Mary Ann Payonk

Job No. 67438

October 29, 2013

9:21 a.m.

Deposition of WILLIAM H. CARTWRIGHT, held at the offices of United States Department of Justice, 1800 G Street, N.W., Washington, D.C., pursuant to Notice before Mary Ann Payonk, Nationally Certified Realtime Reporter and notary public of the District of Columbia.

APPEARANCES:

ON BEHALF OF PLAINTIFF:

BETH PEPPER, ESQUIRE
UNITED STATES DEPARTMENT OF JUSTICE
Housing and Civil Enforcement Section
1800 G Street, N.W.
Washington, D.C. 20006

ON BEHALF OF DEFENDANTS:

LYNN CALKINS, ESQUIRE
HOLLAND & KNIGHT
800 17th Street, N.W.
Washington, D.C. 20006

W. Cartwright

Post in your department about taking a look at the tenant deck to assess whether it complied with the applicable handicapped accessibility regulations and codes?

MS. CALKINS: Objection, no foundation. You can answer if you know.

A. I mean, we did discuss the fact that there were -- there was not elevator access to the deck.

Q. Who did you discuss that with?

A. I think we discussed it one time in New York with the whole group. And their consensus -- I don't know if that was before or after this, but, you know, their consensus was that that's a typical thing in New York and that there are a lot of other examples where you have an amenity on the second floor and you have a rooftop amenity that only has stairs to it.

Q. Who's the "they"? I'm not sure who you're referring to.

A. It would be Randy Gerner, Neil Klarfeld, Veronica Hackett, the New York -- I mean, we went to them because they had the

W. Cartwright

experience in New York. You know, that's why we became joint venture partners with them. They had developed -- yes, they had developed other buildings in New York.

Q. So you had raised the issue of the accessibility of the rooftop?

A. Yes. I remember it being discussed.

Q. Did you specifically raise the issue?

A. I think I raised it in a plan review.

Q. Was this of concern to you? Is that why you raised it?

A. Yes.

Q. What was your concern?

A. My concern was that we didn't have access to the roof.

Q. And --

A. An accessible route to the roof.

Q. Now, you -- and they responded the way you've indicated.

A. Yes.

Q. Did you follow up, do any other further investigation after that conversation?

A. I left it really up to the people that are higher than I am to make the decision

W. Cartwright

as to what to do.

Q. And who are they?

A. They would have been John Mears, Veronica Hackett, Neil Klarfeld and Harold Jupiter.

Q. And is it --

A. And Randy Gerner, the architect.

Q. And they decided to do nothing?

MS. CALKINS: Objection, mischaracterizes his testimony. Go ahead.

A. I don't -- I'm assuming they -- I can't say I assume.

Q. Well, was anything done to make the rooftop accessible?

A. There are stairs that go to the rooftop today.

Q. Okay. Are you familiar with the balconies at Post Luminaria?

MS. CALKINS: Objection, vague.

A. I know the building has balconies.

Q. Right. Are you familiar with whether there are thresholds higher than three-quarter of an inch in order to reach the balconies at

Post Luminaria?

A. There could be. I think there are sliding glass doors.

Q. What does that mean, that there are sliding glass doors?

A. That's a type of door.

Q. And --

A. Where the glass panels slide back and forth. They have a track at the bottom.

Q. Okay. And you believe -- so do you believe that there are thresholds that are greater than three-quarter-inch when -- with regard to those sliding doors?

A. Yes.

Q. And have you raised a Fair Housing Act issue with regard to those thresholds that are greater than three-quarter of an inches?

A. Yes.

Q. And who have you raised that with?

A. To again the same team, Ronne Hackett, Harold Jupiter, Neil Klarfeld, Randy Gerner.

Q. And at what stage of the development of Post Luminaria did you raise that issue?

W. Cartwright

A. In the design stage.

Q. And what in particular did you say about those thresholds to those individuals?

A. The fact that they were higher than allowed by the Federal Code.

Q. And did you say anything beyond that?

A. They assured us at the time that that was the standard practice in New York City because of the wind loads, that sliding glass doors with excessive tracks were common, and that was really all you could do in locations of highrise building.

Q. After they informed you of that, what did you do with that information?

A. We accepted it.

Q. And is it your understanding that today, at Post Luminaria, there are thresholds greater than three quarter of an inch leading to the terraces or patios from the units?

A. Yes.

Q. Is it your view that these are noncompliant features?

MS. CALKINS: Objection, calls for a legal conclusion and lay opinion.

W. Cartwright

NAME OF CASE: United States of America v. Post Properties, Inc. et al

DATE OF DEPOSITION: October 29, 2013

1. To clarify the record.
2. To conform to the facts.
3. To correct transcription error.

Page 38 Line 23 Reason CORRECTION
From ATLANTA AREA, to ATLANTA AND TEXAS MARKETS

Page 38 Line 24 Reason CORRECTION
From IN THE DALLAS AREA, to IN THE DALLAS AREA WHO PROVIDES GENERAL BUILDING/CONSTRUCTION REVIEWS,

Page 66 Line 8 Reason CLARIFICATION
From I WAS. to I WAS, BASED ON MY TENURE AT NILES BOLTON ASSOCIATES,

Page 66 Line 21 Reason
From PROJECT TEAM, to PROJECT TEAM THAT WAS PART OF BILL VON HEDEMANNS STUDIO AT NILES BOLTON ASSOC.,

Page 126 Line 13 Reason CLARIFICATION
~~From~~ AFTER ACCESSIBLE PATH, to WHEN I SAY PAVERS I MEAN STEPPING STONES,

Page 171 Line 23 Reason CORRECTION
From WERTLER to BUTLER

Page ____ Line ____ Reason ____
From ____ to ____

Page ____ Line ____ Reason ____
From ____ to ____

[signature]

WILLIAM H. CARTWRIGHT

SUBSCRIBED AND SWORN TO BEFORE ME

THIS ____ DAY OF December, 2013.

[signature]

(Notary Public)

NANCY WAGLEY NOTARY PUBLIC FULTON COUNTY, GEORGIA EXP. MARCH 28, 2017

My Commission expires: March 28, 2017