# United States' Exhibit 18

*United States v. Post Properties, Inc., et al.*

Civil Action No. 10-1866 (RJL)

1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF ILLINOIS
 2                 EAST ST. LOUIS DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4          Plaintiff,                )
                                      )  Cause No. 05-306 (DRH)
 5   vs.                              )
                                      )
 6   SHANRIE COMPANY, INC., et al.,   )
                                      )
 7          Defendants.               )

 8

 9

10              DEPOSITION OF:  MARK WALES
               Taken on behalf of Plaintiff
11                  March 10, 2006

12

13

14

15

16

17

18

19

20              COURT REPORTING ASSOCIATES
                     P.O. BOX 440014
21              ST. LOUIS, MISSOURI 63144
                     314-961-6306
22
     Reported by:  Jane M. Rich, RPR, CCR, CSR (MO, IL & CA)
23

24

25
```

2

1                              I N D E X

2   DEPOSITION EXHIBITS:

3                                                    Page
    Plaintiff's Exhibits 1-13 .................... 4
4   Plaintiff's Exhibit 14 ....................... 9
    Plaintiff's Exhibit 15 ...................... 57
5   Plaintiff's Exhibit 16 ..................... 104
    Plaintiff's Exhibit 17 .................... 141
6   Plaintiff's Exhibit 18 .................... 175

7   EXAMINATION:

8   Direct Examination by Mr. Moran .............. 4
    Cross-Examination by Ms. Hargis ........... 186
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF ILLINOIS
2                       EAST ST. LOUIS DIVISION

3   UNITED STATES OF AMERICA,        )
                                     )
4              Plaintiff,            )
                                     )  Cause No. 05-306 (DRH)
5   vs.                              )
                                     )
6   SHANRIE COMPANY, INC., et al.,   )
                                     )
7              Defendants.           )

8            DEPOSITION OF MARK WALES, produced, sworn, and
     examined on behalf of the Plaintiff, between the hours of
9    eight o'clock in the forenoon and six o'clock in the
     evening of that day, March 10, 2006, taken at the offices
10   of the Rabbitt, Pitzer & Snodgrass, 100 North Fourth,
     Fifth Floor, St. Louis, Missouri, before Jane M. Rich, a
11   Certified Court Reporter, license #411, within and for the
     State of Missouri, and a Certified Shorthand Reporter for
12   the State of Illinois, license #084-002770.

13                    A P P E A R A N C E S

14           The Plaintiff was represented by Mr. Tim Moran
     and Ms. Julie J. Allen, Trial Attorneys, Housing and Civil
15   Enforcement Section, 1800 G. Street, NW, Suite 7002,
     Washington, DC 20006.
16
             The Defendant, Shanrie, was represented by
17   Ms. Theresa L. Kitay, Attorney at Law, 4750 Lincoln Blvd,
     Suite 483, Marina de Rey, California 90292.
18
             The Defendant, Netemeyer, was represented by
19   Mr. John Gilbert, of the law firm of Hinshaw, Culbertson,
     156 North Main Street, Suite 206, Edwardsville, Illinois
20   62025.

21           The Defendant, TWM, was represented by
     Ms. Jennifer R. Hargis, of the law firm of Rabbitt, Pitzer
22   & Snodgrass, 100 North Fourth, Fourth Floor, St. Louis,
     Missouri 63102.
23
             Also Present:  Mr. Dan Sheils, Mr. Bill Hecker,
24   and Ms. Gina Hilberry.

25
```

174

```
 1     Q.    Okay.  I mean, would you agree with me,
 2  generally, that if you had two examples, one in which the
 3  range was in the middle here, so that the clear floor
 4  space was centered, and one example in which the range is
 5  over in the corner, would you agree that all other things
 6  being equal, the range where the clear floor space is
 7  centered is more usable for a person using a wheelchair,
 8  than one where the range is in the corner, as I've
 9  depicted in this diagram?
10     A.    It may be more usable.
11     Q.    Probably would be, right?
12     A.    Probably for more people.  But I don't agree
13  that that's what is required by the guidelines, or the
14  Act, and I think it goes beyond the modest approach.
15     Q.    But -- And in your, in your opinion, you use
16  several times, you say that, in your report you say that,
17  you talk about the standard being subjective.
18           I could find it.
19     A.    Yes.  I recall seeing that.
20     Q.    What do you mean by that?
21     A.    I mean that -- I believe I used that in
22  reference to the, the Act and regulations not being
23  prescriptive in nature.
24     Q.    Uh-huh.
25     A.    In other words, they don't provide you with
```

175

1   specific technical criteria for everything, and therefore,

2   people can use other, different methods to arrive at ways

3   to meet the Fair Housing Act and regulations.

4           MR. MORAN:  What exhibit number are we on?

5           [Reporter marked Plaintiff's Exhibit 18].

6           MR. MORAN:  Exhibit 18 is the diagram we just

7   discussed with the range.

8   Q.    (By Mr. Moran)  Okay.  Do you have your report

9   in front of you?  Is this it?

10  A.    No.

11  Q.    Exhibit 2, if you could turn to page 15.

12  A.    Page 15?

13  Q.    Yes.  Page 15 of your report.

14  A.    Okay.

15  Q.    It may not be necessarily --

16  A.    Okay.

17  Q.    And at the very bottom, the last paragraph, it

18  says, "Therefore, the design and construction of covered

19  multi-family dwellings, as well as the determination of

20  compliance with the Fair Housing Act are subjective."

21          Did I read that accurately?

22  A.    Yes.

23  Q.    So if it's subjective, does that mean that one

24  consultant might reasonably believe that something is

25  usable, and another consultant might reasonably believe

176

1   the opposite?

2       A.      Yes.

3       Q.      Okay.  And similarly, does it mean that -- So
4   even though you think that a door has to be 29 to 30
5   inches wide, 29 to 30 inches wide to allow access to a
6   person using a wheelchair, someone else might reasonably
7   believe it has to be 31 and five-eighths inches wide?

8       A.      Yes.  And --

9       Q.      And someone else might reasonably believe that
10  it only has to be 28 and a half inches wide?

11      A.      Yes.  And I think if there's information to back
12  those things up, yeah, then yes.

13              What I'm saying here is that, as I said before,
14  because the Fair Housing Act and regulations do not
15  provide specific technical criteria, then those
16  requirements are more of a performance language, and they
17  are subjective to different alternative ways to meeting
18  the Act, and the regulations.

19      Q.      And there's nothing we can do to determine where
20  to draw the line, it's all in the eye of the consultant?

21      A.      Well, I think there is -- Obviously has to be a
22  reasonableness about it, and however, I think that there
23  are times when you have to take into account newer
24  information, and, and can make some determinations that
25  may not be what someone else would conclude from simply

177

1   using a guideline, or other reference standard, or --

2        Q.   So it's subjective, but at some point some

3   subjective opinions may just be objectively wrong, and

4   some may be objectively right?

5        A.   I'm not sure I understand that question.

6        Q.   Well, you say it's a subjective, but there is --

7   But just because someone has an opinion doesn't mean it's

8   right, even though it's subjective, some opinions are

9   sufficiently well-supported in the standards, or studies,

10  or whatever, that they are reasonable, and some are not.

11       A.   I think that you -- I think that a judgment has

12  to be made, yes.

13            MR. MORAN:   Can we take a two-minute break?

14            MS. KITAY:   Sure.

15            [Whereupon, there was a short break].

16       Q.   (By Mr. Moran)   Mr. Wales, we marked as -- Where

17  are your plans?

18            MS. KITAY:   They're back there.

19       Q.   (By Mr. Moran)   Okay.   We marked as Exhibit 17

20  the plans that Mr. Sheils gave you that you relied on.

21            Now I'm showing you what I've marked as Exhibit

22  7, which have a note on them saying that they were issued

23  for construction.   Do you see that?

24       A.   Yes.

25       Q.   Okay.   Are those plans that are marked as